IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDREW KIM, individually and on behalf of all others similarly situated,, <br><br> Plaintiff, <br><br> v. <br><br> A PLACE FOR MOM, INC., a Delaware Corporation <br><br> Defendant. | No. 17-5716 <br><br><br> Judge Rebecca Pallmeyer <br> Magistrate Judge Mary Rowland |

DEFENDANT'S MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION TO STAY THIS PROCEEDING

Now comes Defendant A Place For Mom, Inc. ("APFM") by and through the

undersigned counsel and submits this Memorandum In Support of Defendant's Motion to Stay

This Proceeding and, in support, states as follows:


I.      INTRODUCTION

This Court should stay this action for a modest time pending a decision from the United

States Court of Appeals for the District of Columbia Circuit relating to a potentially dispositive

issue in this case.  Plaintiff alleges that APFM violated the Telephone Consumer Protection Act

("TCPA") by calling him using an automatic telephone dialing system ("ATDS") without his

prior express written consent.  *See* Compl., ECF 1, ¶45.  The viability of Plaintiff's claims thus

depends in part, on the outcome of at least one significant issue currently before the D.C. Circuit:

the meaning of an ATDS as enunciated in a July 2015 Omnibus Order issued by the Federal

Communication Commission's ("FCC").[1]  The FCC's current position on this issue – (made on a

bare 3-2 majority and with strong dissents from the two minority commissioners)[2] is currently

---

[1] Another potentially dispositive issue is Defendant's position that the call was not a
"telemarketing" call as defined by the statute as APFM was not selling any goods or services.

[2] As a result of the change in administrations, these minority Commissioners are now the
majority Commissioners.

under review and may well be vacated in *ACA Int'l v. Fed. Commc'ns Comm'n*, No. 15-1211 (D.C. Cir. submitted July 10, 2015) (petition for review) (and consolidated cases).  That case has been briefed, argued, and a written decision is imminent.

As a result, and as multiple courts have found in other TCPA cases, this litigation should not proceed until the D.C. Circuit has ruled on the pending appeal.  Proceeding with this action while the appeal is pending would unnecessarily waste the resources of the Court and the parties. It would be inefficient for the parties to brief, and for this Court to decide, legal issues in this case that have been raised and will be adjudicated in the D.C. Circuit appeal.  Further, the requirements and obligations of the Mandatory Initial Discovery Pilot Project, including the immediate discovery responses and production requirements, are significant and will involve substantial time and expense in the early stages of this litigation. A stay will clarify the issues in question, streamline discovery and reduce the burden of litigation on the parties and on the Court, but will not prejudice or otherwise disadvantage Plaintiff, as discussed further herein. Accordingly, APFM respectfully requests that the Court stay this action pending a decision from the D.C. Circuit in the *ACA International* case.

## II.    BACKGROUND

### A.    Factual Background and Procedural History

Plaintiff alleges that on or about July 11, 2017, he visited Defendant's Search Page (as defined in the Complaint) in search of senior living options for his mother.  Compl., ECF 1, at ¶41.  Plaintiff further alleges that he filled out various fields and voluntarily provided personal information—including his cell phone number and clicked the "Start Your Search" button. ECF 1, at ¶42.[3]  Additionally, plaintiff alleges that after clicking the "Start Your Search" button, he received an "autodialed telemarketing call"[4] from one of Defendant's representatives from an

---

[3] Plaintiff alleges that there was a consent disclosure on the website but he claims that the disclosure was inadequate. ECF1, at ¶¶28, 33, 36.  Regardless, Plaintiff voluntarily provided his cell phone number and other identifying information on the Search Page.  ECF 1, at ¶42; *see e.g. Legg v. PTZ Ins. Agency,* No. 14 C 10043, 2017 WL 3531564, at 1,4-5 (N.D. Ill. August 15, 2017).

[4] APFM does not agree that the call was a "telemarketing" call.  As even noted by the screenshot in Plaintiff's Complaint, APFM provides a "free service" to send requestors options for senior living care tailored to their needs based on the information provided.  *See* Search Page, ECF 1 at ¶28.  It is thus APFM's position that the calls it

136742747.2

identified 847 (Chicago suburbs) exchange.  ECF1, at ¶43.  Plaintiff claims that he knew it was

an "autodialed" call because when he answered there was a delay and a "clicking" noise before

he was connected to the representative.  ECF 1, at ¶43.  That is the sole basis on which Plaintiff

alleges an ATDS was used. Notably, Plaintiff does not quantify the alleged "delay."  More

significantly, however, after answering the call, Plaintiff participated in a discussion with the

representative during which he was asked about his senior living needs—based upon his inquiry

and his provision of information.  ECF 1, at ¶44.  Plaintiff ended the call and requested that he be

taken off of APFM's marketing list.  *Id.*  Plaintiff does not allege that he received any further

calls.  Despite the fact that Plaintiff admits that he (1) voluntarily submitted his personal

information including his cell phone number in connection with his request for assisted living

information from A Place For Mom and (2) received a call and participated substantively in a

discussion with APFM, Plaintiff claims that he is entitled to statutory damages because the call

was allegedly "autodialed," this was "annoying and harassing" to Plaintiff and it was "an

invasion of his privacy."  ECF 1, at ¶45.

## B.      The FCC's 2015 Omnibus Order

In July 2015, the FCC issued an Omnibus Order addressing "21 separate requests for

clarification or other action regarding the TCPA or the Commission's rules or orders."  *In re

Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, F.C.C.

15-72 (July 10, 2015) (the "Omnibus Order") at ¶2.  Among several other issues, the Order seeks

to interpret the meaning of the term "ATDS." This issue is central to Plaintiff's complaint.

Compl., ECF 1 ¶43, 45.

Under the Omnibus Order, the FCC suggests that any equipment that has the "potential

ability" to dial numbers randomly or sequentially may qualify as an ATDS.  *See id.* ¶19.  But the

statutory definition of ATDS states that only equipment with "the capacity (A) to store or

---

makes, particularly in response to inquiries such as Defendant's, do not fall within the definition of telemarketing:
"The term telemarketing means the initiation of a telephone call or message for the purpose of encouraging the
purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R
§64.1200(f)(12).  Where a call is not telemarketing, then only prior express consent is required (such as voluntarily
providing a phone number) and not prior express *written* consent.

-3-

produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers" qualifies as an ATDS.  47 U.S.C. § 227(a)(1)(A).  In the Omnibus Order, the FCC has therefore attempted to broaden this definition from the "capacity" to dial random or sequential numbers to the "potential ability" to do so.  *See* Omnibus Order ¶19. Commentators, courts, and the two dissenting commissioners, as explained further below, have all criticized this new interpretation as fueling the most fringe interpretations of the statute, including potentially supporting arguments that any modern dialing technology—even a smart phone—is an ATDS for purposes of the TCPA.  *See id.* ¶21 (addressing smart phones as ATDSs).  Several other modern technologies would also fall within this broad definition.

C.      **The Pending Challenge to the Omnibus Order**

After the Omnibus Order was issued, nine petitioners and nine intervenors challenged aspects of its various rulings—including its expanded definition of an ATDS—as arbitrary and capricious, an abuse of discretion, in excess of the FCC's statutory authority, and otherwise contrary to the Constitution and other laws.  *See* Joint Br. for Pet'rs, *ACA Int'l*, at 4 (Nov. 25, 2015) (listing as issues to be decided in the case "[w]hether the Commission interpreted ATDS in a way that unlawfully turns on the equipment's potential rather than present abilities, nullifies the statutory random-or-sequential-number-generation requirement, and provides inadequate guidance to regulated parties.").  This issue has been fully briefed, and the D.C. Circuit heard oral argument nearly a year ago on October 19, 2016.[5]  A written decision is expected shortly, as the case has been pending, since oral argument, for over ten months.

There is a high likelihood  that the Omnibus Order will be vacated.  As an initial matter, the D.C. Circuit has the authority to decide the validity of FCC orders (as does any Court of Appeals) and has frequently exercised that authority to vacate FCC orders.  *See* 28 U.S.C. § 2342(1); 47 U.S.C. § 402(a); *Verizon v. Fed. Commc'ns Comm'n*, 740 F.3d 623, 634-35 (D.C.

---

[5] An audio recording of the oral argument is available at https://www.cadc.uscourts.gov/recordings/recordings2017.nsf/DCF7D286EBE49FC1852580510 05ED50F/$file/15-1211.mp3.

136742747.2

Cir. 2014) (reviewing the challenged FCC order to "determine whether the Commission has demonstrated that the regulations fall within the scope of its statutory grant of authority" and to "determine whether the Commission's actions were 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law'" (quoting 5 U.S.C. § 706(2)(A))); *see also, e.g.*, *Action for Children's Television v. Fed. Commc'ns Comm'n*, 58 F.3d 654 (D.C. Cir. 1995); *Petroleum Commc'ns, Inc. v. Fed. Commc'ns Comm'n*, 22 F.3d 1164 (D.C. Cir. 1994).  Indeed, between 1985 and 2012, the D.C. Circuit vacated approximately 23% of the federal agency orders it reviewed.  *See* Douglas H. Ginsburg, *Remarks upon Receiving the Lifetime Service Award of the Georgetown Federalist Society Chapter*, 10 Geo. J.L. & Pub. Pol'y 1, 4 (2012).

Moreover, reports from oral argument suggest the D.C. Circuit may well be willing to exercise its authority to vacate portions of the Omnibus Order relevant in this case.  For example, the panel appeared skeptical of the FCC's expanded definition of an ATDS.  *See, e.g.*, Bryan Koenig, *FCC Took Autodialer Ban Too Far, DC Circ. Told*, Law360 (Oct. 19, 2016) (reporting that counsel for the FCC "faced stiff pushback from a skeptical panel."); Lewis S. Wiener, *et al.*, *Dial or Push-Button: Oral Arguments in Appeal of FCC Order*, Law360 (Oct. 26, 2016), *available at* http://www.law360.com/articles/855475/dial-or-push-button-oral-arguments-in-appeal-of-fcc-order.

The strong remarks of the two FCC Commissioners Pai[6] and O'Reilly, who dissented to the Omnibus Order, also underscore that the D.C. Circuit has more than a sufficient basis to vacate the part of the Omnibus Order on which Plaintiff relies.  *See, e.g.*, Omnibus Order, Dissenting Statement of Commissioner Ajit Pai ("Pai Dissent") at 113; Omnibus Order, Statement of Commissioner Michael O'Reilly, Dissenting in Part and Approving in Part ("O'Reilly Dissent") at 127.  Commissioner Pai observed that the Omnibus Order's treatment of ATDS is directly contrary to the language of the statute.  *See* Pai Dissent at 114 ("Had Congress wanted to define automatic telephone dialing system more broadly it could have done so by

---

[6] Commissioner Pai is now the Chairman of the FCC.

136742747.2

adding tenses and moods, defining it as 'equipment which has, has had, or could have the capacity.' But it didn't."). "To put it kindly," Commissioner Pai wrote, "the Order's interpretation is a bit of a mess." *Id.* The majority, after all, noted on the one hand that it would not "at this time address the contours of the 'autodialer' definition," while also acknowledging the virtually limitless scope of its interpretation, which makes it "theoretically possible to modify a rotary-dial phone to such an extreme that it would satisfy the definition of 'autodialer.'" *Id.* ¶¶17–18. Commissioner O'Reilly also criticized the new definition of ATDS as contrary to the statutory language and noted that multiple courts have rejected the interpretation espoused in the Omnibus Order. O'Reilly Dissent at 128-129.

## III.    ARGUMENT

Many district courts, including from this district, have stayed TCPA litigation pending resolution of *ACA International* by the D.C. Circuit. *See, e.g., Ankcorn v. Kohls Corp.*, No. 15-cv-1303, 2017 WL 395707, at \*4-5 (N.D. Ill. Jan. 30, 2017); *Clayton v. Synchrony Bank*, 219 F. Supp. 3d 1006, 1010-11 (E.D. Cal. 2016); *Jones v. Credit Acceptance Corp.*, No. 15-13165, 2016 WL 7320919, at \*3 (E.D. Mich. Oct. 31, 2016), *adopted by* 2016 WL 7242141 (E.D. Mich. Dec. 15, 2016); *Robinson v. Nationstar Mortgage, LLC*, 220 F. Supp. 3d 1353, 1355 (S.D. Ga. 2016); *Small v. GE Capital, Inc.*, No. EDCV 15-2479 JGB (DTBx), 2016 WL 4502460, at \*3 (C.D. Cal. June 9, 2016). A stay is similarly warranted here.

**A.    This Court Has Inherent Authority to Stay this Action Pending a D.C. Circuit Decision**

The action should be stayed to allow the DC Circuit to rule on the appeal which will simplify this action, and provide needed guidance to the parties and the court. Should the D.C. Circuit hold that an ATDS must have the present capacity to dial random or sequential numbers rather than the "potential" capacity as defined in the Omnibus Order, the narrowing of the definition of an autodialer would have a significant effect on this litigation as it is Defendant's position that the equipment used is not an ATDS. *See e.g., Modica v. Green Tree Servicing, LLC*, 14 C 3308, 205 WL 1943222, at \*3 (N.D. Ill. April 29, 2015) (where agent had to "click"

on a phone number, human intervention was required and system was not an ATDS); *Pozo v. Stellar Recover Collection Agency*, 8:15-cv-929-T-AEP, 2016 WL 7851415, at *4-5 (M.D. Fla. Sept. 2, 2016) (where Stellar's Clicker agents initiate all calls by clicking a dialogue box which appears on screen and where the Clicker agent confirms that he or she wishes to call the number, there is a human intervention and thus the system cannot be an autodialer); *Smith v. Stellar Recover*, 2-15-cv-11717, 2017 WL 955128, at *3 (E.D. Mich. March 13, 2017) (where the system required human intervention to launch an outgoing call).

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of cases on its docket with economy of time and effort for itself, for counsel and for litigants." *Texas Independent Producers and Royalty Owners Ass'n v. E.P.A.,* 410 F.3d 964, 980 (7th Cir. 2005) (internal citation omitted).  This power includes the authority to stay a case pending the resolution of litigation in another forum that involves similar, potentially controlling, issues.  *See Texas Independent Producers and Royalty Owners Ass'n v. E.P.A.,* 410 F.3d 964, 980 (7th Cir. 2005); *Genzyme Corp. v. Cobrek Pharm., Inc.,* No. 10-CV-00112 (Dow, J), 2011 WL 686807 (N.D. Ill. Feb. 17, 2011) (exercising inherent power to stay proceedings pending conclusion of PTO reexamination).

Courts generally consider three factors in determining whether a stay should be granted: (1) whether the stay will result in a simplification of the issues, (2) whether the stay will cause undue prejudice and present a clear tactical disadvantage to the nonmoving party, and (3) what stage the litigation is at.  *See, e.g., Genzyme Corp. v. Cobrek Pharm., Inc.,* 2011 WL 686807 at *1.

Here, each of these factors weighs in favor of granting a stay.

### 1.      A Stay Pending the DC Circuit's Ruling Will Simplify the Issues to be Litigated.

While the FCC has primary jurisdiction to offer interpretations of the TCPA, it by no means provides the final adjudication.  Indeed, under 28 U.S.C. § 2342, the federal Courts of Appeal have exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or

determine the validity of all final orders issued by the FCC.  As stated above, in *ACA International,* Petitioners are challenging the FCC's definition of an ATDS.  With respect to this issue, Petitioners contend that the July 2015 Order is arbitrary and capricious, an abuse of discretion, is in excess of the FCC's statutory authority, and is contrary to the Constitution and other laws.  *Id.*  Either way the D.C. Circuit rules on this issue, discovery will be more focused and streamlined and the issues in the case will be simplified by the potential certainty of the ruling.  If the case proceeds pending this ruling, it is likely that discovery will be more complex, including detailed examination of the relevant technology and the preparation of expert reports.  If the D.C. Circuit rejects the FCC's definition of an ATDS, some of that discovery may be unnecessary and the case will be significantly narrowed and simplified, if not disposed of altogether by the *ACA International* ruling.

### 2.      A Stay Will Conserve the Court's and the Parties' Resources

The Court should stay this case because, as noted, a stay will simplify and streamline the resolution of issues, and reduce the burden on the parties and the Court.  *Frable v. Synchrony Bank*, 215 F.Supp.3d 818, 822 (D. Minn. 2016).  Plaintiff's TCPA claims against APFM depend, in part, on the viability of the FCC's interpretations of ATDS.

If the D.C. Circuit vacates the Omnibus Order—and, as explained above, there are compelling reasons to believe it will—Plaintiff could no longer rely on the strained interpretation of an ATDS.  If, for example, an ATDS is a system with the present capacity to automatically make telephone calls to numbers stored or produced using a random or sequential number generator, instead of a system with merely a potential capacity to do so, Plaintiff's burden of proof as to this element will be more difficult and may even be foreclosed in this case.

In these circumstances, courts regularly find that a stay is warranted.  For example, in *Ankcorn v. Kohl's Corporation,* 15-cv-1303, 2017 WR 395707, at *2 (N.D. Ill, Jan. 30, 2017), Judge Dow considered the very issue raised here: whether a TCPA action should be stayed pending the appeal of the FCC's Omnibus Order.  There, the court granted defendant's motion for a stay, finding that "a stay will simplify the issues in question and streamline the proceedings

-8-

in this court and thus reduce the burden on the parties and on the Court…"[7].

Similarly, in *Fontes v. Time Warner Cable Inc.*, No. CV14-2060-CAS(CWx), 2015 WL 9272790, at \*5 (C.D. Cal. Dec. 17, 2015) a district court in the Central District of California stayed a putative TCPA class action pending the outcome of *ACA International*.  In particular, the court noted the "legitimate possibility that the Court of Appeals may overturn" the Omnibus Order, "in light of the close divide amongst the FCC commissioners and the fact that at least one commissioner believes the FCC's ruling is 'flatly inconsistent with the TCPA,'" such that "the proper interpretation of the TCPA remains unclear." *Id.* at \*4.  The court further reasoned that "[i]f the Court of Appeals were to find that the FCC had reached the wrong conclusion" regarding the ATDS definition or other issues, "that could potentially be dispositive of the outcome in this case." *Id.* at \*4.[8]  As noted, this case is in its early stages and clearly the parties would engage in significant discovery, including expert discovery prior to the filing of dispositive motions or a trial.  But such discovery "could be rendered moot or altered in scope if the D.C. Circuit rejects the FCC's definition of 'capacity.'" *Frable,* 215 F.Supp.3d at 822;*see also, Rose v. Wells Fargo Advisors, LLC,* 1:16-cv-562, 2016 WL 3369283, at\*1-2 (N.D. Ga. June 14, 2016 ("If the case is not stayed, the defendant may suffer hardship in conducting discovery and trial preparation in light of the uncertain difference between 'potential' capacity and 'theoretical' capacity under the definition of an ATDS.").  Moreover, unlike some of the other cases where a stay was granted, here, the D.C. Circuit decision is imminent and thus, the stay will not be for an extended period of time.

Further, if a decision were issued after class certification and dispositive motion briefing,

---

[7] In *Ankcorn*, different issues included in the Omnibus Order were raised in and the definition of an ATDS was not one of them.

[8] As the Court recently noted in *Frable,* 215 F.Supp.3d at 822, "When multiple petitions for review of an FCC final order are filed in several circuit courts of appeals, and are consolidated and assigned to a single circuit, that court is 'the sole forum for addressing ... the validity of the FCC's rules.'" *MCI Telecommc'ns Corp. v. U.S. W. Commc'ns*, 204 F.3d 1262, 1267 (9th Cir. 2000) (quoting *GTE South., Inc. v. Morrison*, 199 F.3d 733, 743 (4th Cir. 1999)).  Thus, this Court would likely follow the decision in the D.C. Circuit on the FCC Omnibus Order.

it would also "likely render moot...many of the Court's rulings." *Fontes,* 2015 WL 9272790, at

*5.  In *Fontes,* the court therefore held that "a stay is appropriate" due to "the risk of wasting the

resources of the Court and the parties as well as the high degree of uncertainty in this area of the

law."  *Id.; see also Rosales v. Heath,* 28:17-cv-87, 2017 WL 2533365, at *1-2 (D. Neb. June 9,

2017) (court stayed the matter pending the D.C. Circuit's adjudication of the definition of an

ATDS).

As in the above cases, proceeding with Plaintiff's claims here risks unnecessarily

consuming the Court's and parties' resources while potentially subjecting APFM to inconsistent

rulings.  Addressing the issues in this case now would involve the FCC's interpretations of

TCPA provisions that could soon be vacated by the D.C. Circuit as arbitrary, capricious, or

contrary to law.  *See* Remarks of Michael O'Reilly, Fed. Commc'ns Comm'n Before the Prof'l

Ass'n for Customer Engagement 2015 TCPA Washington Summit, 2015 WL 5723795, at *1

(noting that the "state of the law" with respect to the TCPA depends on "the outcome of the

ongoing litigation").

It would be inefficient for the parties to litigate, and for this Court to consider, those

issues while the validity of the Omnibus Order is under review by the D.C. Circuit and where a

decision is expected shortly based on the length of time the case has been pending since oral

argument.  The case should thus be stayed until the D.C. Circuit completes its review of the

Omnibus Order.

### 3.      A Stay Will Not Prejudice Plaintiff

A stay would not create any undue prejudice to Plaintiff or the putative class. .  *See*

*Ankcorn*, at *3.  In *Ankcorn*, the Court noted that, as here "[t]his case is in an early stage of

litigation, and the delay caused by the stay would likely be insubstantial giving [sic] that briefing

and oral argument have already been completed in the D.C. Circuit."  *Id.*  Additionally, as in this

case, in *Ankcorn*, the Plaintiff did not allege that he received any further calls from Defendant

"so there is no risk of ongoing harm to Plaintiff."  *Id.;see also* (cited by the court in *Ankcorn*)

*Matlock v. United Healthcare Servs. Inc.,* No. 2:13–cv–02206–MCE–EFB,  2014 WL 115541, at

136742747.2

*2 (E.D. Cal. March 20, 2014) (where the Court granted a stay and explained that "the violation alleged in this case is not ongoing so Plaintiff will suffer no further damages during a stay"); *Pi-Net Int'l, Inc. v. Hertz Corp.*, No. CV 12-10012 PSG JEMX, 2013 WL 7158011, at *4 (C.D. Cal. June 5, 2013) ("Mere delay in the litigation does not establish undue prejudice."); *Sorensen ex rel. Sorensen Research & Dev. Trust v. Black & Decker Corp.*, No. 06-CV-1572 BTM-CAB, 2007 WL 2696590, at *4 (S.D. Cal. Sept. 10, 2007) ("The general prejudice of having to wait for resolution is not a persuasive reason to deny the motion for stay.").

For one, Plaintiff seeks only statutory damages and alleges no injury beyond the statutory violation.  There is little urgency to Plaintiff's alleged entitlement to $500 or $1500 in statutory damages for allegedly autodialed calls.  *See Hosp. of Barstow, Inc. v. Sebelius*, No. CV 11-10638 CAS MANX, 2012 WL 893784, at *3 (C.D. Cal. Mar. 13, 2012) (granting a stay of the proceedings pending "the outcome of the appeals before the Ninth Circuit" involving "substantially similar" issues, because "the only prejudice to plaintiffs due to a stay is a short delay in the potential recovery of damages").

Further, Plaintiff will suffer no additional hardship pending a stay.  As noted, the Complaint does not allege that Plaintiff has received any further calls after he requested to be taken off of Defendant's marketing list.  And it is clear Plaintiff does not anticipate any imminent harm, as he has not moved for preliminary injunctive relief.  *See Autoalert, Inc. v. Dominion Dealer Solutions, LLC*, No. SACV 12-1661-JST, 2013 WL 8014977, at *3 (C.D. Cal. May 22, 2013) (holding that Plaintiff had not established undue prejudice in part because its "failure to file for a preliminary injunction in the seven months since it filed its complaint further suggests that monetary damages will adequately compensate Plaintiff").

Nor will a stay unduly delay this case.  This case is in its infancy and discovery has not commenced.  *See Clayton*, 2016 WL 7106018, at *4 (concluding the plaintiff had "fail[ed] to demonstrate he would be prejudiced by the stay, given the early stage of the proceedings").  Further, oral argument has already occurred in the D.C. Circuit, such that a ruling "is likely imminent and not indefinite." *Clayton*, 2016 WL 7106018, at *4.  This conclusion is further

-11-

136742747.2

supported by statistics: as of September 2015, the median time between oral argument to the last

opinion or final order was approximately 3.5 months for appeals from administrative agencies.

*See* United States Courts, Table B-4C, *U.S. Courts of Appeals —Median Time Intervals in*

*Months for Administrative Agency Appeals Terminated on the Merits, During the 12-Month*

*Period Ending September 30, 2015*,

http://www.uscourts.gov/sites/default/files/data_tables/B04CSep15.pdf.  As more than 10

months have already passed since oral argument was held in *ACA International* on October 19,

2016, given the D.C. Circuit's statistics, it is reasonable to expect a decision very soon.

　　　　This modest delay sought here is more than reasonable, given the implications that the

appeal may have on this case.  If APFM were forced to engage in costly discovery under an

interpretation of the law that is later invalidated by the D.C. Circuit, it would suffer irreparable

harm, as there is no assurance or fail safe mechanism for APFM to recover its costs should it

incur unnecessary expense and later prevail on the merits.

## IV.    CONCLUSION

　　　　For the foregoing reasons, APFM requests that this action be stayed in its entirety

pending a decision from the D.C. Circuit in *ACA International*.  While any such stay is in place,

the parties can provide the Court with regular updates on the progress of the appeal.

Dated:  September 6, 2017                           A PLACE FOR MOM, INC.


                                                    By:   ___/s/ Debra R. Bernard_____
                                                          One of its Attorneys


Debra R. Bernard
Perkins Coie LLP
131 S. Dearborn Street, Suite 1700
Chicago, Illinois 60603
(312) 324-8400
dbernard@perkinscoie.com

-13-

## CERTIFICATE OF SERVICE

I, Debra R. Bernard, certify that on September 6, 2017, I caused the foregoing

MEMORANDUM IN SUPPORT OF DEFENDANT'S **MOTION TO STAY** to be filed via

CM/ECF and served on the following:


Gary Klinger
Ryan Sullivan
Kozonis Law, Ltd.
4849 N. Milwaukee Ave., Ste. 300
Chicago, Il 60630
gklinger@kozonislaw.com
rsullivan@kozonislaw.com

and

Jonathan Selbin
Daniel Hutchinson
John Spragens
Lieff Cabraser Heimann & Bernstein, LLP
275 Battery St. 29th Floor
San Francisco, CA 94111
jselbin@lchb.com
dhutchinson@lchb.com
jspragens@lchb.com




Dated:  September 6, 2017

                                               /s/ Debra R. Bernard