IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN PINE, *individually and on behalf of all others similarly situated*,<br><br>      Plaintiff,<br>v.<br><br>A PLACE FOR MOM, INC., a Delaware corporation,<br><br>      Defendant. | Case No. 1:17-cv-05716<br><br>Hon. Rebecca Pallmeyer<br><br>Mag. Judge Mary Rowland |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff, Kevin Pine, individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his First Amended Class Action Complaint against Defendant, A Place For Mom, Inc., alleges the following based upon personal knowledge as to himself and his own action, and, as to all other matters, respectfully alleges, upon information and belief and investigation of his counsel, as follows:

## NATURE OF THE ACTION

1. This case is about bringing an end to the rampant violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*, that occur within the sphere of the online "lead" generating industry.

2. Defendant specializes in generating "leads" by placing calls to consumers looking for senior care, and then referring those consumers for a fee to customers of Defendant, who are typically senior living communities. In order to obtain consumers' cell phone numbers, however, Defendant uses improper tactics that plainly violate the TCPA's "prior express written consent" requirements.

3. As described more fully below, Defendant owns and operates a website that is a marketing tool for thousands of senior housing communities and providers to whom it refers consumers that search on the Internet for information regarding senior housing providers. Through this website, Defendant gains access to the cell phone numbers of thousands of consumers (including Plaintiff and the Class) who unwittingly provide their phone numbers when they are prompted to do so in order to purportedly review options for senior care in their local area. Shortly after these consumers enter their cell phone numbers on Defendant's website, Defendant bombards these consumers with telemarketing calls using an automatic telephone dialing system ("ATDS").

4. Unbeknownst to these consumers at the time they provide their cell phone numbers, there exists a statement intentionally (and inconspicuously) hidden on Defendant's website that purportedly authorizes Defendant to place autodialed phone calls to these consumers.

5. Because Defendant hides this purported authorization statement on its website, Defendant fails to obtain consumers' prior express written consent to place autodialed telemarketing calls to their cell phones, as required under the TCPA.

6. Indeed, Defendant's very practice of hiding the purported authorization statement is a full affront to the TCPA because it defeats the very purpose for which the TCPA was enacted – to protect consumers from unwanted autodialed telemarketing calls. Accordingly, Plaintiff files the instant lawsuit in order to put an end to Defendant's (and the general industry's) practice of paying "lip service" to the TCPA.

7. By this lawsuit, Plaintiff seeks an injunction requiring Defendant to cease all unlawful telemarketing activities, as well as an award of statutory damages to Plaintiff and members of the Class for each and every call placed in violation of the TCPA.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 (hereinafter referred to as "CAFA") codified as 28 U.S.C. § 1332(d)(2). The matter in controversy exceeds $5,000,000 in the aggregate, exclusive of interests and costs, as each member of the proposed Class of at least thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA. Further, Plaintiff and Defendant are citizens of different States.

9. The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227, *et seq*.

10. The Court has personal jurisdiction over Defendant because the conduct at issue in this case occurred, among other locations, in Illinois.

11. Venue is proper because a substantial portion of the events complained of occurred in this District.

## PARTIES

12. Plaintiff, Kevin Pine, is a citizen of the State of California residing in the City of Carlsbad and is a member of the Class defined herein.

13. Defendant, A Place for Mom, Inc. is a corporation existing under the laws of the State of Delaware with its principal place of business in Seattle, Washington.

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227**

14. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

15. The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers."

16.     Specifically, the plain language of section 227(b)(1)(A)(iii) of the TCPA prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party. The TCPA's definition of an ATDS includes a "predictive dialer." *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638-39 (7th Cir. 2012).

17.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA and whose regulations are generally binding, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

18.     In 2003, the FCC explained that while previous autodialers generated random numbers to call, "the evolution of the teleservices industry has progressed to the point where using lists of numbers is far more cost effective." *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14092 (2003). So a predictive dialer, which "has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers," *id*. at 14091, "constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers," 23 F.C.C. Rcd. at 566. In other words, an autodialer "has the specified *capacity* to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 15391, 15932 n.5 (2012) ("2012 FCC Ruling").

19. On January 4, 2008, the FCC issued a Declaratory Ruling confirming that autodialed calls and calls using an artificial voice or prerecorded message to a wireless number are permitted only if the calls are made with the "prior express consent" of the called party. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 2008 WL 65485 (2008).

20. On February 15, 2012, the FCC took steps to further protect consumers from unwanted autodialed marketing calls pursuant to the TCPA. Among other things, the FCC issued a Declaratory Ruling requiring that telemarketers obtain "prior express *written* consent" for all autodialed telemarketing calls to wireless numbers. 2012 FCC Ruling, 27 F.C.C. Rcd. at 1831 (emphasis added).

21. In the 2012 FCC Ruling, the FCC further clarified that a consumer's written consent to receive telemarketing robocalls "must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future autodialed calls or calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service. *See also* 47 C.F.R § 64.1200(f)(8). Finally, should any question about the consent arise, the seller will bear the burden of demonstrating that a clear and conspicuous disclosure was provided and that unambiguous consent was obtained. 2012 FCC Ruling, 27 F.C.C. Rcd. at 1844 (emphasis added).

**FACTUAL ALLEGATIONS**

*A Place for Mom Does Not Obtain Consumers' Prior Express
Written Consent to Place Telemarketing Calls Via the Use of an ATDS*

22. Defendant is the largest senior living referral service in the United States. Defendant provides information regarding 17,000 senior housing and elder care providers across the country to consumers. Defendant also serves as a marketing tool for the thousands of senior housing communities and care providers to whom it refers consumers for a fee.

23. In particular, Defendant's business practices include referring private pay families to assisted living communities, independent senior apartments, residential care homes for a fee that is paid by senior living communities within Defendant's network.

24. Defendant's business practices also include making autodialed telemarketing calls to consumers or "leads" during which one of Defendant's representatives will perform an assessment as to the senior living needs of the consumer. After Defendant "qualifies" the lead, Defendant will provide a list of recommended senior living communities within Defendant's network.

25. Because Defendant generates revenue when a senior who was referred by Defendant moves to a provider within its network, Defendant is incentivized to call as many consumers as possible.

26. One of the methods in which Defendant generates leads is through the utilization of Internet marketing. Defendant owns and operates the website: www.aplaceformom.com (the "Website").

27. As shown in the following screenshot image, Defendant directs traffic to the Website through the use of paid advertisements that are displayed on search engines such as www.Bing.com or www.Google.com:



28. When consumers click on the paid advertisement for Defendant's Website, they are directed to the following webpage (the "Search Page") displayed as follows:



29.     As shown in the screen shot image in Paragraph 28, Defendant intentionally designed the Search Page to appear as though it will generate senior housing options when the consumer enters their personal information (including their phone number) in the appropriate fields and then clicks the "Start Your Search" button.

30.     In fact, directly above the fields that require the consumer's personal information, the Search Page states the following: "Complete the form below to find the best options in your local area."

31.     However, after the consumer provides their personal information (including their phone number) and clicks on the "Start Your Search" button, the consumer is immediately contacted at the phone number he or she provided by a representative from Defendant via the use of an autodialer.

32.     When the phone call is connected, Defendant's representative asks a few preliminary questions about the consumer's senior living needs, and then attempts to refer the consumer to senior living communities within its network for purposes of purchasing a home or leasing a unit in one of those communities.

33.     An investigation into Defendant's website reveals that the following statement is intentionally (and inconspicuously) hidden at the bottom of the Search Page in barely legible font:

> We Value your privacy.  By clicking you agree to the terms and conditions of our Privacy Policy.  You also consent that we can reach out to you using a phone system that can auto-dial numbers….Your consent is not required to use our services.

*See* Exhibit A attached hereto.

34.     As shown in the screen shot image in Paragraph 28 and Exhibit A of the Complaint, it is not at all clear to the consumer that he or she will be called – let alone called via an ATDS – by Defendant when the consumer clicks "Start Your Search."

35. Instead, the Search Page is designed in such a manner so that the consumer provides his or her phone number and clicks "Start Your Search" without ever receiving notice that the consumer is agreeing to be contacted via prerecorded or autodialed calls.

36. That is because the purported authorization statement is inconspicuously hidden in barely legible font at the bottom of the Search Page beneath the "Start Your Search" button. The only way a consumer could conceivably discover the purported autodialer authorization is if the consumer examines the Lilliputian language at the bottom of the webpage before clicking "Start Your Search".

37. The consumer further has no reason to suspect that he or she is agreeing to be contacted via prerecorded or autodialed calls because the webpage displaying the quote form does not contain any explicit text referencing terms of agreements, nor does it instruct users that they are assenting to agreements by requiring, for example, the consumer to "check a box" or click "I Agree". Instead, the webpage merely has a button that states "Start Your Search."

38. Thus, consumers, including Plaintiff and other Class members, do not receive reasonable notice of the purported autodialer authorization.

39. Defendant's autodialer authorization thus fails to meet the thresholds of a valid browsewrap agreement and is therefore unenforceable, which means that no consumer who filled out the Search Page provided their consent to receive phone calls via an ATDS.

40. For similar reasons, Defendant violates the TCPA's prior express written consent requirements because Defendant does not provide consumers "clear and conspicuous disclosure" of the consequences of providing their phone numbers on the aforementioned Search Page.

### *Plaintiff's Experience with Defendant's Website*

41. In or around December of 2015, Plaintiff visited Defendant's Search Page in search of senior living options for his mother.

42. Plaintiff filled out the various fields and provided his personal information (including his cell phone number) and then clicked the "Start Your Search" button.

43. After clicking the "Start Your Search" button, Plaintiff received autodialed telemarketing calls from Defendant's representatives. To be sure, Plaintiff knew it was autodialed phone calls because, when he answered, there was a delay and a "clicking" noise before the connection with the representative was made.

44. When the calls began, Plaintiff answered and was connected with a representative from Defendant. After a brief conversation during which Plaintiff was asked about his senior living needs, Plaintiff terminated the phone call and requested that he be taken off Defendant's marketing list. Despite this, Plaintiff continued to receive autodialed telemarketing calls from Defendant.

45. Plaintiff was not aware he would be receiving autodialed telemarketing calls as a result of using Defendant's website. The calls were annoying and harassing to Plaintiff, and an invasion of his privacy. The calls violated the TCPA because it was made without Plaintiff's prior express written consent.

### *Defendant Harmed Plaintiff in a Manner Identical*
### *To the Manner in Which Plaintiff Harmed the Class*

46. Plaintiff is in the same Class as all other consumers who utilized Defendant's Search Page during the relevant time period. Plaintiff and the Class clicked "Start Your Search" and then subsequently received autodialed telemarketing calls without their prior express written consent in violation of the TCPA.

47. Not surprisingly, Defendant's unlawful practices have led to significant backlash from consumers across the country. *See* Exhibit B. Indeed, this is not the first time Defendant has been sued for violations of the TCPA. *See Erickson v. A Place for Mom, Inc.*, No. 2016-cv-742 filed in the U.S. District Court for the Western District of Washington.

48. By making the unauthorized phone calls alleged herein, Defendant has caused consumers (including Plaintiff) actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that resulted from the receipt of such phone calls, in addition to a loss of value realized for the monies consumers paid to their wireless carriers for the receipt of such phone calls. Furthermore, the phone calls interfered with Plaintiff's and other Class members' use and enjoyment of their cellphones, including the related data, software, and hardware components. Defendant also caused substantial injury to their phones by causing wear and tear on their property, consuming battery life, and in some cases appropriating cellular data or minutes.

## CLASS ACTION ALLEGATIONS

49. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

50. Plaintiff brings this action individually and on behalf of all other persons similarly situated pursuant to Federal Rule of Civil Procedure 23.

51. Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> All persons within the United States who provided their cell phone number on Defendant's Search Page and then received a non-emergency telephone call from Defendant, or any party acting on its behalf, to a cellular telephone through the use of an automated telephone dialing system or an artificial or prerecorded voice.

Collectively, all these persons will be referred to as "Class members." Plaintiff represents, and is a member of the Class.

52.     Excluded from the Class is the Defendant, and any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, Plaintiff's counsel and Plaintiff's counsel's staff.

53.     Plaintiff does not know the exact number of members of the Class, but Plaintiff reasonably believes the Class members number, at minimum, in the hundreds to thousands.

54.     Plaintiff and all members of the Class have been harmed by the acts of Defendant.

55.     This Class Action Complaint seeks injunctive relief and money damages.

56.     The joinder of all Class Members is impracticable due to the size and relatively modest value of each claim.

57.     Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

58.     Further, the Class can be identified easily through records maintained by Defendant and/or its marketing agents.

59.     There are well-defined, nearly identical, questions of law and fact affecting all parties.

60.     The questions of law and fact, referred to above, involving the Class claims predominate over questions which may affect individual Class members.

61.     Such common questions of law and fact include, but are not limited to, the following:

    a. Whether Defendant used an automatic telephone dialing system in making non-emergency calls to Class members' cell phones;

    b. Whether Defendant gave proper notice to consumers that Defendant intended to place calls using an automatic telephone dialing system to the cell phone numbers provided by Class members;

    c. Whether Defendant can meet its burden of showing it obtained prior express written consent to make such calls;

    d. Whether Defendant's conduct was knowing and/or willful;

    e. Whether Defendant is liable for statutory damages; and

    f. Whether Defendant should be enjoined from engaging in such conduct in the future.

62. As a person who received a non-emergency telephone call via an automatic telephone dialing system, without providing his prior express consent to Defendant within the meaning of the TCPA, Plaintiff asserts claims that are typical of each Class member who also received such phone calls.

63. Further, Plaintiff will fairly and adequately represent and protect the interests of the Class.

64. Plaintiff has no interests which are antagonistic to any member of the Class.

65. Plaintiff has retained counsel experienced in handling class action claims involving violations of federal consumer protection statutes, including claims under the TCPA.

66. A class action is the superior method for the fair and efficient adjudication of this controversy.

67. Class wide relief is essential to compel Defendant to comply with the TCPA.

68. The interest of the Class members in individually pursuing claims against the Defendant is slight because the statutory damages for an individual action are relatively small, and are therefore not likely to deter Defendant from engaging in the same behavior in the future.

69. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and the Class members, by definition, did not provide the prior express consent required under the statute to authorize such calls to their cellular telephones.

70. Defendant has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate.

71. Moreover, on information and belief, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## CAUSES OF ACTION

### Count I

### Statutory Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*

72. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

73. The foregoing acts and omissions of Defendant constitute violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq* and its implementing regulations.

74. As a result of the Defendant's violations of 47 U.S.C. § 227, *et seq.*, Plaintiff and Class members are entitled to an award of $500 in statutory damages for each and every call placed in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

75. Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting the Defendant's violation of the TCPA in the future.

76. Plaintiff and Class members are also entitled to an award of attorneys' fees and costs as provided by law.

### Count II

### Knowing and/or Willful Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*

77. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

78. The foregoing acts and omissions of the Defendant constitute knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

79. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and each member of the Class is entitled to treble damages of up to $1,500 for each and every call placed in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

80. Plaintiff and all Class members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by the Defendant in the future.

81. Plaintiff and Class members are also entitled to an award of attorneys' fees and costs as provided by law.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all Class members the following relief against Defendant:

A. Injunctive relief prohibiting such violations of the TCPA by the Defendant in the future;

B.       As a result of the Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for herself and each Class member treble damages, as provided by statute, of up to $1,500 for each and every call that violated the TCPA;

C.       As a result of Defendant's statutory violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for herself and each Class member $500 in statutory damages for each and every call that violated the TCPA;

D.       An award of attorneys' fees and costs to counsel for Plaintiff and the Class;

E.       An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firm representing Plaintiff as counsel for the Class; and

G.       Such other relief as the Court deems just and proper.

Dated: October 17, 2017                                  Respectfully submitted,

                                                      KEVIN PINE

/s/ Gary M. Klinger_____
Gary M. Klinger
Ryan F. Sullivan
Kozonis Law, Ltd.
4849 N. Milwaukee Ave., Ste. 300
Chicago, Illinois 60630
Phone: 773.545.9607
Fax: 773.496.8617
gklinger@kozonislaw.com
rsullivan@kozonislaw.com

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
Jonathan D. Selbin
Email: jselbin@lchb.com
250 Hudson Street, 8th Floor
New York, NY  10013
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
Daniel M. Hutchinson
Email: dhutchinson@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone:  (415) 956-1000
Facsimile:   (415) 956-1008

HUSSIN LAW
Tammy Gruder Hussin
Email: Tammy@HussinLaw.com
1596 N Coast Highway
Encinitas, CA 92024
Telephone: (877) 677-5397
Facsimile: (877) 667- 1547

*Attorneys for Plaintiff and the Putative Class*

## **CERTIFICATE OF SERVICE**

Gary M. Klinger, an attorney, hereby certifies that he caused a copy of the foregoing to be served on all counsel of record by electronically filing the document with the Clerk of Court using the ECF system this 17th day of October, 2017.

                                                            s/Gary M. Klinger
                                                            Gary M. Klinger