# Exhibit A

THE HONORABLE THOMAS S. ZILLY

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| KEVIN PINE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>A PLACE FOR MOM, INC., a Delaware corporation,<br><br>Defendant. | Case No. 17-cv-1826<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO COMPEL DEFENDANT TO PRODUCE RELEVANT DISCOVERY**<br><br>**Noting Date: August 3, 2018** |

## I. **INTRODUCTION**

This discovery dispute involves targeted discovery requests seeking data that Defendant A Place for Mom, Inc. ("APFM") maintains in a company database showing the telemarketing calls it placed in violation of the Telephone Consumer Protection Act ("TCPA"). Because such discovery, i.e., a Call List and Call Data, is relevant and discoverable in a TCPA class action, courts have consistently and uniformly ordered production of precisely the information Plaintiff seeks here. *See, e,g.*, Dkt. 90 at 7 (citing numerous cases ordering production of call data in TCPA class actions). APFM does not address or distinguish the cases mandating production. For that reason alone, the motion to compel should be granted.

Plaintiff's Reply in Support of Motion to
Compel Defendant to Produce Relevant
Discovery
Case No. 17-cv-1826

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 Fourth Avenue, Suite 1900
Seattle, WA 98121
Tel: (206) 739-9059

APFM's primary excuse for refusing to produce relevant class discovery that is "standard practice" in actions under the TCPA is that the parties supposedly made an agreement that would relieve APFM from its discovery obligations. No such "agreement" exists. Rather, Plaintiff offered to accept either the Call List and Call Data, or an accurate summary of them. When APFM refused to provide either, Plaintiff moved to compel. APFM's assertion that Plaintiff agreed to forgo key discovery makes no sense. Why would Plaintiff strike any agreement that would relieve APFM from producing discovery relevant to class certification issues?

Other than conjuring up a fictional agreement, APFM provides no reasonable basis to excuse itself from its discovery obligations in this matter. The minimal case law APFM cites purportedly in support of its position is easily distinguishable and cuts against the overwhelming weight of authority on this issue. Nor is APFM's burden argument well-taken. APFM admits it has *already* queried the relevant Call List and Call Data and can therefore easily produce it. For these reasons, discussed more fully below, Plaintiff's Motion to Compel (Dkt. 90) should be granted.

## II. ADDITIONAL BACKGROUND

APFM attempts to distract the Court from this straightforward discovery issue by making inaccurate statements regarding Plaintiff Pine and proposed class members' claims. *See* Dkt. 91 at 2-3. Therefore, Mr. Pine provides this additional background for the Court's benefit.

Contrary to APFM's misrepresentations that Mr. Pine "appreciated" APFM's unsolicited telemarketing robocalls, Mr. Pine testified to the opposite in his deposition. Plaintiff provided his phone number to APFM only because APFM promised he could view online senior living quotes – quotes APFM never actually provided. *See* Ex.1 at 180-81. Mr. Pine never expected APFM to call him. *Id*. at 178. He has "been on the Do Not Call list for a long time." *Id*. at 53. APFM's harassing sales calls upset Mr. Pine because they came at a time when he was in an emotional state

Plaintiff's Reply in Support of Motion to
Compel Defendant to Produce Relevant
Discovery
Case No. 17-cv-1826

- 2 -

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 Fourth Avenue, Suite 1900
Seattle, WA 98121
Tel: (206) 739-9059

due to the concurrent deaths of his mother and stepmother. *Id*. at 53-54, 179. Mr. Pine felt APFM was trying to take advantage of his emotional state. *Id*. at 44.[1]

Plaintiff's experience with APFM is consistent with the many other consumers across the country who have lodged complaints about APFM's abusive and deceptive telemarketing practices. Such complaints ultimately caused the State of Washington to enact legislation clamping down on senior care referral services like those offered by APFM—legislation APFM vigorously opposed. *See* Dkt. 90 at 4. Plaintiff's experience with APFM is also consistent with the sworn testimony of Tequoia Urbina – a whistleblower who provided call center support for APFM. *See* Dkt. 90-2. Ms. Urbina confirms that consumers often "complained they did not request to be called" and also complained "about APFM's excessive calling practices." *Id*. at ¶¶ 6, 15. Ms. Urbina testified APFM's autodialer is programmed to call each consumer **fifteen (15) times**. ▮

▮

▮

Accordingly, Plaintiff seeks to represent all other aggrieved consumers who, like him, provided their cell phone number to a website owned and operated by APFM and then received incessant telemarketing calls from APFM.

## III. ARGUMENT

### A. The Case Law Overwhelmingly Holds That Plaintiff is Entitled to This Routine Discovery.

APFM simply fails to address the overwhelming weight of authority in this District and across the country that supports Plaintiff's position. *See*, *e.g., Gilman et al. v. ER Solutions*, No. C11-0806-JCC, Order, Dkt. 67, at p. 4 (W.D. Wash. Feb. 3, 2012) (attached as Exhibit 1 to Dkt.

---

[1] While APFM harps—without providing any context—on an email reply Plaintiff sent in response to an APFM *email* (not a call), Plaintiff made clear in his deposition that his email meant "thank you, I'll be in touch, leave me alone," *and* was his polite way of telling APFM to stop contacting him. *Id*. at 178-79. After that communication was sent, Mr. Pine continued to receive unwanted calls and emails from APFM—which he ignored. *Id*.

Plaintiff's Reply in Support of Motion to Compel Defendant to Produce Relevant Discovery
Case No. 17-cv-1826

- 3 -

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 Fourth Avenue, Suite 1900
Seattle, WA 98121
Tel: (206) 739-9059

90) (granting call data discovery in TCPA class action); *Ossola v. Am. Express Co.,* No. 12-cv-4836, 2015 WL 5158712, at *7 (N.D. Ill. Sept. 3, 2015) ("Call data is relevant, and thus produced as standard practice . . . in cases where the defendant is the alleged dialer."); *O'Shea v. Am. Solar Sol., Inc.*, No. 14CV894-L (RBB), 2016 WL 701215, at *2 (S.D. Cal. Feb. 18, 2016) (granting plaintiff's request for outbound dial list because the "information is relevant to both class certification and to the merits of the case"); *Cahill v. GC Servs. Ltd. P'ship*, No. 317CV01308GPCMDD, 2018 WL 1791910, at *4 (S.D. Cal. Apr. 16, 2018) (compelling production of call list); *Gossett v. CMRE Fin. Servs.,* Case No. 15cv803 MMA (NLS), 2015 WL 6736883, at *3 (S.D. Cal. Oct. 30, 2015) (granting a motion to compel responses to requests for production of outbound call lists, as such lists were "relevant to the class claims and meritorious claims and defenses in this case").[2] Plaintiff's motion should be granted for this reason alone.

The scant case law APFM musters in support of its assertion that production of the Call List and Call Data is not "standard practice" in TCPA litigation is easily distinguishable. For example, APFM cites the court's order in *Ronquillo-Griffin v. Transunion Rental Screening Sols.*, No. 17-

---

[2] *See also Martin v. Bureau of Collection Recovery*, No. 10 C 7725, 2011 U.S. Dist. LEXIS 157579 at *8-*12 (N.D. Ill. June 13, 2011) (granting plaintiffs' requests for a call list); *Donnelly v. NCO Fin. Sys., Inc.*, 263 F.R.D. 500, 503-504 (N.D. Ill. 2009) (granting plaintiffs' request for defendant's call logs); *Whiteamire Clinic, P.A. v. Quill Corp.*, 12-cv-5490, 2013 WL 5348377, at *2 (N.D. Ill. 2013) (granting plaintiff's request for call list; "the information plaintiff seeks…is clearly relevant to class discovery; specifically to the issues of numerosity, commonality, and typicality"); *Stemple v. QC Holdings, Inc.*, 2013 U.S. Dist. LEXIS 99582 at *6 (S.D. Cal. June 17, 2013) ("A request for an outbound dial list in a TCPA action is relevant to class certification issues, such as 'the number and ascertainability of potential class members.'") (citation omitted); *Gaines v. Law Office of Patenaude & Felix, A.P.C.*, 2014 U.S. Dist. LEXIS 110162 at *5 (S.D. Cal. June 12, 2014) (in a TCPA case, "the outbound dial list is relevant to the issues of numerosity and commonality under Federal Rule of Civil Procedure 23(a), and is therefore discoverable."); *City Select Auto Sales Inc. v. BMW Bank of North America, Inc.*, 867 F.3d 434, 440-41 (3d Cir. 2017) (class-wide call data relevant to ascertainability); *Legg v. American Eagle Outfitters, Inc.*, 14-cv-61058, Order, Dkt. 69 (S.D. Fla. Nov. 21, 2014) (ordering production of text message call data in TCPA case because it is "relevant discovery on whether a class is ascertainable and to class factors such as numerosity, typicality and commonality."); *Doherty v. Comenity Capital Bank & Comenity Bank*, No. 16-cv-1321, 2017 WL 1885677, at *4 (S.D. Cal. 2017) (same); *Haghayeghi v. Guess?, Inc*., 168 F. Supp. 3d 1277, 1280 (S.D. Cal. 2016) ("Here, the information can be used toward discovery of whether the putative class suffered the same alleged injury of receiving unauthorized text messages from Defendant, and thus would bear on issues of commonality and typicality."); *Thrasher v CMRE Fin. Servs., Inc*., 2015 U.S. Dist. LEXIS 34965 (S.D. Cal. March 13, 2015) (ordering production of outbound call lists and information pertaining to the defense's affirmative defense of prior consent).

cv-129, 2018 WL 325051, at *3 (S.D. Cal. Jan. 8, 2018), wherein the court denied the production of various audio recordings. *See* Dkt. 91 at 8. But that case did not even involve the TCPA. Rather, it was a class action alleging the defendant "violated the California Invasion of Privacy Act," which has nothing to do with this case. *Id.* at *1. Moreover, the discovery at issue – call recordings – similarly has nothing to do with the substance of Plaintiff's motion to compel. In fact, the court even acknowledged that unlike cases under the CIPA, "outbound dial lists generally are relevant to numerosity and commonality, *and therefore discoverable in TCPA cases*." *Id.* at * 5 (emphasis added). Accordingly, the court's order in *Ronquillo* **supports** Plaintiff's Motion to Compel.

APFM's other cited authority is similarly distinguishable. In *Gusman v. Comcast Corp.*, 298 F.R.D. 592, 599 (S.D. Cal. 2014), the court held it was inappropriate to require the defendant to produce an outbound dial list only because the consumer had failed to clearly define the class definition and was seeking information relating to marketing calls when it was clear the plaintiff had received debt collection calls. No such circumstances are present here. In *Knutson v. Schwan's Home Serv., Inc.*, No. 3:12-CV-0964-GPC-DHB, 2013 WL 3746118, at *8 (S.D. Cal. July 15, 2013), the court held the defendant did not need to produce a ***second*** outbound dial list because the defendant already stipulated to certain class certification requirements and because "a more relevant call list" had already been produced. Here, APFM has not produced any call list nor has it agreed to stipulate that certain class certification requirements have been satisfied. Accordingly, none of the three cases APFM cites actually support its position with respect to production of the Call List and Call Data.

Simply put, production of the Call List and Call Data *is* "standard practice" in TCPA litigation because it is relevant to class certification issues. APFM's argument on this point should therefore be rejected.

### B. Plaintiff's Motion is Timely.

APFM contends that Plaintiff's Motion is premature because it did not have an opportunity to respond to Plaintiff's request for the Call Data and Call List. Dkt. 91 at 6. Not so. On July 12,

Plaintiff's Reply in Support of Motion to Compel Defendant to Produce Relevant Discovery
Case No. 17-cv-1826

- 5 -

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 Fourth Avenue, Suite 1900
Seattle, WA 98121
Tel: (206) 739-9059

2018, Plaintiff's counsel wrote to APFM's counsel "reiterat[ing] his request for production of the Call List and Call Data discovery." *See* Dkt. 90-2. Because the fact discovery cut-off for class certification is August 6, 2018, Plaintiff requested that APFM confirm it would produce the requested discovery—which was first requested in February—no later than July 13, 2018. *Id*. Plaintiff expressly stated "the parties [would] be at an impasse and Plaintiff will seek court intervention" if APFM failed to respond by the specified deadline. *Id*. APFM refused to confirm it would provide the Call List and Call Data so Plaintiff was forced to seek court intervention. *Id*. To date, APFM *still* refuses to produce the requested discovery, which, as discussed above, is highly relevant to class certification issues. Accordingly, the parties *are* at an impasse and Plaintiff's motion is ripe for this Court's consideration.

### C. Plaintiff Never Excused APFM From Its Discovery Obligations.

As an alternative ground for refusing to produce routine TCPA class discovery, APFM claims that the parties struck a bargain excusing APFM from producing the requested Call List and Call Data. APFM supports its claim by referring to a June 1 letter from Plaintiff's counsel. Dkt. 91 at 5, 7. APFM, however, ignores the fact that it refused to meet the very limited conditions under which Plaintiff agreed to accept APFM's written representations with respect to the Call List and Call Data in lieu of providing it.

In its June 1 letter to Defendant's counsel, Plaintiff's counsel stated that in order for Plaintiff to accept APFM's written representations, "APFM must confirm that the answer is accurate and responsive to Plaintiff's discovery requests. In other words, ***if APFM cannot confirm the total number of persons who received a cell phone call after visiting APFM's "locate" websites and the number of calls such persons received, Plaintiff requires the call data so that his expert can determine that number***." Dkt. 92-1 (emphasis added). APFM refused to meet these conditions. Instead, APFM belatedly served supplemental interrogatory responses along with an unverified letter which (1) inexplicably omitted certain persons from Plaintiff's proposed class definition and

Plaintiff's Reply in Support of Motion to
Compel Defendant to Produce Relevant
Discovery
Case No. 17-cv-1826

- 6 -

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 Fourth Avenue, Suite 1900
Seattle, WA 98121
Tel: (206) 739-9059

(2) failed to disclose the number of calls placed to each cell phone number.[3]  *See* Dkt. 90-2. Accordingly, on July 12th, Plaintiff's counsel informed Defendant's counsel that, because APFM had failed to meet its limited conditions, Plaintiff would move to compel unless APFM produced the requested discovery. APFM, however, never agreed to provide the requested discovery and thus Plaintiff was forced to seek court intervention. *See* Dkt. 90, 90-2. Therefore, no bargain was ever "struck" between the parties prior to the filing of this Motion.

After the filing of this Motion, APFM belatedly served supplemental interrogatory responses in an attempt to remedy its deficient discovery responses. But those discovery responses *still* failed to "confirm that the answer is accurate and responsive to Plaintiff's discovery requests" – the limited precondition under which Plaintiff agreed to forego the Call Data and Call List for pre-class certification purposes. *Supra* at 7. Rather, APFM's supplemental interrogatory responses expressly stated they were an "estimate of the number" of class members and that "APFM ***cannot identify the information Plaintiff requested***." *See* Dkt. 92-1, pp. 34 of 76 (emphasis added). APFM made vague and unsubstantiated claims that some of the individuals who submitted webforms on APFM's "locate websites" were false or fake and therefore refused to confirm those individuals were part of Plaintiff's proposed class. *Id*. at pp. 34-41 of 76. In addition, APFM *still* refused to provide the numbers of calls to each of the proposed class members.

Because APFM refused to provide accurate and responsive information, Plaintiff's counsel explained to APFM that they required production of the Call List and Call Data so that Plaintiff's expert could conduct his own analysis with the raw data. *See* Ex. 3 attached hereto.

For these reasons, APFM is simply wrong to claim an agreement was struck excusing it from its discovery obligations.

---

[3]  APFM unilaterally chose not to provide information with respect to persons "who had requested information from A Place for Mom directly or through one of its marketing channels or vendors before or after submitting information on the "Locate" websites" even though these individuals fell within Plaintiff's proposed class definition.

Plaintiff's Reply in Support of Motion to Compel Defendant to Produce Relevant Discovery
Case No. 17-cv-1826

- 7 -

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 Fourth Avenue, Suite 1900
Seattle, WA 98121
Tel: (206) 739-9059

### D. APFM's Burden Argument Is Not Well-Reasoned and Does Not Justify Excusing APFM From Responding to Routine Discovery.

APFM's final basis for why it should not be required to produce the Call List and Call Data is that the production of this information would be too burdensome. Dkt. 91 at 9-10. But this argument too makes no sense. APFM concedes in its opposition that it has *already* compiled and analyzed the data at issue both for purposes of providing it to a third-party call vendor and supplementing its interrogatory answers in these proceedings. *See* Dkt. 91 at 5, 10 ("A Place for Mom has already…analyz[ed] such data in order to provide Plaintiff with the information A Place for Mom produced in its supplemental response to Interrogatory Number 8."). Since APFM has already pulled the data together and produced it to a third-party call vendor, all it needs to do is produce that same information to Plaintiff so that his expert too can analyze it for class certification purposes. Therefore, there will be no burden whatsoever on APFM to simply reproduce the data it already queried. To the contrary, Plaintiff's proposal ensures that any burden falls squarely on the shoulders of Plaintiff – who will have his expert process the data accurately and completely.

Moreover, even if APFM had made a proper showing that the Call Data and Call List is not reasonably accessible because of undue burden or cost—which it has not—the court may nonetheless order the discovery if the requesting party shows good cause. *Moore v. Lowe's Home Centers, LLC*, No. 14-1459 RJB, 2016 WL 687111, at *3 (W.D. Wash. Feb. 19, 2016) (citing Fed. R. Civ. P. 26). Here, good cause exists for the production of the Call Data and Call List.

As set forth above, this discovery is highly relevant to class certification issues such as ascertainability, numerosity, and commonality. *See supra* at 4-5 citing cases.

In addition, the deposition of APFM's 30(b)(6) corporate representative, Robert Grammatica, further demonstrates the need for Plaintiff's expert to conduct his own analysis with respect to the Call List and Call Data because there is a vast discrepancy between APFM's supplemental interrogatory responses and its corporate representative's testimony with respect to the number of individuals who visited APFM's websites. In its supplemental interrogatory

Plaintiff's Reply in Support of Motion to Compel Defendant to Produce Relevant Discovery
Case No. 17-cv-1826

- 8 -

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 Fourth Avenue, Suite 1900
Seattle, WA 98121
Tel: (206) 739-9059

responses, APFM claimed that it received only 97,937 inquiries to its "locate websites" since August of 2013. *See* Dkt. 92-1 at Int. No. 8. ████████████

████████████

████████████

████████████ ██ ██

████████████

████████████ This approximation is vastly different than the mere 97,000 inquiries APFM claims it received to the "locate websites" over a 4-year period. Because of this discrepancy, Plaintiff's expert must be given the raw data so that he may make an appropriate determination as to the scope of the class.

For these reasons, APFM's ill-reasoned burden argument does not justify excusing APFM from responding to Plaintiff's routine TCPA class discovery particularly in view of the discrepancy between its sworn interrogatory responses and corporate representative testimony.

## IV. **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant his Motion to Compel and enter an Order requiring APFM to produce the Call List and Call Data within seven (7) days of the entry of such an Order.

Plaintiff's Reply in Support of Motion to Compel Defendant to Produce Relevant Discovery
Case No. 17-cv-1826

- 9 -

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 Fourth Avenue, Suite 1900
Seattle, WA 98121
Tel: (206) 739-9059

| | |
|---|---|
| | Respectfully submitted, |
| Dated: August 3, 2018 | By: */s/ Sharon M. Lee*<br>Sharon M. Lee, WA Bar No. 37170<br>LIEFF CABRASER HEIMANN &<br>BERNSTEIN, LLP<br>2101 Fourth Avenue, Suite 1900<br>Seattle, WA 98121<br>Telephone: (206) 739-9059<br>Facsimile: (415) 956-1008<br>E-mail: slee@lchb.com |
| | LIEFF CABRASER HEIMANN &<br>BERNSTEIN, LLP<br>Daniel M. Hutchinson<br>275 Battery Street, 29th Floor<br>San Francisco, CA 94111-3339<br>Telephone: (415) 956-1000<br>Facsimile: (415) 956-1008<br>E-mail: dhutchinson@lchb.com |
| | LIEFF CABRASER HEIMANN &<br>BERNSTEIN, LLP<br>Jonathan D. Selbin<br>250 Hudson Street, 8th Floor<br>New York, NY 10013<br>Telephone: (212) 355-9500<br>Facsimile: (212) 355-9592<br>E-mail: jselbin@lchb.com |
| | LIEFF CABRASER HEIMANN &<br>BERNSTEIN, LLP<br>John T. Spragens<br>222 2nd Ave S, Suite 1640<br>Nashville, TN 37201<br>Telephone: (615)313-9000<br>Facsimile: (615) 313-9965<br>E-mail: jspragens@lchb.com |
| | KOZONIS & KLINGER, LTD.<br>Gary M. Klinger<br>Ryan F. Sullivan<br>4849 N. Milwaukee Ave., Ste. 300<br>Chicago, Illinois 60630<br>Telephone: (312) 283-3814<br>Facsimile: (773) 496-8617<br>E-mail: gklinger@kozonislaw.com<br>E-mail: rsullivan@kozonislaw.com |

Plaintiff's Reply in Support of Motion to Compel Defendant to Produce Relevant Discovery
Case No. 17-cv-1826

- 10 -

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 Fourth Avenue, Suite 1900
Seattle, WA 98121
Tel: (206) 739-9059

HUSSIN LAW
Tammy Gruder Hussin
Email: Tammy@HussinLaw.com
1596 N Coast Highway
Encinitas, CA 92024
Telephone: (877) 677-5397
Facsimile: (877) 667- 1547

*Counsel for Plaintiff and the Proposed Class*

Plaintiff's Reply in Support of Motion to Compel Defendant to Produce Relevant Discovery
Case No. 17-cv-1826

- 11 -

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 Fourth Avenue, Suite 1900
Seattle, WA 98121
Tel: (206) 739-9059

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 3, 2018, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

*/s/ Gary M. Klinger*
Gary M. Klinger

Plaintiff's Reply in Support of Motion to Compel Defendant to Produce Relevant Discovery
Case No. 17-cv-1826

- 12 -

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 Fourth Avenue, Suite 1900
Seattle, WA 98121
Tel: (206) 739-9059

# EXHIBIT A

CONFIDENTIAL - UNDER PROTECTIVE ORDER

In the matter of:

PINE vs. A PLACE FOR MOM, INC.

───────────────────────────────

───────────────────────────────

Jennifer Mellet, 30(b)(6) A Place for Mom

07/24/2018

Reported by: PATSY D. JACOY, CCR 2348

Kramm Job No. 84337



Trusted by the best law firms to handle complex litigation.

2224 THIRD AVENUE, SAN DIEGO, CALIFORNIA, 92101

1  attempts to contact with them because we know that this
2  time in their life can be very stressful, so we want to
3  get in contact with them when the time is right for
4  them.
5      Q.  (BY MR. HUTCHINSON)  So my question to you is
6  if there's a standard number of calls that A Place for
7  Mom places?
8      A.  Well, we -- we hope to connect with them on
9  the first attempt, so some families may only receive
10 one phone call from us while others may receive
11 multiple phone calls from us. █████████████████
12 ████████████████████████████████████████████████
13 ███████████████████████████████████████████
14 █████
15     Q.  So is it fair to say that A Place for Mom will
16 place calls to consumers until it contacts them up to a
17 15 number of calls?
18     A.  ████████████████████████████████████████
19 ████████████████████████████████████████████
20 ████████████████████████████████████████████
21     Q.  Does A Place for Mom have a script for the
22 calls that it makes?
23     A.  It has a guiding script.
24     Q.  So yes, it does have a script?
25     A.  I mean they don't have to say it word for

# EXHIBIT B

In the matter of:

PINE vs. A PLACE FOR MOM, INC.

---

---

Robert Grammatica, 30(b)(6) A Place for Mom

07/24/2018

Reported by: PATSY D. JACOY, CCR 2348

Kramm Job No. 84337



Trusted by the best law firms to handle complex litigation.

2224 THIRD AVENUE, SAN DIEGO, CALIFORNIA, 92101

```
 1        Q.   What about referrals from experts, doctors,
 2   hospitals, is that all lumped within affiliate
 3   marketing?
 4        A.   That's separate and not in my area.
 5        Q.   So that isn't considered part of the
 6   marketing -- marketing-based leads I suppose; is that
 7   correct?
 8        A.   Correct.
 9        ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
10   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
11        A.   Yeah.  Again, probably a little more than that
12   combined.
13        Q.   And with respect to those two categories,
14   that's all leads that come through the website to A
15   Place for Mom; is that correct?
16        A.   It includes calls because there's telephone
17   numbers on the website.
18        Q.   Do you know what percentage of people who go
19   through the SEO or SEM channel end up calling A Place
20   for Mom versus submitting a form online?
21        A.   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  ▓▓▓▓▓▓▓▓
22   ▓▓▓▓▓▓
23             MR. SNELL:  And I don't want to object
24   to every question, but again, we've -- he's prepared to
25   testify about the Locate sites as we said and the
```

```
 1   objections -- you asked -- have not yet -- you've asked
 2   about a lot of stuff that he's not been prepared to
 3   testify about.  But to the extent you have knowledge,
 4   don't speculate, you can answer the questions.
 5        Q.   (BY MR. SPRAGENS)  Do you know how many
 6   potential leads, by which I mean inquiries, A Place for
 7   Mom receives every year through SEM?
 8        A.   You're asking me to speculate the total
 9   number.
10        Q.   You can estimate, if that's easier.
11             MR. SNELL:  And only if you can
12   estimate.  Don't guess.
13        A.   I need a calculator.
14        Q.   (BY MR. SPRAGENS)  Maybe it would -- maybe it
15   would be easier to work backward.  How many total
16   inquiries does A Place for Mom receive every year?
17        A.   ████████████████████████████████████████
18   ████████████████████████████████
19        Q.   And the percentages we discussed earlier were
20   referred leads, but the same percentages apply in terms
21   of just the hard inquiries?
22        A.   ██████████████████████
23        Q.   Any differences worth noting?
24        A.   Yes, the ones that are SEO are highly
25   qualified because the people know exactly what they're
```