1
2
3
4
5
6
7

THE HONORABLE THOMAS S. ZILLY

8
9

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON**

10
11

KEVIN PINE, individually and on behalf
of all others similarly situated,

12

Plaintiff,

13

v.

14

A PLACE FOR MOM, INC., a Delaware
corporation,

15

Defendant.

16

Case No. 17-cv-1826

**SECOND AMENDED CLASS ACTION
COMPLAINT**

17    Plaintiff, Kevin Pine, individually and on behalf of all other persons similarly situated, by

18 his undersigned attorneys, for his Second Amended Class Action Complaint against Defendant,

19 A Place For Mom, Inc., alleges the following based upon personal knowledge as to himself and

20 his own action, and, as to all other matters, respectfully alleges, upon information and belief and

21 investigation of his counsel, as follows:

22                          <u>**NATURE OF THE ACTION**</u>

23    1.    This case is about bringing an end to the rampant violations of the Telephone

24 Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*, that occur within the sphere of the

25 online "lead" generating industry.

26    2.    Defendant specializes in generating "leads" by placing calls to consumers looking

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WA  98121-2315
TELEPHONE:206.739.9059
FACSIMILE:415.956.1008

1   for senior care, and then referring those consumers for a fee to customers of Defendant, who are

2   typically senior living communities.  In order to obtain consumers' cell phone numbers,

3   however, Defendant uses improper tactics that plainly violate the TCPA's "prior express written

4   consent" requirements.

5          3.       As described more fully below, Defendant owns and operates a website that is a

6   marketing tool for thousands of senior housing communities and providers to whom it refers

7   consumers that search on the Internet for information regarding senior housing providers.

8   Through this website, Defendant gains access to the cell phone numbers of thousands of

9   consumers (including Plaintiff and the Class) who unwittingly provide their phone numbers

10  when they are prompted to do so in order to purportedly review options for senior care in their

11  local area.  Shortly after these consumers enter their cell phone numbers on Defendant's website,

12  Defendant bombards these consumers with telemarketing calls using an automatic telephone

13  dialing system ("ATDS").

14         4.       Unbeknownst to these consumers at the time they provide their cell phone

15  numbers, there exists a statement intentionally (and inconspicuously) hidden on Defendant's

16  website that purportedly authorizes Defendant to place autodialed phone calls to these

17  consumers.

18         5.       Because Defendant hides this purported authorization statement on its website,

19  Defendant fails to obtain consumers' prior express written consent to place autodialed

20  telemarketing calls to their cell phones, as required under the TCPA.

21         6.       Indeed, Defendant's very practice of hiding the purported authorization statement

22  is a full affront to the TCPA because it defeats the very purpose for which the TCPA was enacted

23  – to protect consumers from unwanted autodialed telemarketing calls.  Accordingly, Plaintiff

24  files the instant lawsuit in order to put an end to Defendant's (and the general industry's) practice

25  of paying "lip service" to the TCPA.

26         7.       By this lawsuit, Plaintiff seeks an injunction requiring Defendant to cease all

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 17-CV-1826
1640988.1

-2-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WA  98121-2315
TELEPHONE:206.739.9059
FACSIMILE:415.956.1008

1  unlawful telemarketing activities, as well as an award of statutory damages to Plaintiff and

2  members of the Class for each and every call placed in violation of the TCPA.

3  **JURISDICTION AND VENUE**

4  8.      This Court has subject matter jurisdiction pursuant to the Class Action Fairness

5  Act of 2005 (hereinafter referred to as "CAFA") codified as 28 U.S.C. § 1332(d)(2).  The matter

6  in controversy exceeds $5,000,000 in the aggregate, exclusive of interests and costs, as each

7  member of the proposed Class of at least thousands is entitled to up to $1,500.00 in statutory

8  damages for each call that has violated the TCPA.  Further, Plaintiff and Defendant are citizens

9  of different States.

10  9.      The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47

11  U.S.C. § 227, *et seq.*

12  10.      The Court has personal jurisdiction over Defendant because Defendant's principal

13  place of business is in Seattle, Washington.

14  11.      Venue is proper because a substantial portion of the events complained of

15  occurred in this District.

16  **PARTIES**

17  12.      Plaintiff, Kevin Pine, is a citizen of the State of California residing in the City of

18  Carlsbad and is a member of the Class defined herein.

19  13.      Defendant, A Place for Mom, Inc. is a corporation existing under the laws of the

20  State of Delaware with its principal place of business in Seattle, Washington.

21  **THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227**

22  14.      In 1991, Congress enacted the TCPA in response to a growing number of

23  consumer complaints regarding certain telemarketing practices.

24  15.      Section 227(b)(1)(A)(iii) of the TCPA provides, in pertinent part:

25  It shall be unlawful for any person within the United States, or any
person outside the United States if the recipient is within the
26  United States—

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 17-CV-1826                                   -3-
1640988.1

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WA  98121-2315
TELEPHONE:206.739.9059
FACSIMILE:415.956.1008

(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—

\*        \*        \*

(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States.

16.     Thus, the plain language of section 227(b)(1)(A)(iii) of the TCPA prohibits the use of an automatic telephone dialing system "ATDS") or autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

17.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA and whose regulations are generally binding, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

18.     The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." § 227(a)(1)(A)-(B).

19.     This statutory language dictates that "the term 'automatic telephone dialing system' means equipment which has the capacity—(1) to store numbers to be called *or* (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if the system must be turned on or triggered by a person)." *Marks v. Crunch San Diego, LLC*, No. 14-56834, 2018 WL 4495553, at \*8 (9th Cir. Sept. 20, 2018)

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 17-CV-1826
1640988.1

-4-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WA  98121-2315
TELEPHONE:206.739.9059
FACSIMILE:415.956.1008

1    (emphasis supplied).[1]

2        20.      Predictive dialers fall within the scope of the term 'automatic telephone dialing

3    system.  *See Marks*, 2018 WL 4495553, at *8 ("Although Congress focused on regulating the use

4    of equipment that dialed blocks of sequential or randomly generated numbers—a common

5    technology at that time—language in the statute indicates that equipment that made automatic

6    calls from lists of recipients was also covered by the TCPA.").[2]

7        21.      The Ninth Circuit has also held that, based on the TCPA's statutory language, a

8    predictive dialing system constitutes an ATDS under the TCPA.  *Marks*, 2018 WL 4495553, at

9    *8 ("Although Congress focused on regulating the use of equipment that dialed blocks of

10   sequential or randomly generated numbers—a common technology at that time—*language in*

11   *the statute indicates that equipment that made automatic calls from lists of recipients was also*

12   *covered by the TCPA*.") (emphasis supplied); *accord Soppet v. Enhanced Recovery Co., LLC*,

13   679 F.3d 637, 638-39 (7th Cir. 2012).

14       22.      The FCC has also issued a Declaratory Ruling confirming that autodialed calls

15   and calls using an artificial voice or prerecorded message to a wireless number are permitted

16

17   [1] In the past, the FCC has held that this definition is satisfied when a dialing system has the
     capacity to call "a given set of numbers" or when "dialing equipment is paired with . . . a
18   database of numbers."  *In re Rules & Regulations Implementing the Telephone Consumer
     Protection Act of 1991*, 18 FCC Rcd. 14,014, ¶ 133 (2003); *see In the Matter of Rules &
19   Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 566 (F.C.C.
     2008) (rejecting argument that a dialing system "meets the definition of autodialer only when it
20   randomly or sequentially generates telephone numbers, not when it dials numbers from customer
     telephone lists" and reasoning that "the teleservices industry had progressed to the point where
21   dialing lists of numbers was far more cost effective").
     [2] Previously, the FCC has explained that while previous autodialers generated random numbers
22   to call, "the evolution of the teleservices industry has progressed to the point where using lists of
     numbers is far more cost effective." *In re Rules & Regulations Implementing the Tel. Consumer
23   Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14092 (2003). So a predictive dialer, which "has the
     capacity to store or produce numbers and dial those numbers at random, in sequential order, or
24   from a database of numbers," *id.* at 14091, "constitutes an automatic telephone dialing system
     and is subject to the TCPA's restrictions on the use of autodialers," 23 F.C.C. Rcd. at 566. In
25   other words, an autodialer "has the specified *capacity* to generate numbers and dial them without
     human intervention regardless of whether the numbers called are randomly or sequentially
26   generated or come from calling lists." *In the Matter of Rules & Regulations Implementing the
     Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 15391, 15932 n.5 (2012) ("2012 FCC Ruling").

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WA  98121-2315
TELEPHONE:206.739.9059
FACSIMILE:415.956.1008

1   only if the calls are made with the "prior express consent" of the called party. *In the Matter of*

2   *Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559,

3   2008 WL 65485 (2008).

4        23.    The FCC took steps to further protect consumers from unwanted autodialed

5   marketing calls pursuant to the TCPA.  Among other things, the FCC issued a Declaratory

6   Ruling requiring that telemarketers obtain "prior express *written* consent" for all autodialed

7   telemarketing calls to wireless numbers.  2012 FCC Ruling, 27 F.C.C. Rcd. at 1831 (emphasis

8   added).

9        24.    In the 2012 FCC Ruling, the FCC further clarified that a consumer's written

10  consent to receive telemarketing robocalls "must be signed and be sufficient to show that the

11  consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the

12  requested consent, *i.e.*, that the consumer will receive future autodialed calls or calls that deliver

13  prerecorded messages by or on behalf of a specific seller; and (2) having received this

14  information, agrees unambiguously to receive such calls at a telephone number the consumer

15  designates.  In addition, the written agreement must be obtained without requiring, directly or

16  indirectly, that the agreement be executed as a condition of purchasing any good or service.  *See*

17  *also* 47 C.F.R § 64.1200(f)(8).  Finally, should any question about the consent arise, the seller

18  will bear the burden of demonstrating that a clear and conspicuous disclosure was provided and

19  that unambiguous consent was obtained.  2012 FCC Ruling, 27 F.C.C. Rcd. at 1844 (emphasis

20  added).

21       25.    Thus, under the TCPA, the burden is on the telemarketer – here, A Place for Mom

22  – to obtain, document, and prove prior express written consent.

## FACTUAL ALLEGATIONS

### *A Place for Mom Does Not Obtain Consumers' Prior Express*
### *Written Consent to Place Automated Telemarketing Calls*

26       26.    Defendant is the largest senior living referral service in the United States.

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 17-CV-1826
1640988.1

-6-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WA  98121-2315
TELEPHONE:206.739.9059
FACSIMILE:415.956.1008

1    Defendant provides information regarding 17,000 senior housing and elder care providers across

2    the country to consumers. Defendant also serves as a marketing tool for the thousands of senior

3    housing communities and care providers to whom it refers consumers for a fee.

4        27.    In particular, Defendant's business practices include referring private pay families

5    to assisted living communities, independent senior apartments, residential care homes for a fee

6    that is paid by senior living communities within Defendant's network.

7        28.    Defendant's business practices also include making autodialed telemarketing calls

8    to consumers or "leads" during which one of Defendant's representatives will perform an

9    assessment as to the senior living needs of the consumer.  After Defendant "qualifies" the lead,

10   Defendant will provide a list of recommended senior living communities within Defendant's

11   network.

12       29.    Because Defendant generates revenue when a senior who was referred by

13   Defendant moves to a provider within its network, Defendant is incentivized to call as many

14   consumers as possible.

15       30.    Defendant's business model has been described as "unethical" in a New York

16   Times article because Defendant only provides consumers with senior housing options in its

17   network—providers that pay Defendant a commission—even though there may be better options

18   available for the senior in search of a place to live.  "You think you've found an ally when

19   you've really found a **salesperson**," said the president of the National Association of

20   Professional Geriatric Care Managers. [3]

21       31.    One of the methods in which Defendant generates leads is through the utilization

22   of Internet marketing.  Defendant owns and operates the website: www.aplaceformom.com (the

23   "Website").

24

25

26   _____

[3] https://newoldage.blogs.nytimes.com/2011/09/02/a-helping-hand-paid-on-commission/.

-7-
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WA  98121-2315
TELEPHONE:206.739.9059
FACSIMILE:415.956.1008

32.     As shown in the following screenshot image, Defendant directs traffic to the Website through the use of paid advertisements that are displayed on search engines such as www.Bing.com or www.Google.com:



33.     When consumers click on the paid advertisement for Defendant's Website, they are directed to a webpage (the "Search Page").  Defendant maintains an identical or substantially similar webpage at several addresses, including a Locate, LocateA, LocateB, LocateC, and LocateD webpage.  The Search Page challenged in this Class Action Complaint includes all such webpages, without limitation.  An example of the Search Page is displayed as follows:

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 17-CV-1826
1640988.1

-8-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WA  98121-2315
TELEPHONE:206.739.9059
FACSIMILE:415.956.1008

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16
17
18
19
20
21
22
23
24

25    34.    As shown in the screen shot image in Paragraph 33, Defendant intentionally

26  designed the Search Page to appear as though it will generate senior housing quote *online—and*

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 17-CV-1826
1640988.1
-9-
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WA  98121-2315
TELEPHONE:206.739.9059
FACSIMILE:415.956.1008

1  only online— when the consumer enters their personal information (including their phone

2  number) in the appropriate fields and then clicks the "Start Your Search" button.

3      35.     In fact, directly above the fields that require the consumer's personal information,

4  the Search Page states the following: "Complete the form below to find the best options in your

5  local area."

6      36.     However, after the consumer provides their personal information (including their

7  phone number) and clicks on the "Start Your Search" button, the consumer is ***not*** provided with

8  ***any*** online senior housing quotes.  Instead, the consumer is immediately contacted at the phone

9  number he or she provided by a representative from Defendant via the use of an autodialer.

10     37.     When the phone call is connected, Defendant's representatives aggressively

11 attempt to persuade consumers to purchase senior housing through one of the communities

12 within Defendant's network so that Defendant can earn a commission for the sale.

13     38.     An investigation into Defendant's website reveals that the following statement is

14 intentionally (and inconspicuously) hidden at the bottom of the Search Page in barely legible

15 font:

16          We Value your privacy.  By clicking you agree to the terms and
           conditions of our Privacy Policy.  You also consent that we can
17          reach out to you using a phone system that can auto-dial
           numbers….Your consent is not required to use our services.
18

19 *See* Dkt. 31 at Ex. A.

20     39.     As shown in the screen shot image in Paragraph 33 and Exhibit A of the

21 Complaint (Dkt. 31), it is not at all clear to the consumer that he or she will be called – let alone

22 called via an ATDS – by Defendant when the consumer clicks "Start Your Search."

23     40.     Instead, the Search Page is designed in such a manner so that the consumer

24 provides his or her phone number and clicks "Start Your Search" without ever receiving notice

25 that the consumer is agreeing to be contacted via prerecorded or autodialed calls.

26     41.     That is because the purported authorization statement is inconspicuously hidden

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 17-CV-1826
1640988.1

-10-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WA  98121-2315
TELEPHONE:206.739.9059
FACSIMILE:415.956.1008

1    in barely legible font at the bottom of the Search Page beneath the "Start Your Search" button.

2    The only way a consumer could conceivably discover the purported autodialer authorization is if

3    the consumer examines the Lilliputian language at the bottom of the webpage before clicking

4    "Start Your Search."

5          42.    The consumer further has no reason to suspect that he or she is agreeing to be

6    contacted via prerecorded or autodialed calls because the webpage displaying the quote form

7    does not contain any explicit text referencing terms of agreements, nor does it instruct users that

8    they are assenting to agreements by requiring, for example, the consumer to "check a box" or

9    click "I Agree."  Instead, the webpage merely has a button that states "Start Your Search."

10         43.    Thus, consumers, including Plaintiff and other Class members, do not receive

11   reasonable notice of the purported autodialer authorization.

12         44.    Defendant's autodialer authorization thus fails to meet the thresholds of a valid

13   browsewrap agreement and is therefore unenforceable, which means that no consumer who filled

14   out the Search Page provided their consent to receive phone calls via an ATDS.

15         45.    For similar reasons, Defendant violates the TCPA's prior express written consent

16   requirements because Defendant does not provide consumers "clear and conspicuous disclosure"

17   of the consequences of providing their phone numbers on the aforementioned Search Page.

18                        *A Place for Mom Uses an ATDS*

19         46.    Defendant employed and utilized dialing software manufactured by Interactive

20   Intelligence, Inc. and Five9.  *See* https://www.five9.com/products/outbound-contact-center

21   (containing product descriptions); *see also Krakauer v. Dish Network L.L.C.*, No. 1:14-CV-333,

22   2017 WL 2455095, at *1 (M.D.N.C. June 6, 2017) (declining to set aside jury verdict in TCPA

23   case in which the defendant's agent called plaintiffs using Five9 predictive dialer), *awarding*

24   *treble damages*, 2017 WL 3206324, at *1 (M.D.N.C. July 27, 2017) (potential $61 million

25   judgment), *appeal docketed*, No. 18-1518 (4th Cir. May 8, 2018); *Thomas v. Dun & Bradstreet*

26   *Credibility Corp.*, Case No. 2:15-cv-03194-BRO-GJS (C.D. Cal.) ($10.5 million cash settlement

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 17-CV-1826
1640988.1

-11-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WA  98121-2315
TELEPHONE:206.739.9059
FACSIMILE:415.956.1008

1  for a class of small business owners who received telemarketing calls from a Five9 predictive

2  dialer); *Mey v. Frontier Comms. Corp.*, No. 3:13-cv-01191 (D. Conn. June 2, 2017) (Dkt. 164)

3  ($11 million settlement for class of consumers called by call vendor's Five9 predictive dialer).

4        47.     A Place for Mom's dialing systems are both predictive dialers.

5        48.     Like all predictive dialers, A Place for Mom's Interactive Intelligence and Five9

6  dialers are a type of automatic telephone dialing system that used stored, produced, generated, or

7  otherwise entered phone numbers from a .csv file, spreadsheet, and/or a database to

8  automatically make outgoing telephone calls.

9        49.     A Place for Mom's dialing systems both have the capacity to store numbers to be

10  called.

11        50.     A Place for Mom's dialing systems both have the capacity to produce telephone

12  numbers to be called.

13        51.     A Place for Mom's dialing systems both have the capacity to generate telephone

14  numbers to be called.

15        52.     A Place for Mom's dialing systems both have the capacity to dial telephone

16  numbers automatically.

17        53.     Once a list of phone numbers was stored, produced, generated, or otherwise

18  entered into A Place for Mom's dialing systems, A Place for Mom configured a dialing

19  campaign that caused calls to be made automatically to telephone numbers based on certain

20  criteria and without requiring the user to dial the phone numbers.  The dialing systems both

21  maintained an electronic record of each call made.

22        54.     Once Defendant's call center agent became available to field the outgoing ATDS

23  call, both dialing systems automatically connected an available call center agent with each

24  successfully completed outbound call.

25        55.     Both dialing systems were connected to one or more relational databases that also

26  store, produce, and/or generate phone numbers to be dialed.  Each such relational database is a

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 17-CV-1826
1640988.1                                                    -12-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WA  98121-2315
TELEPHONE:206.739.9059
FACSIMILE:415.956.1008

1   component of A Place for Mom's dialing systems.

2       56.     Each agent at Defendant's call center used a software program that connected to

3   Defendant's dialing system.  Once an agent logged in, both dialing systems connected the agent

4   to successfully completed outbound calls.  The software programs are a component of

5   Defendant's dialing systems.

6       57.     Defendant's Search Page acknowledges that it uses a "phone system that can

7   auto-dial numbers."

8       58.     On information and belief, Defendant's predictive dialing system placed tens of

9   thousands of calls to phone numbers programmed into the system and is programmed to call

10  consumers as many fifteen (15) times.

11      59.     On information and belief, after Defendant's representatives conclude a phone

12  call with a consumer, APFM's dialing technology will countdown from 3 to 1 and then

13  automatically start calling another phone number randomly selected from a population of phone

14  numbers and without human intervention.

15      60.     On information and belief and based on the forgoing, both of A Place for Mom's

16  dialing systems are an automatic telephone dialing system.

17                    ***Plaintiff's Experience with Defendant's Website***

18      61.     In or around December of 2015, Plaintiff visited Defendant's Search Page in

19  search of senior living options for his father.

20      62.     Plaintiff filled out the various fields and provided his personal information

21  (including his cell phone number) and then clicked the "Start Your Search" button.

22      63.     After clicking the "Start Your Search" button, Plaintiff received autodialed

23  telemarketing calls from Defendant's representatives. To be sure, Plaintiff knew it was

24  autodialed phone calls because of the call frequency and because, when he answered, there was a

25  delay before the connection with the representative was made.

26      64.     When the calls began, Plaintiff answered and was connected with a representative

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 17-CV-1826                              -13-
1640988.1

1  from Defendant.  When Plaintiff answered the phone, Defendant's representative attempted to

2  persuade him to purchase senior housing through one of Defendant's senior housing clients.

3  After the conversation, Plaintiff terminated the phone call and indicated that Defendant should

4  stop calling him. Despite this, Plaintiff continued to receive autodialed telemarketing calls from

5  Defendant for the purpose of selling senior housing.

6        65.      Plaintiff, who has been on the Do Not Call list for many years, was not aware he

7  would be receiving autodialed telemarketing calls as a result of using Defendant's website.  He

8  likewise was not aware that Defendant would provide his personal information, including his

9  phone number, to various third-party telemarketers so they too could bombard his cellphone with

10  autodialed telemarketing calls.  The calls were annoying and harassing to Plaintiff, and an

11  invasion of his privacy.  Defendant's harassing sales calls upset Mr. Pine because they came at a

12  time when he was in an emotional state due to the concurrent deaths of his mother and

13  stepmother.  Mr. Pine felt Defendant was trying to take advantage of his emotional state.

14        66.      The calls violated the TCPA because they were made without Plaintiff's prior

15  express written consent.

16              ***Defendant Harmed Plaintiff in a Manner Identical***
17              ***To the Manner in Which Plaintiff Harmed the Class***

18        67.      Plaintiff is in the same Class as all other consumers who utilized Defendant's

19  Search Page during the relevant time period.  Plaintiff and the Class clicked "Start Your Search"

20  (or a substantially similar button) and then subsequently received autodialed telemarketing calls

21  without their prior express written consent in violation of the TCPA.

22        68.      Not surprisingly, Defendant's unlawful telemarketing practices have led to

23  significant backlash from consumers across the country.  *See* Dkt. 31 at Exhibit B ("this type of

24  high-pressure 'selling' reflects very badly on the company").

25        69.      Such complaints ultimately caused the State of Washington to become the first

26  State ever to enact legislation clamping down on senior care referral services like those offered

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 17-CV-1826
1640988.1

-14-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WA  98121-2315
TELEPHONE:206.739.9059
FACSIMILE:415.956.1008

1    by Defendant—legislation that Defendant vigorously opposed.  *See*

2    https://www.seattletimes.com/seattle-news/state-gets-tough-on-referrals-for-elder-care/ (The

3    state ombudsman's office reported last month that executives from A Place for Mom

4    aggressively opposed the legislation, including "spreading distortions about the bill.").

5        70.    Indeed, this is not the first time Defendant has been sued for violations of the

6    TCPA.  *See Erickson v. A Place for Mom, Inc.*, No. 2016-cv-742 (W.D. Wash. May 23, 2016)

7    (Complaint).

8        71.    By making the unauthorized phone calls alleged herein, Defendant has caused

9    consumers (including Plaintiff) actual harm and cognizable legal injury.  This includes the

10   aggravation and nuisance and invasions of privacy that resulted from the receipt of such phone

11   calls, in addition to a loss of value realized for the monies consumers paid to their wireless

12   carriers for the receipt of such phone calls.  Furthermore, the phone calls interfered with

13   Plaintiff's and other Class members' use and enjoyment of their cellphones, including the related

14   data, software, and hardware components.  Defendant also caused substantial injury to their

15   phones by causing wear and tear on their property, consuming battery life, and in some cases

16   appropriating cellular data or minutes.

17                          **CLASS ACTION ALLEGATIONS**

18       72.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if

19   fully set forth herein.

20       73.    Plaintiff brings this action individually and on behalf of all other persons similarly

21   situated pursuant to Federal Rule of Civil Procedure 23.

22       74.    Plaintiff proposes the following Class definition, subject to amendment as

23   appropriate:

24           All persons within the United States who provided their cell phone
             number to Defendant's Search Page and then received a non-
25           emergency telephone call from Defendant, or any party acting on
             its behalf, to a cellular telephone through the use of an automated
26           telephone dialing system or an artificial or prerecorded voice.

1    Collectively, all these persons will be referred to as "Class members." Plaintiff represents, and is

2    a member of, the Class.

3         75.    Excluded from the Class is the Defendant, and any entities in which the

4    Defendant has a controlling interest, the Defendant's agents and employees, any Judge to whom

5    this action is assigned and any member of such Judge's staff and immediate family, Plaintiff's

6    counsel and Plaintiff's counsel's staff.

7         76.    Plaintiff does not know the exact number of members of the Class, but Plaintiff

8    reasonably believes the Class members number, at minimum, in the hundreds to thousands.

9         77.    Plaintiff and all members of the Class have been harmed by the acts of Defendant.

10        78.    This Class Action Complaint seeks injunctive relief and money damages.

11        79.    The joinder of all Class Members is impracticable due to the size and relatively

12   modest value of each claim.

13        80.    Additionally, the disposition of the claims in a class action will provide

14   substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

15        81.    Further, the Class can be identified easily through records maintained by

16   Defendant and/or its marketing agents.

17        82.    There are well-defined, nearly identical, questions of law and fact affecting all

18   parties.

19        83.    The questions of law and fact, referred to above, involving the Class claims

20   predominate over questions which may affect individual Class members.

21        84.    Such common questions of law and fact include, but are not limited to, the

22   following:

23              a.    Whether Defendant used an automatic telephone dialing system in making

24   non-emergency calls to Class members' cell phones;

25              b.    Whether Defendant gave proper notice to consumers that Defendant

26   intended to place calls using an automatic telephone dialing system to the cell phone numbers

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WA  98121-2315
TELEPHONE:206.739.9059
FACSIMILE:415.956.1008

1   provided by Class members;

2           c.      Whether Defendant can meet its burden of showing it obtained prior

3   express written consent to make such calls;

4           d.      Whether Defendant's conduct was knowing and/or willful;

5           e.      Whether Defendant is liable for statutory damages; and

6           f.      Whether Defendant should be enjoined from engaging in such conduct in

7   the future.

8       85.     As a person who received a non-emergency telephone call via an automatic

9   telephone dialing system, without providing his prior express consent to Defendant within the

10  meaning of the TCPA, Plaintiff asserts claims that are typical of each Class member who also

11  received such phone calls.

12      86.     Further, Plaintiff will fairly and adequately represent and protect the interests of

13  the Class.

14      87.     Plaintiff has no interests which are antagonistic to any member of the Class.

15      88.     Plaintiff has retained counsel experienced in handling class action claims

16  involving violations of federal consumer protection statutes, including claims under the TCPA.

17      89.     A class action is the superior method for the fair and efficient adjudication of this

18  controversy.

19      90.     Class wide relief is essential to compel Defendant to comply with the TCPA.

20      91.     The interest of the Class members in individually pursuing claims against the

21  Defendant is slight because the statutory damages for an individual action are relatively small,

22  and are therefore not likely to deter Defendant from engaging in the same behavior in the future.

23      92.     Management of these claims is likely to present significantly fewer difficulties

24  than are presented in many class claims because the calls at issue are all automated and the Class

25  members, by definition, did not provide the prior express consent required under the statute to

26  authorize such calls to their cellular telephones.

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 17-CV-1826
1640988.1

-17-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WA  98121-2315
TELEPHONE:206.739.9059
FACSIMILE:415.956.1008

93.     Defendant has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate.

94.     Moreover, on information and belief, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

### CAUSES OF ACTION

#### Count I

**Statutory Violations of the Telephone Consumer
Protection Act, 47 U.S.C. § 227, *et seq.***

95.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

96.     The foregoing acts and omissions of Defendant constitute violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq* and its implementing regulations.

97.     As a result of the Defendant's violations of 47 U.S.C. § 227, *et seq.*, Plaintiff and Class members are entitled to an award of $500 in statutory damages for each and every call placed in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

98.     Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting the Defendant's violation of the TCPA in the future.

99.     Plaintiff and Class members are also entitled to an award of attorneys' fees and costs as provided by law.

#### Count II

**Knowing and/or Willful Violations
of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.***

100.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 17-CV-1826
1640988.1

-18-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WA  98121-2315
TELEPHONE:206.739.9059
FACSIMILE:415.956.1008

101.     The foregoing acts and omissions of the Defendant constitute knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

102.     As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and each member of the Class is entitled to treble damages of up to $1,500 for each and every call placed in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

103.     Plaintiff and all Class members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by the Defendant in the future.

104.     Plaintiff and Class members are also entitled to an award of attorneys' fees and costs as provided by law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all Class members the following relief against Defendant:

A.     Injunctive relief prohibiting such violations of the TCPA by the Defendant in the future;

B.     As a result of the Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class member treble damages, as provided by statute, of up to $1,500 for each and every call that violated the TCPA;

C.     As a result of Defendant's statutory violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class member $500 in statutory damages for each and every call that violated the TCPA;

D.     An award of attorneys' fees and costs to counsel for Plaintiff and the Class;

E.     An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firm representing Plaintiff as counsel for the Class; and

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 17-CV-1826
1640988.1

-19-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WA  98121-2315
TELEPHONE:206.739.9059
FACSIMILE:415.956.1008

1          F.      Such other relief as the Court deems just and proper.

2    Dated: October 13, 2018                  Respectfully submitted,

3

                                  By:    /s/ Sharon M. Lee

4

5                                  Sharon M. Lee, WA Bar No. 37170
                              **LIEFF CABRASER HEIMANN**
6                                  **& BERNSTEIN, LLP**
                              2101 Fourth Avenue, Suite 1900
7                                  Seattle, WA  98121
                              Telephone:  (206) 739-9059
8                                  Facsimile:  (415) 956-1008
                              E-mail:  slee@lchb.com

9                                  **LIEFF CABRASER HEIMANN**
                              **& BERNSTEIN, LLP**
10                                 Daniel M. Hutchinson
                              275 Battery Street, 29th Floor
11                                 San Francisco, CA  94111-3339
                              Telephone:  (415) 956-1000
12                                 Facsimile:  (415) 956-1008
                              E-mail: dhutchinson@lchb.com
13

14                                 **LIEFF CABRASER HEIMANN**
                              **& BERNSTEIN, LLP**
15                                 Jonathan D. Selbin
                              250 Hudson Street, 8th Floor
16                                 New York, NY  10013
                              Telephone:  (212) 355-9500
17                                 Facsimile:  (212) 355-9592
                              E-mail:  jselbin@lchb.com
18

19                                 **LIEFF CABRASER HEIMANN**
                              **& BERNSTEIN, LLP**
20                                 John T. Spragens
                              222 2nd Ave S, Suite 1640
21                                 Nashville, TN 37201
                              Telephone:  (615) 313-9000
22                                 Facsimile:   (615) 313-9965
                              E-mail:  jspragens@lchb.com
23
                              **KOZONIS & KLINGER, LTD.**
24                                 Gary M. Klinger
                              4849 N. Milwaukee Ave., Ste. 300
25                                 Chicago, Illinois 60630
                              Telephone: (312) 283-3814
26                                 Facsimile: (773) 496-8617
                              E-mail:  gklinger@kozonislaw.com

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 17-CV-1826
1640988.1

-20-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WA  98121-2315
TELEPHONE:206.739.9059
FACSIMILE:415.956.1008

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**HUSSIN LAW FIRM**
Tammy Hussin
1596 N. Coast Highway 101
Encinitas, CA 92024
Telephone: (877) 677-5397
Facsimile: (877) 667-1547
E-mail:  tammy@hussinlaw.com

*Counsel for Plaintiff and the Proposed
Class*

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 17-CV-1826
1640988.1

-21-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WA  98121-2315
TELEPHONE:206.739.9059
FACSIMILE:415.956.1008

1

## CERTIFICATE OF SERVICE

2         I hereby certify that on October 13, 2018, a copy of the foregoing was filed

3     electronically.  Notice of this filing will be sent by operation of the Court's electronic filing

4     system to all parties indicated on the electronic filing receipt. Parties may access this filing

5     through the Court's electronic filing system.

6                                      */s/ Gary M. Klinger*
                                 Gary M. Klinger

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 17-CV-1826
1640988.1

-22-

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 FOURTH AVENUE, SUITE 1900
SEATTLE, WA  98121-2315
TELEPHONE:206.739.9059
FACSIMILE:415.956.1008