THE HONORABLE THOMAS S. ZILLY

1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

9

10

11

| | |
|---|---|
| KEVIN PINE, individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>A PLACE FOR MOM, INC., a Delaware corporation,<br><br>　　　　　　Defendant. | Case No. 17-cv-1826<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO STAY OR, IN THE ALTERNATIVE, DISMISS SECOND AMENDED COMPLAINT**<br><br>**Noting Date: November 30, 2018** |

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO STAY OR, IN THE ALTERNATIVE, DISMISS SECOND AMENDED COMPLAINT CASE NO. 17-CV-1826
1668214.7

1

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 Fourth Avenue, Suite 1900
Seattle, WA  98121
Tel: (206) 739-9059

**<u>TABLE OF CONTENTS</u>**

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND................................................................................................. 2

    A.    APFM Has Repeatedly Sought to Delay Adjudication of This Case on the Merits and Deny Plaintiff and Class Members Their Day in Court........................... 2

        1.    APFM Sought a Stay, Withdrew its Stay Request, and Delayed Discovery..... 2

        2.    Discovery Confirmed Mr. Pine's Allegations ...................................... 3

        3.    The Court Denied APFM's Second Stay Request ................................ 4

        4.    *Marks* Reiterates the ATDS Standard .............................................. 5

    B.    Mr. Pine's Second Amended Class Action Complaint Further Bolstered His Allegations Consistent with the Court's Order and *Marks* ........................... 6

III.  ARGUMENT ................................................................................................... 8

    A.    Dismissal or Stay is Not Justified Under the Primary Jurisdiction Doctrine ............ 8

        1.    The Potential FCC Actions Do Not Raise an Issue of First Impression........ 9

        2.    The FCC Has No Discretion to Contravene the Plain Text of the TCPA, as *Marks* Confirms ............................................................ 11

        3.    A Stay Will Prejudice Plaintiff and Will Not Advance The Litigation............ 12

            a.    A Stay Would be Indefinite.................................................. 12

            b.    A Stay Would Not Advance the Litigation ............................ 13

    B.    APFM's Alternative Request to Dismiss Should be Denied ................................ 14

        1.    APFM's Motion Was Already Denied on These Grounds by the Court........ 14

        2.    Mr. Pine Plausibly Alleges That He Received Telemarketing Calls from APFM Without Prior Express Consent ............................................. 15

        3.    Two District Courts Have Already Denied the Same Motion on Indistinguishable Facts................................................................ 16

        4.    Mr. Pine Alleges That APFM Made Telemarketing Calls Encouraging the Purchase of Senior Housing........................................................ 17

        5.    Mr. Pine Did Not Expressly Consent to Receive APFM's Calls for All Purposes ................................................................................ 19

        6.    Mr. Pine Neither Requested Nor Expected to be Called by APFM............. 20

IV.   CONCLUSION ................................................................................................ 23

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO STAY OR, IN THE
ALTERNATIVE, DISMISS SECOND AMENDED
COMPLAINT CASE NO. 17-CV-1826
1668214.7

i

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 Fourth Avenue, Suite 1900
Seattle, WA  98121
Tel: (206) 739-9059

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Abante Rooter and Plumbing, Inc. v. Alarm.com, Inc.,*
No. 15-CV-06314-YGR, 2018 WL 3707283 (N.D. Cal. Aug. 3, 2018) .................................. 11

*ACA Int'l v.  FCC,*
885 F.3d 687 (D.C. Cir. 2018) ..................................................................................... 4, 12

*Aderhold v. Car2go N.A., LLC,*
No. C13-489RAJ, 2014 WL 794802 (W.D. Wash. 2014), aff'd,
668 Fed. App'x 795 (9th Cir. 2016) ...................................................................................... 19

*Alpharma, Inc. v. Pennfield Oil Co.,*
411 F.3d 934 (8th Cir. 2005) ................................................................................................ 8

*Ameriguard, Inc. v. Univ. of Kansas Med. Ctr. Research Inst., Inc.,*
222 F. App'x 530 (8th Cir. 2007) ......................................................................................... 19

*Ammons v. Ally Financial, Inc.,*
No. 3:17-cv-00505, 2018 WL 3134619 (M.D. Tenn. June 27, 2018) ................................. 11

*Barrera v. Guaranteed Rate,*
No. 17-CV-5668, 2017 WL 4837597 (N.D. Ill. Oct. 23, 2017) ...................... 17, 18, 19, 22

*Bennett v. Boyd Biloxi, LLC,*
No. CIV.A. 14-0330-WS-M, 2015 WL 2131231 (S.D. Ala. May 6, 2015) ........................ 18

*Brown v. MCI WorldCom Network Servs., Inc.,*
277 F.3d 1166 (9th Cir. 2002) ............................................................................................... 8

*Chesbro v. Best Buy Stores, L.P.,*
705 F.3d 913 (9th Cir. 2012) ......................................................................................... 17, 19

*Clark v. Time Warner Cable,*
523 F.3d 1110 (9th Cir. 2008) ............................................................................................... 8

*Consumer Prot. Corp. v. Neo–Tech News,*
No. CV 08-1983-PHX-JAT, 2009 WL 2132694 (D. Ariz. July 16, 2009) ........................ 22

*DeSilva Auto. Servs.,*
Case No. 1:16-cv-790, 2018 WL 2020744 (S.D. Oh. May 1, 2018) .................................. 11

*Dolemba v. Kelly Servs., Inc.,*
No. 16-cv-4917, 2017 WL 429572 (N.D. Ill. Jan. 31, 2017) ........................................ 19, 20

*Flores v. Adir Int'l, LLC,*
685 F. App'x 533 (9th Cir. 2017) ......................................................................................... 14

*Friedman v. Torchmark Corp.,*
2013 WL 1629084 (S.D. Cal. Apr. 16, 2013) ...................................................................... 19

*Frydman v. Portfolio Recovery Assocs., LLC,*
No. 11 CV 524, 2011 WL 2560221 (N.D. Ill. June 28, 2011) ........................................ 9, 12

*Golan v. Veritas Entm't, LLC,*
788 F.3d 814 (8th Cir. 2015) ................................................................................................ 19

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO STAY OR, IN THE
ALTERNATIVE, DISMISS SECOND AMENDED
COMPLAINT CASE NO. 17-CV-1826
16682147

ii

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

**TABLE OF AUTHORITIES**
(continued)

Page

*Gould v. Farmers Insurance Exchange*,
  326 F.R.D. 530 (E.D. Mo. 2018) ................................................................................ 11, 12, 13

*Grogan v. Aarons, Inc.*,
  No. 1:18-cv-2821, Dkt. 48 (N.D. Ga. Oct. 26, 2018) ......................................................... 11

*Heard v. Nationstar Mortg. LLC*,
  No. 2:16-CV-00694-MHH, 2018 WL 4028116 (N.D. Ala. Aug. 23, 2018) ...................... 11

*Hickey v. Voxernet LLC*,
  887 F. Supp. 2d 1125 (W.D. Wash. 2012) ........................................................................ 14

*Hossfeld v. Gov't Employees Ins. Co.*,
  88 F. Supp. 3d 504 (D. Md. 2015) .................................................................................... 18

*Ikuseghan v. Multicare Health Sys.*,
  No. C14-5539 BHS, 2014 WL 4715732 (W.D. Wash. Sept. 22, 2014) ...................... 14, 16

*In re Boeing Sec. Litig.*,
  40 F. Supp. 2d 1160 (W.D. Wash. 1998) .......................................................................... 14

*Jamison v. First Credit Servs., Inc.*,
  290 F.R.D. 92 (N.D. Ill. 2013) ...................................................................................... 9, 13

*Katz v. Am. Honda Motor Co.*,
  No. 15-CV-4410-CBM-RAOX, 2017 WL 3084159 (C.D. Cal. May 12, 2017) ................ 20

*Krakauer v. Dish Network L.L.C.*,
  No. 1:14-CV-333, 2017 WL 2455095 (M.D.N.C. June 6, 2017) ......................................... 6

*Larson v. Harman Mgmt. Corp.*,
  No. 116CV00219 DAD SKO, 2016 WL 6298528 (E.D. Cal. Oct. 27, 2016) ................... 20

*Maddox v. CBE Group, Inc.*,
  2018 WL 2327037 (N.D. Ga. May 22, 2018) .................................................................... 10

*Marks v. Crunch San Diego, LLC*,
  904 F.3d 1041 (9th Cir. 2018) .................................................................................... passim

*Maronyan v. Toyota Motor Sales, U.S.A., Inc.*,
  658 F.3d 1038 (9th Cir. 2011) ............................................................................................ 9

*McMillion v. Rash Curtis & Assocs.*,
  Case No. 16-cv-03396-YGR, Dkt. No. 189 (N.D. Cal. June 18, 2018) ............................ 10

*Mey v. Frontier Comms. Corp.*,
  No. 3:13-cv-01191 (D. Conn. June 2, 2017) ....................................................................... 6

*Meyer v. Bebe Stores, Inc.*,
  No. 14-CV-00267-YGR, 2015 WL 431148 (N.D. Cal. Feb. 2, 2015) ............................... 22

*Meyer v. Portfolio Recovery Assocs., LLC*,
  707 F.3d 1036 (9th Cir. 2012) .......................................................................................... 10

*Munro v. King Broad. Co.*,
  No. C13-1308JLR, 2013 WL 6185233 (W.D. Wash. Nov. 26, 2013) .............................. 14

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO STAY OR, IN THE
ALTERNATIVE, DISMISS SECOND AMENDED
COMPLAINT CASE NO. 17-CV-1826
1668214.7

iii

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

# TABLE OF AUTHORITIES
## (continued)

Page

*Nat'l Commc'ns Ass'n, Inc. v. American Tel. and Tel. Co.*,
    46 F.3d 220 (2d Cir. 1995) .................................................................................................. 12

*O'Shea v. Am. Solar Sol., Inc.*,
    No. 3:14-CV-00894-L-RBB, 2018 WL 3217735 (S.D. Cal. July 2, 2018) .......................... 11

*Panacci v. A1 Solar Power, Inc.*,
    No. 15-CV-00532-JCS, 2015 WL 3750112 (N.D. Cal. June 15, 2015) ............................... 18

*Pedro-Salcedo v. Haagen-Dazs Shoppe Co., Inc.*,
    No. 5:17-CV-03504-EJD, 2017 WL 4536422 (N.D. Cal. Oct. 11, 2017) ............................ 22

*Pieterson v. Wells Fargo Bank, N.A.*,
    No. 17-CV-02306-EDL, 2018 WL 3241069 (N.D. Cal. July 2, 2018) ....................... 11, 12, 13

*Pimental v. Google, Inc.*,
    No. C-11-02585-YGR, 2012 U.S. Dist. LEXIS 58629 (N.D. Cal. April 26, 2012) ...... 9, 12

*Reese v. Marketron Broad. Sols., Inc.*,
    No. CV 18-1982, 2018 WL 2117241 (E.D. La. May 8, 2018) ............................................. 19

*Reyes v. BCA Fin. Servs., Inc.*,
    312 F. Supp. 3d 1308 (S.D. Fla. 2018) ............................................................................... 10

*Robinson v. Midland Funding, LLC*,
    No. 10cv2261 MMA (AJB), 2011 U.S. Dist. LEXIS 40107 (S.D. Cal. April 13, 2011) ......... 9

*Salmon v. CRST Expedited, Inc.*,
    No. 14-CV-0265-CVE-TLW, 2015 WL 1395237 (N.D. Okla. Mar. 25, 2015) .................. 19

*Sandusky Wellness Ctr., LLC v. Medco Health Sols., Inc.*,
    788 F.3d 218 (6th Cir. 2015) .............................................................................................. 19

*Satterfield v. Simon & Schuster, Inc.*,
    569 F.3d 946 (9th Cir. 2009) .............................................................................................. 10

*Sieleman v. Freedom Mortg. Corp.*,
    No. CV 17-13110 (JBS/JS), 2018 WL 3656159 (D.N.J. Aug. 2, 2018) ............................ 11

*Somogyi v. Freedom Mortg. Corp.*
    No. CV 17-6546 (JBS/JS), 2018 WL 3656158, at *4 (D.N.J. Aug. 2, 2018) .................... 11

*Soppet v. Enhanced Recovery Co., LLC*,
    679 F.3d 637 (7th Cir. 2012) .............................................................................................. 12

*Sullivan v. All Web Leads*,
    No. 17 C 1307, 2017 WL 2378079 (N.D. Ill. June 1, 2017) .................................... 16, 18, 19

*Swaney v. Regions Bank*,
    Case No. 13-cv-00544, Dkt. No. 153 (N.D. Ala. May 22, 2018) ....................................... 10

*Swope v. Credit Mgmt., LP*,
    No. 12-832, 2013 WL 607830 (E.D. Mo. Feb. 19, 2013) .............................................. 9, 11

*Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc.*,
    307 F.3d 775 (9th Cir. 2002) ................................................................................................ 8

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO STAY OR, IN THE
ALTERNATIVE, DISMISS SECOND AMENDED
COMPLAINT CASE NO. 17-CV-1826
1668214.7

iv

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

# TABLE OF AUTHORITIES
## (continued)

Page

*Taylor v. Kahne Corp.,*
No. C05-0243 RSL, 2005 WL 3560623 (W.D. Wash. Dec. 29, 2005) ................................ 7

*Thomas v. Dun & Bradstreet Credibility Corp.,*
Case No. 2:15-cv-03194-BRO-GJS (C.D. Cal.) ...................................................... 6

*Tovar v. Midland Credit Mgmt.,*
No. 10cv2600 MMA (MDD), 2011 U.S. Dist. LEXIS 40103 (S.D. Cal. April 13, 2011) ................. 9

*Van Patten v. Vertical Fitness Grp., LLC,*
847 F.3d 1037 (9th Cir. 2017) ................................................................ 16, 20

*Volpe v. Caribbean Cruise Line, Inc.,*
2013 WL 3724858 (N.D. Ill. 2013) ............................................................ 22

*Wick v. Twilio, Inc.,*
2016 WL 6460316 (W.D. Wash. 2016) ........................................................ 22

*Xechem, Inc. v. Bristol–Myers Squibb Co.,*
372 F.3d 899 (7th Cir. 2004) ................................................................ 14

**Statutes**

47 C.F.R. § 64.1200(a)(2) .................................................................. 15

47 C.F.R. § 64.1200(f)(12) .............................................................. 17, 19

47 C.F.R. § 64.1200(f)(2) .................................................................. 9

47 U.S.C. § 227(a)(1) ...................................................................... 9

47 U.S.C. § 227(b)(1)(A)(iii) ............................................................... 15

47 U.S.C. § 227(b)(2)(C) ................................................................... 11

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,*
27 FCC Rcd. 1830 (2012) .................................................................. 16

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,*
30 F.C.C. Rcd. 7961 .......................................................... 13, 20, 21, 22

**Rules**

Fed. R. Civ. P. 12(a)(4)(A) .................................................................. 2

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO STAY OR, IN THE
ALTERNATIVE, DISMISS SECOND AMENDED
COMPLAINT CASE NO. 17-CV-1826
1668214.7

v

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Tel. 415.956.1000 • Fax 415.956.1008

## I. **INTRODUCTION**

Defendant A Place for Mom, Inc.'s ("APFM") motion to stay or, in the alternative, dismiss Plaintiff's Second Amended Complaint (Dkt. 112, the "Motion") simply repeats arguments already rejected by this Court's Minute Order dated August 28, 2018 (Dkt. 107) and the Ninth Circuit's decision in *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018).

In the Motion, APFM once again asks the Court to stay the case *indefinitely* based on the primary jurisdiction doctrine because the Federal Communications Commission ("FCC") may or may not issue interpretive guidance that may or may not address which dialers are Automatic Telephone Dialing Systems ("ATDS") under the TCPA. However, the Court already considered the same stay request in APFM's prior motion to dismiss and declined to stay the case on these grounds. *See* Dkt. 79 & 107. The Court did, however, elect to stay the case pending a decision in *Marks*. Thereafter, *Marks* held that a predictive dialing system like the one APFM used in this case constitutes an ATDS under the TCPA. *Marks*, 904 F.3d at 1051 ("[L]anguage in the statute indicates that equipment that made automatic calls from lists of recipients was also covered by the TCPA."). *Marks* confirms that the autodialer APFM used in this case qualifies as an ATDS. Accordingly, APFM's renewed request to stay this case should be denied for the same reason the Court previously denied it—namely, because the Ninth Circuit already addressed the issue on which APFM seeks a stay, and its decision controls the outcome here.

APFM next asks the Court to enter a stay to allow the Ninth Circuit to rule on a petition for rehearing en banc in *Marks*, recognizing that the holding in that case vitiates APFM's principal defense in this case. However, on October 30, 2018—one day after APFM filed its Motion—the Ninth Circuit issued an order denying that petition. *See Marks v. Crunch San Diego, LLC*, Case No. 14-56834, Dkt. 119 (9th Cir. Oct. 30, 2018). Accordingly, *Marks* is settled law and controls the outcome here. APFM has run out of reasons to delay adjudicating this dispute on the merits; no grounds remain that warrant a stay.

In the alternative, APFM once again asks the Court to dismiss Plaintiff's Second Amended

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO STAY OR, IN THE
ALTERNATIVE, DISMISS SECOND AMENDED
COMPLAINT CASE NO. 17-CV-1826
1668214.7

1

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 Fourth Avenue, Suite 1900
Seattle, WA  98121
Tel: (206) 739-9059

Complaint (Dkt. 111) because it fails to state a claim under the TCPA by purportedly "admitting" that Plaintiff provided prior express consent to be called by APFM.  Dkt. 112 at 2.  Yet, the Court *already rejected* this argument in its August 28 Minute Order.  *See* Dkt. 107 at n.1 (finding that Plaintiff "sufficiently allege[d]" APFM failed to obtain his prior express consent).

For these reasons, APFM's motion should be denied in its entirety.

## II.   BACKGROUND

### A.   APFM Has Repeatedly Sought to Delay Adjudication of This Case on the Merits and Deny Plaintiff and Class Members Their Day in Court

#### 1.   APFM Sought a Stay, Withdrew its Stay Request, and Delayed Discovery

This class action lawsuit was filed in the Northern District of Illinois in August of 2017.  *See* Dkt. 1.  Plaintiff alleged that APFM used a bait-and-switch online website to obtain his cell phone number, thereafter bombarded his cell phone with autodialed telemarketing calls, and finally sold his cell phone number to third parties so they too could bombard him with autodialed telemarketing calls.  Indeed, consumers across the country have lodged complaints about APFM's unlawful telemarketing practices.  Dkt. 1 at ¶ 47 (citing Ex. B).

On September 6, 2017, APFM filed a motion to stay proceedings in lieu of filing a responsive pleading.  *See* Dkt. 14.  On November 3, 2017, APFM agreed to withdraw its motion to stay and "represent[ed] that it will not to file [sic] a motion to stay this case" in exchange for Plaintiff Kevin Pine (who was substituted into the action on October 17, 2017) agreeing to transfer this action to this District.  Dkt. 32.  Transfer was entered on November 6, 2017.  Dkt. 33.  That order triggered APFM's obligation to file a responsive pleading by November 20, 2017.  *See* Fed. R. Civ. P. 12(a)(4)(A).  Yet, APFM ignored the responsive pleading deadline and allowed the case to languish for weeks.  After repeated inquiries from Mr. Pine's counsel (*see* Dkt. 51 at 3-4), APFM finally agreed to file a responsive pleading on January 25, 2017—more than six (6) months after the complaint was filed.  This amounted to another delay tactic:  APFM filed a motion to dismiss or, in the alternative,

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO STAY OR, IN THE ALTERNATIVE, DISMISS SECOND AMENDED COMPLAINT CASE NO. 17-CV-1826
1668214 7

2

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 Fourth Avenue, Suite 1900
Seattle, WA  98121
Tel: (206) 739-9059

1    stay the case for years pending possible rulemaking by the FCC.[1]

2         Mr. Pine proceeded with discovery per the Court's Order.  On February 2, 2018, Mr. Pine

3    timely served his first set of written discovery requests—discovery that is "standard practice" in

4    actions under the TCPA.  Dkt. 90 at 1.  Rather than participating in discovery, APFM served

5    responses consisting of nothing but objections.  *See* Dkt. 90 at 4-5.  Despite lengthy meet and

6    confers, Mr. Pine was unable to break the logjam caused by APFM's blanket refusal to produce

7    routine TCPA discovery.  Accordingly, Mr. Pine was forced to seek court intervention in the form

8    of a motion to compel.  *See id.*

9              **2.    Discovery Confirmed Mr. Pine's Allegations**

10        On May 23, 2018, APFM took Mr. Pine's deposition.  Consistent with the allegations in the

11   Class Action Complaint, Mr. Pine testified that he asked A Place for Mom not to call him.  Ex. 1 at

12   183:10-15.[2]  Mr. Pine never expected APFM to call him.  *Id.* at 178:11-14.  He has "been on the Do

13   Not Call list for a long time."  *Id.* at 53:24-25.  APFM's harassing sales calls upset Mr. Pine because

14   they came at a time when he was in an emotional state due to the concurrent deaths of his mother

15   and stepmother.  *Id.* at 53-54, 179.  Mr. Pine felt APFM was trying to take advantage of his

16   emotional state.  *Id.* at 44.[3]

17        Through discovery, Mr. Pine confirmed that his experience with APFM is consistent with

18   that of many other consumers across the country who have lodged complaints about APFM's

19   abusive and deceptive telemarketing practices.  For example, Mr. Pine obtained over one hundred

20   ───────────────────

21   [1] APFM supplemented its original motion to dismiss to include the stay request.  *See* Dkt. 81 at 8.

     [2] *But see* Mot. at 3 (claiming, incorrectly, that certain allegations in Plaintiff's FAC were "untrue").

22   [3] In its motion, APFM points to an out-of-context email reply Mr. Pine sent in response to an APFM ***email***
     (not a call) (*see* Mot. at 3) as evidence that Mr. Pine somehow consented to receive calls from APFM.  But Mr.
23   Pine made clear in his deposition that his email meant "thank you, I'll be in touch, leave me alone"; indeed,
     he testified that the email was his polite way of telling APFM to stop contacting him.  *Id.* at 178-79.
24   Moreover, Mr. Pine sent the email ***after*** having received three (3) email and three (3) phone call solicitations
     from APFM in a week span—solicitations Mr. Pine tried to ignore—placed in follow-up to the initial,
25   unexpected and unwelcome call he received.  Mr. Pine continued to receive unwanted calls and emails from
     APFM after sending the email—calls and emails he likewise tried to ignore.  *Id.*  Mr. Pine testified that he only
26   provided his phone number to APFM because APFM promised he could view online senior living quotes –
     quotes APFM never actually provided.  *See* Ex.1 at 180-81.

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO STAY OR, IN THE
ALTERNATIVE, DISMISS SECOND AMENDED
COMPLAINT CASE NO. 17-CV-1826
1668214 7

3

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 Fourth Avenue, Suite 1900
Seattle, WA  98121
Tel: (206) 739-9059

1    complaints from the Federal Trade Commission pursuant to a FOIA request regarding APFM's

2    unlawful telemarketing practices.  What's more, while discovery was ongoing, *four* whistleblowers

3    affirmatively contacted Mr. Pine's counsel seeking to provide information about APFM's unlawful

4    telemarketing practices.  Dkt. 90-2 (Declaration of Gary Klinger) ¶ 13 and Ex. H.  One of those

5    whistleblowers is Tequoia Urbina, who provided call center support for APFM.  *See id.*  Ms. Urbina

6    confirms that consumers often "complained they did not request to be called" and also complained

7    "about APFM's excessive calling practices." *Id.* at ¶¶ 6, 15.  Ms. Urbina testified APFM's autodialer

8    is programmed to call each consumer **fifteen (15) times**.  Notably, APFM's own 30(b)(6) corporate

9    representative confirmed Ms. Urbina's whistleblower testimony on this issue.  Dkt. 96-2 at 45:18-19.

10   When Mr. Pine attempted to obtain testimony from another whistleblower and former employee of

11   APFM, APFM moved to suppress the discovery.  *See* Dkt. 105.

12              **3.        The Court Denied APFM's Second Stay Request**

13           While discovery was ongoing and APFM's motion dismiss was pending, the Court asked the

14   parties to file supplemental briefs concerning the effect, if any, of *ACA Int'l v. FCC*, 885 F.3d 687

15   (D.C. Cir. 2018) on these proceedings.[4]  Dkt. 75.  Although APFM *never* challenged Mr. Pine's

16   ATDS allegations or even mentioned the term "ATDS" in its prior briefing, APFM's supplemental

17   briefing in support of its motion to dismiss added an alternative request to stay the litigation

18   *indefinitely* under the primary jurisdiction doctrine on the possibility that the FCC might issue

19   rulemaking addressing the ATDS issue.  *See* Dkt. 79 at 8-10.  The parties extensively briefed the

20

21   _____

22   [4] As the Court knows, in *ACA International*, the D.C. Circuit found that the section of the FCC's Declaratory
     Ruling addressing what constitutes an ATDS was arbitrary and capricious because it "would appear to subject
23   ordinary calls from any conventional smartphone to the Act's coverage, an unreasonably expansive
     interpretation of the statute," and therefore overturned that section. *ACA Int'l*, 885 F.3d at 692.  *ACA*
24   *International* thus squarely turned on the question of whether the FCC's interpretation of "capacity" to include
     "potential functionalities" or "future possibility" would render a smartphone an ATDS. *ACA Int'l*, 885 F.3d
25   at 695-96 (observing that "the Commission adopted an expansive interpretation of 'capacity' having the
     apparent effect of embracing ***any and all smartphones***: the device routinely used by the vast majority of
26   citizens to make calls and send messages (and for many people, the sole phone equipment they own)"); *see also*
     *id.* at 697 ("***all smartphones***, under the Commission's approach, meet the statutory definition of an
     autodialer") (emphases added).

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO STAY OR, IN THE
ALTERNATIVE, DISMISS SECOND AMENDED          4          LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
COMPLAINT CASE NO. 17-CV-1826                            2101 Fourth Avenue, Suite 1900
1668214 7                                               Seattle, WA 98121
                                                        Tel: (206) 739-9059

1    limited impact of *ACA Int'l* on this case.  *See* Dkts. 78-79, 81-88.[5]

2    On August 28, 2018, the Court entered a Minute Order granting in part and denying in part

3    APFM's motion to dismiss (Dkt. 50) without prejudice.  *See* Dkt. 107.  In the Order, the Court

4    found that Mr. Pine "sufficiently allege[d]" that APFM failed to obtain his prior express written

5    consent to place the telemarketing robocalls at issue in the operative complaint.  Dkt. 107 at n.1.

6    However, the Court also found that Mr. Pine's operative complaint did not sufficiently plead an

7    element of his claim under the TCPA, "namely defendant's use of an ATDS."  *Id.*  Rather, the Court

8    explained that Mr. Pine argued in his response papers that APFM used a "predictive dialing" system

9    to initiate calls to him and that a predictive dialer is an ATDS for purposes of the TCPA.  *Id.*

10   The Court declined APFM's request to stay the litigation *indefinitely* on the possibility that the

11   FCC might issue rulemaking in the future.  *Id.*  Instead, the Court stayed this matter pending a

12   decision from the United States Court of Appeals for the Ninth Circuit in *Marks v. Crunch San Diego,*

13   *LLC* wherein the Ninth Circuit would address whether a predictive dialing system constitutes an

14   ATDS under the TCPA.  *Id.*

15                    **4.**     ***Marks* Reiterates the ATDS Standard**

16   On September 20, 2018, the Ninth Circuit issued its *Marks* decision.  It held, based on the

17   TCPA's statutory language, that a predictive dialing system—such as the one APFM used in this

18   case—constitutes an ATDS under the TCPA.  *Marks,* 904 F.3d at 1053.  *Marks* stated:  "we read §

19   227(a)(1) to provide that the term "automatic telephone dialing system" means equipment which has

20   the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a

21   random or sequential number generator—and to dial such numbers automatically (even if the

22   _____

23   [5] Following *ACA International*, on May 3, 2018, a group of banks and credit unions, backed by the U.S.
     Chamber of Commerce Institute for Legal Reform, petitioned the FCC for a declaratory ruling (1) confirming

24   that a device must use a random or sequential number generator to store or produce numbers and dial those
     numbers without human intervention in order to qualify as an ATDS, and (2) clarifying that only calls made

25   using actual ATDS capabilities fall within the scope of the TCPA. *See* Petition for Declaratory Ruling, *In re*
     *Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Dkt. No. 02-278 (May 3, 2018)

26   at 27.  Then, on May 14, 2018, the FCC issued a Public Notice seeking comments on several TCPA-related
     issues, including what constitutes an ATDS.  *See* Public Notice, CG Dkt. Nos. 18-152 & 02-278 (May 14,
     2018) at 1-3. There is no telling if, or when, the FCC will provide additional guidance on these issues.

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO STAY OR, IN THE
ALTERNATIVE, DISMISS SECOND AMENDED                    5
COMPLAINT CASE NO. 17-CV-1826
1668214 7

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 Fourth Avenue, Suite 1900
Seattle, WA  98121
Tel: (206) 739-9059

system must be turned on or triggered by a person).  *Id.*[6]

**B.**  **Mr. Pine's Second Amended Class Action Complaint Further Bolstered His Allegations Consistent with the Court's Order and *Marks***

Following *Marks*, and pursuant to the Court's Order (Dkt. 110), Mr. Pine filed his amended complaint.[7]  The allegations of the amended complaint did not differ in substance whatsoever from the prior complaint.  *Compare* Dkt. 30 *with* 111.  In fact, the only differences were that Mr. Pine provided even *more* factual support for his claims that (i) APFM failed to obtain his prior express written consent to place the telemarketing calls at issue—claims the Court had already held were "sufficiently allege[d]," Dkt. 107 at n.1; and (ii) APFM used a predictive dialing system of the type the Ninth Circuit had just held constitutes an ATDS under the TCPA in *Marks*.  *See* Dkt. 111, *generally*.  Moreover, these were not mere allegations Mr. Pine hoped to prove.  Rather, he drew these additional facts from the discovery obtained to date and the whistleblowers with specific knowledge of APFM's dialing systems.

Specifically, the amended complaint further alleges that APFM employed and utilized dialing software manufactured by Interactive Intelligence, Inc. and Five9.  Compl., ¶ 46.  APFM's dialing systems are both predictive dialers.[8]  *Id.* at ¶¶ 47-56.  Both systems have the capacity to (i) store

---

[6] On November 13, 2018, the Supreme Court granted a petition for certiorari in *PDR Network, LLC v. Carlton & Harris Chiropractic Inc.*, Docket No. 17-1705, a TCPA fax case, to resolve a circuit split on the question of whether the Hobbs Act requires automatic deference to an agency's order even if there has been no challenge to the validity of the order.  The outcome in *PDR Network* will have no bearing on this case, though, because the holding in *Marks* was based on the plain language of the TCPA statute.

[7] Pursuant to the mandate of Rule 1 that courts and parties adjudicate disputes in a "just" and "speedy" manner, Plaintiff also sought to resume discovery in the proceedings.  Dkt. 108.  Once again, however, APFM objected and sought to delay the proceedings pending resolution of APFM's forthcoming response to Plaintiff's Second Amended Complaint (*id.*)—a complaint which APFM had not even seen to that point.

[8] *See* https://www.five9.com/products/outbound-contact-center (containing product descriptions); *see also Krakauer v. Dish Network L.L.C.*, No. 1:14-CV-333, 2017 WL 2455095, at *1 (M.D.N.C. June 6, 2017) (declining to set aside jury verdict in TCPA case in which the defendant's agent called plaintiffs using Five9 predictive dialer), awarding treble damages, 2017 WL 3206324, at *1 (M.D.N.C. July 27, 2017) (potential $61 million judgment), appeal docketed, No. 18-1518 (4th Cir. May 8, 2018); *Thomas v. Dun & Bradstreet Credibility Corp.*, Case No. 2:15-cv-03194-BRO-GJS (C.D. Cal.) ($10.5 million cash settlement for a class of small business owners who received telemarketing calls from a Five9 predictive dialer); *Mey v. Frontier Comms. Corp.*, No. 3:13-cv-01191 (D. Conn. June 2, 2017) (Dkt. 164) ($11 million settlement for class of consumers called by call vendor's Five9 predictive dialer).

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO STAY OR, IN THE
ALTERNATIVE, DISMISS SECOND AMENDED
COMPLAINT CASE NO. 17-CV-1826
1668214 7

6

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 Fourth Avenue, Suite 1900
Seattle, WA  98121
Tel: (206) 739-9059

1   numbers to be called; (ii) produce telephone numbers to be called; and (iii) to dial telephone

2   numbers automatically. *Id.* at ¶¶ 49-56. (Indeed, APFM's Search Page acknowledges that it uses a

3   "phone system that can auto-dial numbers"—a predictive dialer. *Id.* at ¶ 57.) APFM's predictive

4   dialing system placed tens of thousands of calls to phone numbers programmed into the system and

5   is programmed to call consumers as many fifteen (15) times. *Id.* at ¶ 58; *see also* Dkt. 90-2 at Ex. J

6   (Declaration of Tequoia Urbina) at ¶ 15. After APFM representatives conclude a phone call with a

7   consumer, APFM's dialing technology will countdown from 3 to 1 and then automatically start

8   calling another phone number randomly selected from a population of phone numbers and without

9   human intervention. Compl., at ¶ 59. Based on the forgoing, APFM's predictive dialers constitute

10  an 'automatic telephone dialing system' under the TCPA. *Id.* at ¶¶ 20 (citing *Marks*, 904 F.3d at

11  1052), 60.

12         In December 2015, Mr. Pine visited APFM's website where APFM promised to provide him

13  with senior living options he could view online—and only online—for his father. Compl., ¶¶ 33-34,

14  61. He was required to—and did—provide his personal phone number to receive quotes, after

15  which APFM began bombarding his cellphone with autodialed telemarketing calls. *Id.* at ¶¶ 62-63.

16  When Mr. Pine answered the phone, he was connected with a representative from APFM who

17  solicited him to purchase senior housing through one of APFM's in-network senior housing clients.[9]

18  *Id.* at ¶ 64. Mr. Pine terminated the conversation and indicated that APFM should stop calling

19  him.[10] *Id.* Despite this, he continued to receive email and phone call solicitations from APFM for

20  _____

21  [9] APFM asserts that this allegation is a departure from an allegation in the First Amended Complaint wherein
    Mr. Pine alleged he had a conversation with APFM during which he was asked about his senior living needs.

22  *See* Mot. at 5 *comparing* Dkt. 30 at ¶ 44 *with* Dkt. 111 at ¶ 64. Not so. These allegations are entirely consistent
    with another, both of which involve APFM asking Plaintiff about his senior living needs. The only difference

23  is that the allegation in the Second Amended Complaint has been supplemented with additional detail
    obtained from Mr. Pine's deposition testimony wherein he testified that APFM representatives aggressively

24  solicited him to purchase senior housing (on numerous occasions). *Id.* at ¶ 66. In these circumstances,
    courts routinely recognize the propriety of amending a complaint to conform to the evidence adduced in

25  discovery. *See, e.g., Taylor v. Kahne Corp.*, No. C05-0243 RSL, 2005 WL 3560623 (W.D. Wash. Dec. 29, 2005).

26  [10] Again, APFM wrongly asserts that Mr. Pine never "conveyed" to APFM that it should stop contacting him.
    Mot. at 5 ("Plaintiff…provides no details on how such indication was conveyed (it wasn't)." Indeed, Mr.
    Pine affirmatively testified in his deposition: "I'm pretty sure at some point I've asked A Place for Mom not

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO STAY OR, IN THE
ALTERNATIVE, DISMISS SECOND AMENDED
COMPLAINT CASE NO. 17-CV-1826
1668214 7

7

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 Fourth Avenue, Suite 1900
Seattle, WA  98121
Tel: (206) 739-9059

1   the purpose of purchasing senior housing—emails and phone calls which he ignored.  *See supra* n. 9.

2   Mr. Pine, who has been on the Do Not Call registry for many years, was not aware he would be

3   receiving autodialed telemarketing calls as a result of using APFM's website.  Compl., ¶ 65, nor that

4   APFM would provide his personal information, including his phone number, to various third-party

5   telemarketers so they too could bombard his cellphone with telemarketing calls.  *Id.*

6           Mr. Pine brings this case on behalf of himself and all other consumers who were bombarded

7   with telemarketing calls after visiting APFM's website in search of online senior housing quotes.  *Id.*

8   at ¶ 74.

9   **III.    ARGUMENT**

10          **A.    Dismissal or Stay is Not Justified Under the Primary Jurisdiction Doctrine**

11          APFM's latest attempt to use the primary jurisdiction doctrine for dismissal or indefinite

12   delay fails.  The primary jurisdiction doctrine "applies in a limited set of circumstances," *Clark v.*

13   *Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008), and "does not require that all claims within

14   an agency's purview be decided by the agency."  *Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d

15   1166, 1172 (9th Cir. 2002).  Nor is it intended "to 'secure expert advice' for the courts from

16   regulatory agencies every time a court is presented with an issue conceivably within the agency's

17   ambit."  *Id.* (citation omitted).  Rather, "it is a doctrine used by the courts to allocate initial

18   decisionmaking responsibility between agencies and courts where such jurisdictional overlaps and

19   potential for conflicts exist."  *Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc.*, 307 F.3d 775, 780

20   (9th Cir. 2002). The doctrine "is to be invoked sparingly, as it often results in added expense and

21   delay."  *Alpharma, Inc. v. Pennfield Oil Co.*, 411 F.3d 934, 938 (8th Cir. 2005) (citation omitted).

22          Primary "jurisdiction is properly invoked when a claim is cognizable in federal court but

23   requires resolution of an issue of first impression, or of a particularly complicated issue that

24   Congress has committed to a regulatory agency." *Syntek*, 307 F.3d at 780.  The doctrine "prescribes

25   ───────────────────────

26   to call." Ex. 1 at 183.  In addition, Mr. Pine testified that after having received **six (6)** additional solicitations
after the initial, unexpected call, he finally emailed APFM to say "thank you, I'll be in touch, leave me alone,"
and this was also his polite way of telling APFM to stop contacting him.  *Id.* at 178-79.

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO STAY OR, IN THE
ALTERNATIVE, DISMISS SECOND AMENDED
COMPLAINT CASE NO. 17-CV-1826
1668214 7                                                     8                    LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 Fourth Avenue, Suite 1900
Seattle, WA  98121
Tel: (206) 739-9059

1  deference to an administrative agency where (1) the issue is not within the conventional experiences

2  of judges, (2) the issue involves technical or policy considerations within the agency's particular field

3  of expertise, (3) the issue is particularly within the agency's discretion, or (4) there exists a substantial

4  danger of inconsistent rulings." *Maronyan v. Toyota Motor Sales, U.S.A., Inc.*, 658 F.3d 1038, 1048-49

5  (9th Cir. 2011) (internal quotation marks omitted).

6       **1.       The Potential FCC Actions Do Not Raise an Issue of First Impression**

7       When a pending FCC action does not raise an issue of first impression, a district court

8  should deny a motion to stay litigation. *See, e.g., Tovar v. Midland Credit Mgmt.*, No. 10-2600, 2011 WL

9  1431988, at *4 (S.D. Cal. April 13, 2011) (denying motion to stay pending FCC action, noting that

10 the issues "are not ones of first impression").[11] The issue that APFM speculates the FCC will

11 readdress—the definition of an ATDS—is clearly not one of first impression. Rather, it presents a

12 question of statutory interpretation that has already been addressed by Congress, the Ninth Circuit

13 and other courts, and the FCC itself. Interpreting a statute is standard grist for the judicial mill,

14 comfortably "within the conventional experiences of judges." *Maronyan*, 658 F.3d at 1048-49.

15      The TCPA defines an ATDS as "equipment which has the capacity – (A) to store or

16 produce telephone numbers to be called, using a random or sequential number generator; and (B) to

17 dial such numbers."  47 U.S.C. § 227(a)(1).  The corresponding regulation defines an ATDS as

18 "equipment which has the capacity to store or produce telephone numbers to be called using a

19 random or sequential number generator and to dial such numbers."  47 C.F.R. § 64.1200(f)(2).

20 Whether a particular device functions as an ATDS is therefore a straightforward question of

21 applying this statutory language to the particular facts of a case.  *See, e.g., Frydman*, 2011 WL 2560221,

22 at *4 (denying stay motion, and explaining that "[w]hether the predictive dialers used by defendant

23 are 'automatic telephone dialing systems' or 'autodialers' as these terms are used in the TCPA is a

24

---

[11] *See also Robinson v. Midland Funding, LLC*, No. 10-226, 2011 WL 1434919, at *5 (S.D. Cal. April 13, 2011)
25 (same); *Pimental v. Google, Inc.*, No. 11-02585, 2012 WL 1458179, at *3-4 (N.D. Cal. April 26, 2012) (same);
*Swope v. Credit Mgmt., LP*, No. 12-832, 2013 WL 607830, at *5 (E.D. Mo. Feb. 19, 2013) (same); *Jamison v. First*
26 *Credit Servs., Inc.*, 290 F.R.D. 92, 101 (N.D. Ill. 2013) (same); *Frydman v. Portfolio Recovery Assocs., LLC*, No. 11
CV 524, 2011 WL 2560221 (N.D. Ill. June 28, 2011) (same)

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO STAY OR, IN THE
ALTERNATIVE, DISMISS SECOND AMENDED                                          9
COMPLAINT CASE NO. 17-CV-1826
1668214 7

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 Fourth Avenue, Suite 1900
Seattle, WA  98121
Tel: (206) 739-9059

1  straightforward interpretive question addressed by prior FCC rulings and some case law").

2  Indeed, before *ACA International*, the Ninth Circuit interpreted this language on more than

3  one occasion. For example, in *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009),

4  the Ninth Circuit held that a genuine issue of material fact existed as to whether equipment that

5  "stored telephone numbers to be called and subsequently dialed those numbers" is an ATDS.

6  Similarly, *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) held—based on

7  "the clear language of the TCPA"—that "predictive dialers" that employ lists of numbers rather

8  than generate numbers "have the capacity described in the TCPA." Here, based on discovery to

9  date, it is undisputed APFM uses predictive dialers of the sort the Ninth Circuit has held qualifies as

10  an ATDS under the TCPA.

11  And after *ACA International* invalidated the FCC's 2015 interpretation, courts are still capable

12  of determining—on a full record—whether a predictive dialer qualifies as an ATDS. *See Reyes v. BCA*

13  *Fin. Servs., Inc.*, 312 F. Supp. 3d 1308, 1310-23 (S.D. Fla. 2018) (finding that a predictive dialer is an

14  ATDS even though it 'cannot generate random or sequential phone numbers'). Indeed, on

15  September 20, 2018, the Ninth Circuit in *Marks* reaffirmed that predictive dialers fall within the

16  TCPA's ATDS definition. *See Marks,* 904 F.3d at 1052 ("we conclude that the statutory definition of

17  ATDS is not limited to devices with the capacity to call numbers produced by a "random or

18  sequential number generator," but also includes devices with the capacity to dial stored numbers

19  automatically"). It did so based on a plain reading of the TCPA because "the term '[ATDS]' means

20  equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to

21  be called, using a random or sequential number generator—and to dial such numbers automatically

22  (even if the system must be turned on or triggered by a person)." *Id.* at 1053.[12]

---

23

24  [12] The overwhelming majority of courts to consider the issue in the wake of *ACA International* have likewise held that predictive dialers are autodialers under the TCPA. *See, e.g., id.*; *McMillion v. Rash Curtis & Assocs.*, Case No. 16-cv-03396-YGR, Dkt. No. 189 (N.D. Cal. June 18, 2018) (denying reconsideration of court's pre-

25  ACA International order that the dialers at issue "were ATDSs because they possessed 'predictive dialing' capabilities which allowed them to operate without human intervention"); *Swaney v. Regions Bank*, Case No.

26  13-cv-00544, Dkt. No. 153 (N.D. Ala. May 22, 2018) (similar); *Maddox v. CBE Group, Inc.*, 2018 WL 2327037, at *4 (N.D. Ga. May 22, 2018) (similar) *DeSilva Auto. Servs.*, Case No. 1:16-cv-790, 2018 WL 2020744, at *8

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO STAY OR, IN THE
ALTERNATIVE, DISMISS SECOND AMENDED
COMPLAINT CASE NO. 17-CV-1826
1668214 7

10

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 Fourth Avenue, Suite 1900
Seattle, WA 98121
Tel: (206) 739-9059

For this reason, courts have consistently denied stay requests identical to the one sought here by APFM.  For example, in *Somogyi v. Freedom Mortg. Corp.*, the court denied a stay request and held that predictive dialers fall within the statutory definition of ATDS under the TCPA:

> Since the statutory definition of an ATDS (as opposed to the FCC's interpretation of an ATDS) was not questioned in either *ACA International* or *Dominguez*, the Court finds it is unnecessary to issue a stay at the present time. Whatever guidance the FCC may issue in the future will not alter the statutory definition of an ATDS. In other words, telephone dialing equipment that "has the capacity ... to store or produce telephone numbers to be called, using a random or sequential number generator" qualifies as an ATDS today, just as it will following any future FCC guidance.

No. CV 17-6546 (JBS/JS), 2018 WL 3656158, at *4 (D.N.J. Aug. 2, 2018); *see also Sieleman v. Freedom Mortg. Corp.*, No. CV 17-13110 (JBS/JS), 2018 WL 3656159, at *4 (D.N.J. Aug. 2, 2018) (same); *Pieterson*, 2018 WL 3241069, at *5 (denying stay request under primary jurisdiction doctrine because the issue was not one of first impression); *Gould v. Farmers Insurance Exchange*, 326 F.R.D. 530 (E.D. Mo. 2018) (same); *Grogan v. Aarons, Inc.*, No. 1:18-cv-2821, Dkt. 48 (N.D. Ga. Oct. 26, 2018) (same). Accordingly, the Court is well-equipped to determine whether APFM's autodialers qualify as ATDSs under the TCPA based on the plain statutory text alone, particularly in light of *Marks*.

## 2.    The FCC Has No Discretion to Contravene the Plain Text of the TCPA, as *Marks* Confirms

A stay under the primary jurisdiction doctrine is also not justified because the issue is not within the FCC's discretion.  Although the FCC has the authority to interpret the TCPA, any such interpretation cannot contravene the plain text of the statute.  *See Swope*, 2013 WL 607830, at *5 (explaining that the definition of an ATDS "is not an issue that requires agency expertise or implicates agency discretion"); *Somogyi*, 2018 WL 3656158, at *4 (future FCC guidance "will not alter the statutory definition of an ATDS"); *cf.* 47 U.S.C. § 227(b)(2)(C) (granting the FCC discretion to determine whether to exempt certain calls to cellular telephones from the TCPA).  Nor does the

n.9 (S.D. Oh. May 1, 2018) (similar); *Pieterson v. Wells Fargo Bank, N.A.*, No. 17-CV-02306-EDL, 2018 WL 3241069 (N.D. Cal. July 2, 2018) (similar); *Ammons v. Ally Financial, Inc.*, No. 3:17-cv-00505, 2018 WL 3134619 (M.D. Tenn. June 27, 2018) (similar); *O'Shea v. Am. Solar Sol., Inc.*, No. 3:14-CV-00894-L-RBB, 2018 WL 3217735 (S.D. Cal. July 2, 2018) (similar); *Abante Rooter and Plumbing, Inc. v. Alarm.com, Inc.*, No. 15-CV-06314-YGR, 2018 WL 3707283 (N.D. Cal. Aug. 3, 2018) (similar); *Heard v. Nationstar Mortg. LLC*, No. 2:16-CV-00694-MHH, 2018 WL 4028116, at *5-7 (N.D. Ala. Aug. 23, 2018) (similar).

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO STAY OR, IN THE
ALTERNATIVE, DISMISS SECOND AMENDED
COMPLAINT CASE NO. 17-CV-1826
16682147

11

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 Fourth Avenue, Suite 1900
Seattle, WA  98121
Tel: (206) 739-9059

1    FCC have discretion to adopt an interpretation that is unreasonable in light of the plain language

2    and purpose of the statute. *ACA Int'l*, 885 F.3d at 698 (observing that the FCC interpretation "lies

3    considerably beyond the agency's zone of delegated authority"); *Pimental*, 2012 WL 1458179, at *4

4    ("Matters particularly within the agency's discretion tend to be the ones in which Congress has

5    explicitly delegated the responsibility. . . . Here, by contrast, Congress has defined the term

6    'automatic telephone dialing system.'").

7         Here, the "basis" for Mr. Pine's claims with respect to the autodialer is the plain text of the

8    TCPA. *See Marks,* 904 F.3d at 1053 (interpreting statutory definition of ATDS). Accordingly, this

9    factor also weighs against staying the case under the primary jurisdiction doctrine. *See Pieterson*, 2018

10   WL 3241069, at *3 (denying stay under primary jurisdiction doctrine).

11                    **3.    A Stay Will Prejudice Plaintiff and Will Not Advance The Litigation**

12        Courts weigh the benefits of applying the primary jurisdiction doctrine against the potential

13   litigation costs resulting from complications and delay. *Nat'l Commc'ns Ass'n, Inc. v. American Tel. and*

14   *Tel. Co.*, 46 F.3d 220, 223 (2d Cir. 1995); *see also Frydman*, 2011 WL 2560221, at *7. A stay will not

15   serve judicial economy here.

16                         **a.    A Stay Would be Indefinite**

17        No one knows when the FCC will issue an order or multiple orders, or if it will ever even do

18   so. See FCC, Understanding FCC Processes ("After considering comments and reply comments to

19   a Notice of Proposed Rulemaking, the FCC *may* issue a Report & Order.") (emphasis added).

20        Even if the FCC acts, the delay could be years-long. *See, e.g., Gould*, 326 F.R.D. at 532

21   (denying identical stay request for potential FCC rulemaking in light of *ACA Int'l* because "such a

22   process will likely take years and may still fail to resolve the precise issue involved in the case"). The

23   Seventh Circuit in *Soppet*, for example, noted that the FCC petition that resulted in a 2008 FCC

24   declaratory ruling was initiated in 2005. *Soppet v. Enhanced Recovery Co., LLC,* 679 F.3d 637, 643 (7th

25   Cir. 2012). *Frydman* likewise recognized that the delay encountered waiting for an agency decision is

26   often lengthy. 2011 WL 2560221, at *7 (noting, with a touch of humor, that "[w]hether the FCC's . .

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO STAY OR, IN THE
ALTERNATIVE, DISMISS SECOND AMENDED
COMPLAINT CASE NO. 17-CV-1826
1668214 7                                              12                LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                                                          2101 Fourth Avenue, Suite 1900
                                                                          Seattle, WA 98121
                                                                          Tel: (206) 739-9059

1  . process is completed this year, next year, or in the next century, the results of that process are likely

2  of only limited utility for the Court to decide the issues in this case.").[13]

3        Indeed, the FCC only issued its 2015 order regarding automatic telephone dialing systems

4  after approximately six years of comments to various public notices. *In re Rules and Regulations*

5  *Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 8047-48. The 2015 order

6  was then appealed and approximately three years later the D.C. Circuit issued its opinion on the

7  2015 order in *ACA Int'l*. Thus, it took nearly a decade from the time the FCC issued the public

8  notices that formed the basis of its 2015 order to the time the D.C. Circuit issued its opinion.

9        Moreover, any further FCC guidance may be appealed to the D.C. Circuit again. APFM

10  would inevitably ask this Court to stay the case pending resolution of such an appeal. One court

11  that recently denied an identical motion to stay based on the FCC's issuance of a public notice in

12  light of *ACA International* held:

13        The timing of a new order from the FCC is also uncertain. The FCC has expedited
         the public comment period, but that does not guarantee that an order will be issued

14        in the immediate or near future. This process can take years. And . . . the FCC's
         order will be subject to further challenge, which is exactly what happened with the

15        2015 Declaratory Ruling. . . . [T]his cycle of staying a case while an FCC order is
         pending only to have the FCC order challenged in court has played out before,

16        demonstrating the real possibility of indefinite delay.

17  *Pieterson*, 2018 WL 3241069, at *5; *see also Gould*, 326 F.R.D. at 531 (similar).

18        Granting APFM's motion to stay would indefinitely delay this case and deny Mr. Pine and

19  class members their day in Court. Meanwhile, APFM would continue its unlawful telemarketing

20  practices—which have been the subject of numerous attorney general investigations and consumer

21  complaints—unabated. This manifestly prejudices Mr. Pine and class members.

22             **b.**    **A Stay Would Not Advance the Litigation**

23        It is (at best) speculation that the FCC's order, even if issued in the near future, would

24  achieve judicial economy here. For example, it is entirely possible that whatever ruling the FCC

25

26  [13] *See also Jamison*, 290 F.R.D. at 101-02 ("[T]he fact the FCC issued a public notice requesting comments on a
   petition that could potentially result in a change in the FCC's position is simply not enough of a reason for
   this Court to stay this action.").

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO STAY OR, IN THE
ALTERNATIVE, DISMISS SECOND AMENDED
COMPLAINT CASE NO. 17-CV-1826
1668214 7

13

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 Fourth Avenue, Suite 1900
Seattle, WA 98121
Tel: (206) 739-9059

1  makes will apply only prospectively, not retrospectively.  In that event, Mr. Pine and the class are left

2  in a position where the case has been unnecessarily delayed for years, evidence is potentially lost and

3  witnesses are potentially unavailable. This is not judicial economy.

4       Moreover, while APFM suggests that forthcoming rulemaking will be dispositive of the

5  ATDS issue in the case, conflicting authorities issued in light of various FCC's orders establishes

6  that the FCC's next order is unlikely to fully settle the issue of what technologies are considered to

7  be an ATDS.  Rather, it will likely lead to more litigation, more appeals, varying interpretations

8  among the courts, and more rulemaking.  Needless to say, it is imprudent to try and predict precisely

9  what the FCC's next order will hold and how various courts will apply and interpret the order.

10       **B.**    **APFM's Alternative Request to Dismiss Should be Denied**

11       The Court must construe Mr. Pine's allegations in the light most favorable to him, accept as

12  true all well-pleaded facts, and draw reasonable inferences in his favor.  *See, e.g.*, *Flores v. Adir Int'l,*

13  *LLC*, 685 F. App'x 533, 534 (9th Cir. 2017) (reversing district court's order dismissing TCPA claim);

14  *Ikuseghan v. Multicare Health Sys.*, No. C14-5539 BHS, 2014 WL 4715732, at *1 (W.D. Wash. Sept. 22,

15  2014) (denying motion to dismiss TCPA claim); *Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125, 1128

16  (W.D. Wash. 2012) (same); *Munro v. King Broad. Co.*, No. C13-1308JLR, 2013 WL 6185233, at *4

17  (W.D. Wash. Nov. 26, 2013) (denying motion to dismiss TCPA claim where defendant argued that

18  plaintiff provided prior express consent); *In re Boeing Sec. Litig.*, 40 F. Supp. 2d 1160, 1166 (W.D.

19  Wash. 1998) (Zilly, J.).  "Orders under Rule 12(b)(6) are not appropriate responses to the invocation

20  of defenses" unless "plaintiff pleads [him]self out of court ... [by] admit[ting] all the ingredients of an

21  impenetrable defense."  *Xechem, Inc. v. Bristol–Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004).

22       **1.**    **APFM's Motion Was Already Denied on These Grounds by the Court**

23       APFM's alternative request for dismissal amounts to nothing more than a waste of the

24  parties' and the Court's resources because it seeks to relitigate an issue on which the Court has

25  already ruled against APFM.  Once again, APFM asks the Court to dismiss Mr. Pine's Complaint on

26  the ground that Mr. Pine provided his prior express consent to be called by APFM.  *See* Mot. at 14-

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO STAY OR, IN THE
ALTERNATIVE, DISMISS SECOND AMENDED
COMPLAINT CASE NO. 17-CV-1826
1668214 7

14

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 Fourth Avenue, Suite 1900
Seattle, WA  98121
Tel: (206) 739-9059

24.  APFM made the very same arguments to no avail in its previous motion to dismiss.  *See* Dkt. 50.

The Court rejected these arguments and denied APFM's motion on these grounds stating:

> [D]efendant contends that plaintiff's TCPA claim should be dismissed because plaintiff expressly consented to the calls at issue. <u>The FACAC, however, sufficiently alleges to the contrary</u>. Moreover, plaintiff need not anticipate and plead around an affirmative defense. *See Dominguez v. FS1 L.A., LLC*, 2016 WL 2885861 at *2 (C.D. Cal. May 17, 2016) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)).

Dkt. 107 at n.1 (emphasis added).

The allegations in the operative Complaint addressing APFM's failure to obtain Mr. Pine's

prior express written consent to place the telemarketing calls at issue have not changed in substance

whatsoever from the First Amended Complaint.  *Compare* Dkt. 30 at ¶¶ 24-45 *with* Dkt. 111 at ¶¶ 28-

45, 61-65.  In fact, they have only been bolstered through discovery.  Because the Court already

found that Mr. Pine "sufficiently allege[d]" APFM failed to obtain his prior express written consent

to place autodialed telemarketing calls to Mr. Pine, and nothing has changed since that ruling, the

Motion should be denied.[14]

## 2.  Mr. Pine Plausibly Alleges That He Received Telemarketing Calls from APFM Without Prior Express Consent

The plain language of Section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any

call to a wireless number in the absence of an emergency or the prior express consent of the called

party.  47 U.S.C. § 227(b)(1)(A)(iii).

The FCC has mandated a heightened prior express *written* consent requirement for

telemarketing calls like the ones alleged here.  Accordingly, the TCPA forbids entities from:

> Initiat[ing], or caus[ing] to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the *prior express written consent of the called party* . . .

47 C.F.R. § 64.1200(a)(2) (emphasis added).

---

[14] It should further be noted that APFM concedes in its Motion that it did ***not*** obtain Mr. Pine's prior express written consent to place the telemarketing robocalls at issue.  *See* Dkt. 112 at 15 ("A Place for Mom does not contend that it obtained prior express written consent.").

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO STAY OR, IN THE
ALTERNATIVE, DISMISS SECOND AMENDED
COMPLAINT CASE NO. 17-CV-1826
1668214 7

15

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 Fourth Avenue, Suite 1900
Seattle, WA  98121
Tel: (206) 739-9059

1    Under the TCPA, prior express consent "is an affirmative defense for which the defendant

2    bears the burden of proof." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir.

3    2017); *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844

4    (2012) ( "the seller will bear the burden of demonstrating…a clear and conspicuous disclosure.");

5    *Ikuseghan*, 2014 WL 4715732, at *1 ("With regard to consent, this issue is an affirmative

6    defense.…").

7    Therefore, a defendant may not lawfully make telemarketing calls using an ATDS unless it

8    can show that it first obtained the *prior express written consent* of the called party.

9    ### 3.    Two District Courts Have Already Denied the Same Motion on Indistinguishable Facts

11    In *Sullivan v. All Web Leads*, a district court considered a motion to dismiss on very similar

12    facts, holding that a misleading online quote website—like the website at issue here—engaged in

13    telemarketing without prior express written consent.  No. 17 C 1307, 2017 WL 2378079, at *6 (N.D.

14    Ill. June 1, 2017).  There, plaintiff alleged that defendant All Web Leads administered a website

15    purporting to deliver instant health insurance quotes.  *Id.* at *1.  The website's services were free—

16    i.e., the website offered consumers "free health insurance quotes" from its third-party clients who, in

17    turn, paid All Web Leads a commission for the "leads."  *Id.* at *1, 8.  After completing an online

18    form much like the web form at issue in this case—a web form that promised to provide online

19    quotes but contained a fine-print disclaimer purportedly authorizing autodialed cell phone calls—the

20    plaintiff clicked "submit" and, shortly thereafter, received an autodialed telephone call.  *Id.*  A

21    representative came on the line and attempted to persuade the consumer to purchase an insurance

22    plan through one of All Web Leads' third-party clients.  *Id.* at *1.  The court held that the plaintiff

23    plausibly alleged that "All Web's *purpose in placing these calls is to encourage the purchase of*

24    *insurance* from All Web's insurance industry customers."  *Id.* at *6 (emphasis added).  Thus, the

25    court found that All Web Leads called the plaintiff for telemarketing purposes.  *Id.* (citation

26    omitted).

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO STAY OR, IN THE
ALTERNATIVE, DISMISS SECOND AMENDED
COMPLAINT CASE NO. 17-CV-1826
16682147

16

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 Fourth Avenue, Suite 1900
Seattle, WA  98121
Tel: (206) 739-9059

Similarly, in *Barrera v. Guaranteed Rate*, a plaintiff alleged that defendant Guaranteed Rate administered a website purporting to deliver consumers free information regarding mortgage quotes from Guaranteed Rate's third-party clients who, in turn, paid Guaranteed Rate a commission when a consumer obtained a mortgage through it.  No. 17-CV-5668, 2017 WL 4837597, at *2-*3 (N.D. Ill. Oct. 23, 2017).  In denying the defendant's motion to dismiss, the court held:

> Defendant's protestations to the contrary notwithstanding, **these were telemarketing calls**. The FCC defines "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." § 64.1200(f)(12). Plaintiff alleges that Defendant called him in an attempt to sell him mortgage services. Thus, express written consent was required.

*Id.* (emphasis added).

### 4.   Mr. Pine Alleges That APFM Made Telemarketing Calls Encouraging the Purchase of Senior Housing

APFM contends that its calls were merely "informational," not telemarketing (Mot. at 15-17), but neither the law nor the Complaint's allegations support APFM's contention.  A TCPA telemarketing allegation merely requires that an entity placed a phone call "for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services ...."  47 C.F.R. § 64.1200(f)(12).  The *purpose* of the calls, evident from their content and the context in which they were placed, controls the telemarketing analysis.  *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012).  The Ninth Circuit has stated that courts should evaluate the content of the purported telemarketing "with a measure of common sense."  *Id.*.  In *Chesbro*, the defendant, like APFM here, argued that its calls were "purely informational courtesy calls."  The Ninth Circuit disagreed.  *Id.*  Because the calls "encouraged the listener to make future purchases," the Ninth Circuit found that the calls constituted telemarketing calls under the TCPA because "the implication is clear from the context."  *Id.*

Here, Mr. Pine's allegations—which, on a motion to dismiss, must be accepted as true—clearly state that APFM called him for the purpose of soliciting him to purchase senior housing through one of APFM's in-network clients so that APFM could earn a commission.  *See* Compl.,

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO STAY OR, IN THE
ALTERNATIVE, DISMISS SECOND AMENDED
COMPLAINT CASE NO. 17-CV-1826
1668214 7

17

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 Fourth Avenue, Suite 1900
Seattle, WA  98121
Tel: (206) 739-9059

1    ¶¶ 26-30, 61-66.  APFM's representatives are publicly described as "salespersons" whose sole

2    purpose is to solicit consumers to purchase senior housing through one of APFM's clients.  *Id.* ¶ 30.

3    Mr. Pine also attached to his Complaint various consumer complaints reported to the Better

4    Business Bureau that complain of APFM's "high-pressure selling" tactics.  Dkt. 111 at Ex. B.

5    Accordingly, he plausibly alleged that the calls were placed for telemarketing purposes.  *See, e.g.,*

6    *Sullivan*, 2017 WL 2378079, at *6; *Barrera*, 2017 WL 4837597, at *2-*3; *Hossfeld v. Gov't Employees Ins.*

7    *Co.*, 88 F. Supp. 3d 504, 511 (D. Md. 2015); *Bennett v. Boyd Biloxi, LLC*, No. CIV.A. 14-0330-WS-M,

8    2015 WL 2131231, at *2 (S.D. Ala. May 6, 2015).

9            Indeed, this case is no different than *Sullivan* or *Barrera*.  Mr. Pine alleges that he visited

10   APFM's website and was required to fill out various fields in order to purportedly receive free *online*

11   quotes for senior housing.  Compl., ¶¶ 33, 61-66 (the website states: "To access pricing, ratings and

12   reviews, fill out the form above and start *browsing* and comparing your options.") (emphasis added).

13   He clicked a button labeled, "Start Your Search."  *Id.*  After clicking the button expecting to receive

14   *online* senior housing options, he received autodialed telemarketing calls from an APFM

15   representative who solicited him to purchase senior housing though one of APFM's clients.  *Id.*

16           Incredibly, APFM disputes Mr. Pine's allegations claiming it is merely a "free service" whose

17   sole mission is to provide seniors with "free information" (Mot. at 16-17)—ignoring the fact that its

18   high-pressure sales practices, which yielded over *$50 million* in revenue in 2010, have been described

19   as unethical in the New York Times.  APFM claims it "is aware of no case holding that calling a

20   person to provide them with free information they requested is telemarketing merely because of the

21   future possibility that the caller will receive a future referral fee."  Mot. at 17.  But it ignores on

22   point, in-Circuit authority to the contrary.  *See Panacci v. A1 Solar Power, Inc.*, No. 15-CV-00532-JCS,

23   2015 WL 3750112, at *6 (N.D. Cal. June 15, 2015) ("[R]eferring a consumer to another entity is a

24   prohibited purpose if the purpose of the referral is to encourage a purchase, even if a purchase from

25   another entity or a future purchase.").

26           APFM's claim simply has no support where, as here, the express purpose of the calls was to

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO STAY OR, IN THE
ALTERNATIVE, DISMISS SECOND AMENDED
COMPLAINT CASE NO. 17-CV-1826
16668214 7

18

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 Fourth Avenue, Suite 1900
Seattle, WA  98121
Tel: (206) 739-9059

encourage the purchase of senior housing from one of APFM's clients so that APFM could earn a commission.[15]  Based on the content of the calls and the context in which they were placed, and construing the allegations in the light most favorable to Mr. Pine, it is clear that the purpose of the calls was to encourage him to purchase senior housing through one of APFM's clients—the very definition of telemarketing.  *See* 47 C.F.R. § 64.1200(f)(12); *Chesbro*, 705 F.3d at 918 (rejecting defendant's arguments that its "calls were purely informational" because they encouraged the recipient to make future purchases); *Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015) ("'Telemarketing' occurs when…a call indicates that it was initiated…for the purpose of promoting property, goods, or services.") (internal citations omitted).  Because Mr. Pine plausibly alleges that the calls were placed to encourage him to purchase senior housing from APFM's clients, he has adequately pled that APFM called him for telemarketing purposes.  *See Sullivan*, 2017 WL 2378079, at *6; *Barrera*, 2017 WL 4837597, at *2-*3.

### 5.   Mr. Pine Did Not Expressly Consent to Receive APFM's Calls for All Purposes

Alternatively, APFM argues that Mr. Pine provided express consent to receive auto-dialed

---

[15] At most, APFM's argument creates an issue of fact not properly addressed at the pleadings stage.  APFM's own highly-relied upon authority supports this conclusion.  *See* Mot. at 18 discussing *Salmon v. CRST Expedited, Inc.*, No. 14-CV-0265-CVE-TLW, 2015 WL 1395237 (N.D. Okla. Mar. 25, 2015) (granting summary judgment to defendant as to pro se plaintiff's TCPA claims).  *Salmon* is also distinguishable from this case because the calls at issue merely informed recipients that the defendant was hiring – they did *not* encourage the purchase of any goods.  *Id.* at 5.  The same reasoning distinguishes APFM's other cited authorities.  *See* Mot. at 18-20 (citing *Ameriguard, Inc. v. Univ. of Kansas Med. Ctr. Research Inst., Inc.*, 222 F. App'x 530-32 (8th Cir. 2007) (informational message about participating in a free clinical trial did not constitute "material advertising the commercial availability or quality of any property, goods, or services"); *Aderhold v. Car2go N.A., LLC*, No. C13-489RAJ, 2014 WL 794802, at *1 (W.D. Wash. 2014), aff'd, 668 Fed. App'x 795, 796 (9th Cir. 2016) (Ninth Circuit held that message did not constitute "telemarketing" because it "contain[ed] no content encouraging purchase of car2go services.  The message was directed instead to completing the registration process initiated by Aderhold and to validating personal information."); *Sandusky Wellness Ctr., LLC v. Medco Health Sols., Inc.*, 788 F.3d 218 (6th Cir. 2015) (affirming trial court's **summary judgment order** that faxes sent to pharmacy store manager informing it of drugs covered under patient health care plans were not advertisements); *Dolemba v. Kelly Servs., Inc.*, No. 16-cv-4917, 2017 WL 429572, at *2-*3 (N.D. Ill. Jan. 31, 2017) (informational messages about job opportunities, not advertising); *Friedman v. Torchmark Corp.*, 2013 WL 1629084 (S.D. Cal. Apr. 16, 2013) (similar).  Another authority relied upon by APFM--*Reese v. Marketron Broad. Sols., Inc.*, No. CV 18-1982, 2018 WL 2117241 (E.D. La. May 8, 2018)—is distinguishable for the same reasons previously addressed by Plaintiff.  *See* Dkt. 73.

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO STAY OR, IN THE
ALTERNATIVE, DISMISS SECOND AMENDED
COMPLAINT CASE NO. 17-CV-1826
1668214 7

19

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 Fourth Avenue, Suite 1900
Seattle, WA  98121
Tel: (206) 739-9059

calls by completing the online senior housing quote request form.  Mot. at 21. But mere prior

express consent is not enough; prior express *written* consent is the only defense to telemarketing

calls.  As the Ninth Circuit holds, such *unwritten* consent would suffice *only if* the purpose of APFM's

calls were not telemarketing—which as previously explained (*see supra* at 15-16) is not the case here.

*See Van Patten*, 847 F.3d at 1045 ("include[ ] or introduce[ ] an advertisement" or "constitute[ ]

telemarketing.").[16]

Because APFM concedes it did not obtain Mr. Pine's prior express written consent (*see* Mot.

at 15 (APFM "does not contend that it obtained prior express written consent"), its request to

dismiss Plaintiff's Complaint must be denied.

### 6.   Mr. Pine Neither Requested Nor Expected to be Called by APFM

Finally, APFM claims that its calls were not "telemarketing" under a July 2015 Order in

which the FCC delineated a limited exception to the definition of "telemarketing" in circumstances

where consumers request to receive a ***text message*** from a retailer.  Mot. at 24 (citing *In the Matter of*

*Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 8015-16).  But

APFM manages to omit both the relevant facts and legal requirements of the July 2015 Order.  The

Order's plain language actually demonstrates that APFM's calls fall *outside* the narrow exception

defined in the Order.

In the July 2015 Order, the Commission considered a petition from a retail industry group

requesting clarification that "immediate, one-time replies sent to consumers via text message in

response to a consumer-initiated text request" do not constitute telemarketing.  *Id.* at 8015.  Under

this specific scenario, the Commission explained, a consumer might be invited to respond to an ad

---

[16] *See, e.g., Katz v. Am. Honda Motor Co.,* No. 15-CV-4410-CBM-RAOX, 2017 WL 3084159, at *2 (C.D. Cal. May 12, 2017) (by providing his number to a car dealership plaintiff did not consent to receive advertising and telemarketing calls – for that prior express written consent was needed); *Larson v. Harman Mgmt. Corp.,* No. 116CV00219-DAD-SKO, 2016 WL 6298528, at *4 (E.D. Cal. Oct. 27, 2016) (prior express written consent was not obtained to send advertising text messages); *Dolemba,* 2017 WL 429572, at *3 ("The form of consent required depends on the content of the call: if the call includes advertisement or constitutes telemarketing, the consent must be in writing, but if the call 'is not for such purposes, the consent may be oral or written.'").

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO STAY OR, IN THE
ALTERNATIVE, DISMISS SECOND AMENDED
COMPLAINT CASE NO. 17-CV-1826
1668214 7

20

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 Fourth Avenue, Suite 1900
Seattle, WA  98121
Tel: (206) 739-9059

by texting "discount" to the retailer, which immediately replies by texting a coupon to the consumer. *Id.* at 8016.  Considering this request, the Commission ruled that:

> a one-time text sent in response to a consumer's request for information does not violate the TCPA or the Commission's rules so long as it: (1) is requested by the consumer; (2) is a one-time only message sent *immediately* in response to a specific consumer request; and (3) contains only the information requested by the consumer with no other marketing or advertising information.

*Id.* (emphasis in original).  In case the limited nature of the exception wasn't abundantly clear, the Commission continued: "We emphasize that this ruling applies only when the on-demand text message has been expressly requested by the consumer in the first instance." *Id.*

Mr. Pine's situation is not remotely similar.  First, it does not involve a "consumer-initiated text request"—the explicit limitation placed on the Commission's exception—but the completion of an online quote.  Second, Mr. Pine requested senior housing quotes he could view and compare *online*, not an autodialed phone call.  In fact, as Mr. Pine testified, he was never aware that he would receive autodialed telemarketing calls as a result of using APFM's website.  Compl., ¶ 65.  Third, Mr. Pine alleges he received *several* calls from APFM pressuring him to purchase senior housing through one of its clients (*id.*, ¶¶ 64-65), plainly exceeding the "one-time only message" exception allowed under the July 2015 Order.  30 F.C.C. Rcd. at 8016.  Finally, Mr. Pine alleges that the calls were made in an attempt to pressure him and other class members to purchase senior housing through one of APFM's clients—far beyond the limited request he made to simply review *online* senior housing options, which the Commission's exception requires to be provided "with no other marketing or advertising information."  *Id.*  The July 2015 FCC Order thus provides no basis for concluding that APFM's autodialed calls were not "telemarketing."

Indeed, even if this were a one-time TCPA texting case, dismissal would not be appropriate.  Courts in this—and other—Circuits—have consistently refused to dismiss one-time TCPA texting claims at the pleadings stage where, as here, the allegations state that the communications were intended to facilitate commerce.[17]

---

[17] *See, e.g., Pedro-Salcedo v. Haagen-Dazs Shoppe Co., Inc.*, No. 5:17-CV-03504-EJD, 2017 WL 4536422, at *1

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO STAY OR, IN THE
ALTERNATIVE, DISMISS SECOND AMENDED
COMPLAINT CASE NO. 17-CV-1826
1668214 7

21

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 Fourth Avenue, Suite 1900
Seattle, WA  98121
Tel: (206) 739-9059

1   APFM ignores these cases and instead cites inapposite authority to bolster its claim to have

2   merely "fulfilled a consumer request," rather than engaging in a bait-and-switch scheme that used a

3   website to recruit phone numbers for telemarketing purposes.  *See* Mot. at 24 (citing *Wick v. Twilio,*

4   *Inc.*, 2016 WL 6460316, at *1 (W.D. Wash. 2016)).  But even that authority is distinguishable.  In

5   *Wick*, the court found that a company did not engage in telemarketing when it texted a plaintiff who

6   had started, but not finished, the process of ordering a free sample of a pre-workout supplement.  *Id.*

7   The text merely warned him that his order was "incomplete and about to expire.  Complete your

8   order by visiting http://hlth.com/xDoXEQ."  *Id.*  Here, in contrast, Mr. Pine submitted an *online*

9   form to receive *online* senior housing quotes—only to repeatedly receive several phone calls to his

10  *cellular phone* pressuring him to purchase senior housing from APFM's in-network clients so that

11  APFM could earn a commission.  Far from "respond[ing] to the very request initiated by Plaintiff,"

12  these repeated calls were unwanted and uninvited by Mr. Pine, who specifically alleges that he was

13  "not aware he would be receiving" them.[18]  Compl., ¶ 65.  Accordingly, this Court should join other

14  courts that have rejected attempts to extend *Wick* to similar bait-and-switch websites.  *See Barrera*,

15  2017 WL 4837597, at *2 ("Defendant cites no authority suggesting that providing a phone number

16  in this context makes all subsequent telemarketing calls legal.").

17

18

---

19  (N.D. Cal. Oct. 11, 2017) (single text thanking customer for joining rewards program was actionable); *Meyer v.*
20  *Bebe Stores, Inc.*, No. 14-CV-00267-YGR, 2015 WL 431148, at *3 (N.D. Cal. Feb. 2, 2015) (text asking
    consumer to "opt-in" to receive store information was actionable); *Consumer Prot. Corp. v. Neo–Tech News*, No.
21  CV 08-1983-PHX-JAT, 2009 WL 2132694, at *1 (D. Ariz. July 16, 2009) (fax listing the share price of JYTO
    [a stock] and stating that the stock is a "Strong Buy" was actionable); *Volpe v. Caribbean Cruise Line, Inc.*, 2013
22  WL 3724858, at *1 (N.D. Ill. 2013) (single text offering information about a free cruise was actionable).

    [18] Indeed, the differences between this case and *Wick* are vast: that case involved a plaintiff who (1) received a
23  single communication, (2) in the form of a text message, (3) urging him to complete or continue a business
    interaction that he knowingly undertook, and (4) containing "only the information requested by the consumer
24  with no other marketing or advertising information," July 2015 Order, 30 F.C.C. Rcd. 7961 at 8016.  The
    APFM website, on the other hand, led consumers to believe that by providing certain information and
25  clicking on the "Start Your Search" button, they would receive senior housing quotes on their computer so
    they could "*brows[e]* and compar[e]…options." *Id.* (emphasis added)." Compl., ¶¶ 33-34.  Mr. Pine fully
26  completed the registration process, following the website's instructions, and instead received a series of
    solicitation calls to his cellular phone pressuring him to purchase senior housing.

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO STAY OR, IN THE
ALTERNATIVE, DISMISS SECOND AMENDED
COMPLAINT CASE NO. 17-CV-1826
1668214 7

22

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 Fourth Avenue, Suite 1900
Seattle, WA  98121
Tel: (206) 739-9059

1  **IV.**   <u>**CONCLUSION**</u>

2       For the foregoing reasons, Mr. Pine respectfully asks the Court to deny APFM's motion in

3  its entirety.

4  Dated:  November 26, 2018                Respectfully submitted,

5

                                           By:___/s/ *Sharon M. Lee*_____
6

7                                                Sharon M. Lee, WA Bar No. 37170
                                                 **LIEFF CABRASER HEIMANN**
                                                 **& BERNSTEIN, LLP**
8                                                2101 Fourth Avenue, Suite 1900
                                                 Seattle, WA  98121
9                                                Telephone:  (206) 739-9059
                                                 Facsimile:  (415) 956-1008
10                                               E-mail:  slee@lchb.com

11                                               **LIEFF CABRASER HEIMANN**
                                                 **& BERNSTEIN, LLP**
12                                               Daniel M. Hutchinson
                                                 275 Battery Street, 29th Floor
13                                               San Francisco, CA  94111-3339
                                                 Telephone:  (415) 956-1000
14                                               Facsimile:  (415) 956-1008
                                                 E-mail: dhutchinson@lchb.com
15
                                                 **LIEFF CABRASER HEIMANN**
16                                               **& BERNSTEIN, LLP**
                                                 Jonathan D. Selbin
17                                               250 Hudson Street, 8th Floor
                                                 New York, NY  10013
18                                               Telephone:  (212) 355-9500
                                                 Facsimile:  (212) 355-9592
19                                               E-mail:  jselbin@lchb.com

20                                               **LIEFF CABRASER HEIMANN**
                                                 **& BERNSTEIN, LLP**
21                                               John T. Spragens
                                                 222 2nd Ave S, Suite 1640
22                                               Nashville, TN 37201
                                                 Telephone:  (615) 313-9000
23                                               Facsimile:   (615) 313-9965
                                                 E-mail:  jspragens@lchb.com
24

25

26

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO STAY OR, IN THE
ALTERNATIVE, DISMISS SECOND AMENDED           23
COMPLAINT CASE NO. 17-CV-1826
16682147

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 Fourth Avenue, Suite 1900
Seattle, WA  98121
Tel: (206) 739-9059

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**KOZONIS & KLINGER, LTD.**
Gary M. Klinger
4849 N. Milwaukee Ave., Ste. 300
Chicago, Illinois 60630
Telephone: (312) 283-3814
Facsimile: (773) 496-8617
E-mail:  gklinger@kozonislaw.com

**HUSSIN LAW FIRM**
Tammy Hussin
1596 N. Coast Highway 101
Encinitas, CA 92024
Telephone: (877) 677-5397
Facsimile: (877) 667-1547
E-mail:  tammy@hussinlaw.com

*Counsel for Plaintiff and the Proposed Class*

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO STAY OR, IN THE
ALTERNATIVE, DISMISS SECOND AMENDED
COMPLAINT CASE NO. 17-CV-1826
1668214 7

24

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 Fourth Avenue, Suite 1900
Seattle, WA  98121
Tel: (206) 739-9059

1

## CERTIFICATE OF SERVICE

2          I hereby certify that on November 26, 2018, a copy of the foregoing was filed electronically.

3 Notice of this filing will be sent by operation of the Court's electronic filing system to all parties

4 indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic

5 filing system.

6                                          */s/ Sharon M. Lee*
                                         Sharon M. Lee

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO STAY OR, IN THE
ALTERNATIVE, DISMISS SECOND AMENDED
COMPLAINT CASE NO. 17-CV-1826
16682147

25

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
2101 Fourth Avenue, Suite 1900
Seattle, WA 98121
Tel: (206) 739-9059