UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KEVIN PINE, individually and on
behalf of all others similarly situated

Plaintiff,

v.

A PLACE FOR MOM, INC.,

Defendant.

C17-1826 TSZ

ORDER

THIS MATTER comes before the Court on defendant A Place for Mom, Inc.'s motion to stay or, in the alternative, dismiss this action, docket no. 112. Having reviewed all papers filed in support of, and in opposition to, defendant's motion, as well as plaintiff's Second Amended Class Action Complaint, docket no. 111, the Court enters the following order.

**Discussion**

**A.     Procedural History**

This putative class action was commenced in the Northern District of Illinois by Andrew Kim, a citizen of Illinois. *See* Compl. (docket no. 1). Kevin Pine, a citizen of California, was subsequently substituted as the named plaintiff. *See* 1st Am. Compl. (docket no. 30); *see also* Pla.'s Mot. to Substitute (docket no. 25); Minute Entry (docket

ORDER - 1

no. 28). Pursuant to the parties' stipulation, the case was transferred to this district, where defendant, a Delaware corporation, has its principal place of business. *See* Stip. (docket no. 32); Order (docket no. 33). The parties are diverse, plaintiff alleges more than $5 million in controversy, and the Court has subject matter jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2). *See* Stip. (docket no. 32); 2d Am. Compl. at ¶¶ 8, 12, & 13 (docket no. 111).

In January 2018, shortly after the litigation was transferred to this district, defendant moved to dismiss the First Amended Class Action Complaint, in which plaintiff asserted two claims under the Telephone Consumer Protection Act ("TCPA"). *See* Def.'s Mot. (docket no. 50). After briefing on defendant's motion was complete, the District of Columbia Circuit issued *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018), and the Court directed the parties to file supplemental briefs. Minute Order (docket no. 75). On August 28, 2018, defendant's motion to dismiss was granted in part and denied in part. Minute Order (docket no. 107). The First Amended Class Action Complaint was dismissed because it failed to plead a crucial component of plaintiff's TCPA claims, namely that defendant used a "predictive dialing" system, but contrary to defendant's request, the dismissal was without prejudice and with leave to amend. *Id.* at ¶ 1. The matter was then stayed pending the Ninth Circuit's decision in *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018).

**B.** **Defendant's Motion to Stay**

In October 2018, shortly after the Ninth Circuit's opinion in *Marks* was issued, the stay of this action was lifted, *see* Minute Order at ¶ 1 (docket no. 110), and plaintiff

timely filed his Second Amended Class Action Complaint, docket no. 111. Discovery, however, remained stayed pending further order of the Court. Minute Order at ¶ 3 (docket no. 110). In its motion filed on October 29, 2018, defendant asked the Court to further stay this matter until the Ninth Circuit ruled on the then-pending petition for rehearing and rehearing en banc in *Marks* and, in its reply filed on December 3, 2018, defendant sought a stay until after the Supreme Court decided whether to grant a writ of certiorari in *Marks*. The petition for rehearing was denied on October 30, 2018, and the petition for writ of certiorari was dismissed on February 27, 2019. Defendant's request for a stay related to *Marks* is now moot, and it is therefore DENIED.

Defendant also asks to stay this litigation under the "primary jurisdiction" doctrine, while the Federal Communications Commission ("FCC") considers public comments on the interpretation of the TCPA in light of *ACA Int'l* and *Marks*. At least three other district courts to which similar motions were presented after the Ninth Circuit decided *Marks* have rejected the notion that a stay is warranted by the anticipated action of the FCC. *See Nicholson v. REI Energy, LLC*, 2019 WL 993624 (D. Ore. Feb. 28, 2019); *Knapper v. Cox Commc'ns, Inc.*, 2019 WL 250430 (D. Ariz. Jan. 17, 2019); *Larson v. Harman Mgmt. Corp.*, 2018 WL 6459964 (E.D. Cal. Dec. 10, 2018). As explained in each of these decisions, the "primary jurisdiction" doctrine is prudential in nature and permits courts to defer ruling when an otherwise cognizable claim implicates technical and/or policy questions that should be addressed in the first instance by the regulating agency rather than the judicial branch. *E.g.*, *Nicholson*, 2019 WL 993624 at *4 (citing *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 760 (9th Cir. 2015) (quoting

*Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008))). In *Marks*, the Ninth Circuit construed the term of the TCPA as to which the FCC has sought public comment, holding that the phrase "automatic telephone dialing system" ("ATDS") means equipment that (i) has the capacity to store numbers to be called or to randomly or sequentially produce numbers to be called, and (ii) automatically dials such numbers. *See* 904 F.3d at 1052. Thus, the question of what constitutes an ATDS is no longer one of first impression and does not involve technical or policy considerations that are particularly within the FCC's expertise or discretion.[1] *E.g.*, *Larson*, 2018 WL 6459964 at *3-*4. Defendant's motion to stay pursuant to the "primary jurisdiction" doctrine is therefore DENIED. *See Nicholson*, 2019 WL 993624 at *4-*5; *Knapper*, 2019 WL 250430 at *2-*4; *Larson*, 2018 WL 6459964 at *3-*4.

**C.     Defendant's Alternative Motion to Dismiss**

Defendant argues that, even if the definition of an ATDS set forth by the Ninth Circuit in *Marks* is applied, plaintiff nevertheless fails to plead a plausible claim under the TCPA. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (on a motion to dismiss, the dispositive inquiry is whether the facts in the complaint sufficiently state a "plausible" ground for relief). Defendant's contention lacks merit. To establish a TCPA violation, plaintiff must prove that defendant called a cellular telephone number using an ATDS. *See Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir.

---

[1] The Court also notes that, to the extent the FCC issued a new rule, it would likely be applied prospectively and have little effect in this case. *See Knapper*, 2019 WL 250430 at *3.

ORDER - 4

2012). If plaintiff makes this showing, the burden falls to defendant to demonstrate that plaintiff gave the requisite consent to the call. See *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1044 & n.3 (9th Cir. 2017).

The FCC has established the following two-tier standard for "consent" to calls made using an ATDS: (i) calls containing advertisements or constituting telemarketing require prior express *written* consent; and (ii) all other calls, other than those made for emergency purposes or to collect a debt owed to or guaranteed by the United States, require prior express consent. See 47 U.S.C. § 227(b)(1)(A); 47 C.F.R. § 64.1200(a); see also *Duran v. La Boom Disco, Inc.*, 2019 WL 959664 at *4 (E.D.N.Y. Feb. 25, 2019). For non-telemarketing calls, prior express consent is satisfied "by the simple act of giving one's phone number directly to a caller." *Rotberg v. Jos. A. Bank Clothiers, Inc.*, 345 F. Supp. 3d 466, 477 (S.D.N.Y. 2018) (citing *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 FCC Rcd. 8752, 8769 (Oct. 16, 1992)). In contrast, prior express *written* consent means "an agreement, in writing, bearing the signature of the person called" that "clearly authorizes" the ATDS-initiated telemarketing call. See 47 C.F.R. § 64.1200(f)(8).

In his Second Amended Class Action Complaint, plaintiff alleges that defendant is engaged in the business of brokering senior-living communities to consumers for fees that are paid by defendant's clients, which are senior-housing or elder-care providers. 2d Am. Compl. at ¶¶ 2-3 (docket no. 111). Defendant hosts a website through which it gathers consumers' identifying information, including phone numbers. See *id.* at ¶¶ 33-36. According to plaintiff, defendant uses a "predictive dialing" system, which is a form

ORDER - 5

1 of ATDS, to automatically place calls, to phone numbers acquired from consumers, at a
2 rate that is consistent with the availability of one of its call center agents. *See id.* at
3 ¶¶ 46-60. Plaintiff asserts that, when defendant's ATDS connects an outbound call to a
4 consumer, a representative in defendant's call center will pick up and attempt to persuade
5 the consumer to purchase senior housing through one of defendant's clients. *See id.* at
6 ¶¶ 61-71.

7 Defendant's alternative motion to dismiss is premised on the theory that its ATDS-
8 generated phone calls to plaintiff (and other putative class members) did not qualify as
9 advertisements or telemarketing. Defendant contends that, because its automated calls
10 were intended to convey only information about senior-housing and elder-care providers,
11 plaintiff's act of providing his cell number via defendant's website was sufficient prior
12 express consent to render his TCPA claim uncognizable. Defendant touts its "referral"
13 services as "free," and therefore not a form of telemarketing requiring prior express
14 *written* consent, but the Second Amended Class Action Complaint indicates that
15 defendant receives payment if consumers that it has contacted become residents in the
16 senior-living communities for which defendant serves as an agent or broker. Thus, the
17 operative pleading adequately alleges that the calls at issue constituted telemarketing
18 within the meaning of the TCPA.[2] *See* 47 C.F.R. § 64.1200(f)(12) ("telemarketing means
19 the initiation of a telephone call or message for the purpose of encouraging the purchase

---

[2] In light of the Court's ruling, defendant's contention that plaintiff gave prior express consent (as opposed to prior express *written* consent) need not be addressed.

ORDER - 6

or rental of, or investment in, property, goods, or services, which is transmitted to any person").

Defendant argues that, because it was not trying to sell or lease its own senior-housing properties or elder-care services, but rather the properties or services of its clients, it is somehow insulated from liability under the TCPA. Defendant, however, does not appear to dispute that, if its clients had engaged in similar communications with plaintiff or other putative class members, the calls would constitute telemarketing within the meaning of the TCPA.[3] See *Sullivan v. All Web Leads, Inc.*, 2017 WL 2378079 at *6

---

[3] Defendant cites several cases in which courts concluded that the communications at issue did not constitute telemarketing, but those matters are all distinguishable. See *Reese v. Marketron Broad. Sols., Inc.*, 2018 WL 2117241 at *4-*5 (E.D. La. May 8, 2018) (involving "a one-time text message sent immediately after a consumer's request for the text," which the FCC has indicated does not violate the TCPA); *Reese v. Anthem, Inc.*, 2018 WL 1251658 at *4-*5 (E.D. La. Mar. 12, 2018) (involving informational texts from the American Heart Association about cardiopulmonary resuscitation ("CPR") and a website to find CPR courses); *Broking v. Green Brook Buick GMG Suzuki*, 2017 WL 3610490 at *5 (D.N.J. Aug. 22, 2017) (concerning one "robocall" that was made to "complete or confirm" that the plaintiff was satisfied with his last car service visit); *Dolemba v. Kelly Servs., Inc.*, 2017 WL 429572 at *3-*4 (N.D. Ill. Jan. 31, 2017) (ruling that the plaintiff consented to receiving calls related to employment opportunities); *Smith v. Blue Shield of Cal. Life & Health Ins. Co.*, 228 F. Supp. 3d 1056, 1058-59, 1066-68 (C.D. Cal. 2017) (regarding automated, pre-recorded calls notifying recipients that information about changes in health insurance benefits had been mailed to them and explaining what to do if the packet had not been received); *Wick v. Twilio Inc.*, 2016 WL 6460316 at *1-*3 (W.D. Wash. Nov. 1, 2016) (concluding that a text explaining how to complete an online order for a free sample, which the plaintiff had initiated, did not constitute telemarketing); *Daniel v. Five Stars Loyalty, Inc.*, 2015 WL 7454260 at *4 (N.D. Cal. Nov. 24, 2015) (reasoning that "a text sent solely for the purpose of allowing the recipient to complete a registration process that he or she initiated shortly before receiving the text is not telemarketing"); *Reardon v. Uber Techs., Inc.*, 115 F. Supp. 3d 1090, 1094-97 (N.D. Cal. 2015) (finding that texts sent by Uber Technologies, Inc. to recruit drivers were employment related and not advertisements or telemarketing); *Salmon v. CRST Expedited, Inc.*, 2015 WL 1395237 at *3-*5 (N.D. Okla. Mar. 25, 2015) (granting summary judgment in favor of the defendant on the plaintiff's TCPA claim because the single call at issue merely advised the plaintiff that the defendant was hiring new drivers and that training was available for persons who did not possess a commercial driver's license; the call did not propose a commercial transaction and did not "even indirectly suggest" that the recipient

(N.D. Ill. June 1, 2017) (whether a call constitutes telemarketing "depends not on its content but instead on its purpose" and the defendant's purpose in placing the calls at issue was "to encourage the purchase of insurance"); *see also* <u>Chesbro v. Best Buy Stores, L.P.</u>, 705 F.3d 913, 918 (9th Cir. 2012) (holding that the "robot-calls" at issue constituted telemarketing because they "urged the listener to 'redeem' his Reward Zone points" and "directed him to a website where he could further engage with the RZP [Best Buy's Reward Zone Program]," the only purpose of which was to make further purchases of Best Buy's products, and that "[a]ny additional information provided in the calls does not inoculate them" under the TCPA). Defendant offers no authority to support the proposition that businesses may escape the rigors of the TCPA simply by outsourcing their telemarketing activities to "referral" services or brokers like defendant. Defendant's alternative motion to dismiss is DENIED.

---

should purchase goods or services from the defendant); <u>Aderhold v. car2go N.A., LLC</u>, 2014 WL 794802 at *9 (W.D. Wash. Feb. 27, 2014) (granting judgment on the pleadings with respect to the plaintiff's TCPA claim, which related to a text intended solely to permit the plaintiff to complete the process he had initiated of registering for the defendant's car-share service); <u>Mey v. Pep Boys–Manny, Moe & Jack</u>, 717 S.E.2d 235, 241 (W. Va. 2011) (holding that an automated call from an entity that purchases used cars was not an "unsolicited advertisement," but rather was in response to the plaintiff's son's posting on the Internet (at craigslist.com) expressly inviting third parties to contact him about buying his vehicle); *see also* <u>Sandusky Wellness Ctr., LLC v. Medco Health Sols., Inc.</u>, 788 F.3d 218, 222-24 (6th Cir. 2015) (holding that two faxes listing medications available in the health plans of the plaintiff chiropractor's patients were not advertisements); <u>Ameriguard, Inc. v. Univ. of Kan. Med. Ctr. Research Inst., Inc.</u>, 222 Fed. App'x 530 (8th Cir. 2007) (concluding without explanation that the facsimile at issue, which was attached to the complaint, was not an "unsolicited advertisement" under the TCPA).

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) Defendant's Motion to Stay or, in the Alternative, Dismiss Plaintiff's Second Amended Complaint, docket no. 112, is DENIED.

(2) The stay of discovery is hereby LIFTED, and the parties are DIRECTED to file, within twenty-eight (28) days of the date of this Order, a Joint Status Report concerning when they anticipate being prepared for trial in this matter.

(3) The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 8th day of April, 2019.

Thomas S. Zilly
United States District Judge

ORDER - 9