UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KEVIN PINE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>A PLACE FOR MOM, INC.,<br><br>Defendant. | C17-1826 TSZ<br><br>ORDER |

THIS MATTER comes before the Court on plaintiff's unopposed motion for preliminary approval of class action settlement, docket no. 139. A previous motion, docket no. 134, was denied without prejudice. <u>See</u> Minute Order (docket no. 135). Since then, the parties have engaged in further negotiations in an effort to address the concerns raised by the Court. The nature of their proposed settlement, however, has not changed. The parties still seek approval of a plan to resolve the class claims through defendant's payment in three installments of $6,000,000, and the distribution of the net proceeds (*i.e.*, the balance remaining after deducting attorney's fees, litigation expenses, administration costs, and incentive awards) to class members on a pro rata basis. Having considered all of the papers filed in support of the pending motion, including the Amended Settlement Agreement and Release, docket no. 139-1, the Court enters the following Order.

ORDER - 1

**Discussion**

**A.      Telephone Consumer Protection Act**

In this action, plaintiff Kevin Pine alleged on behalf of himself and all others similarly situated that defendant A Place for Mom, Inc. had violated the Telephone Consumer Protection Act ("TCPA").  *See* 2d Am. Compl. at ¶ 95-104 (docket no. 111). To establish a TCPA violation, a plaintiff must prove that a defendant called a cellular telephone number using an "automatic telephone dialing system" ("ATDS").  *See* Order at 4-5 (docket no. 123) (citing *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012)).  If the plaintiff makes such showing, the burden shifts to the defendant to demonstrate that the plaintiff gave the requisite consent to the call.  *See id.* at 5 (citing *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1044 & n.3 (9th Cir. 2017)).

**B.      Previous Proposed Settlement**

In their initial attempt to obtain approval of a settlement in this matter, the parties proposed to define the class as including

> all persons within the United States who, between August 7, 2013, and August 15, 2019, received a non-emergency Call from Defendant, or any party acting on its behalf, to a cellular telephone through the use of a dialing system characterized by the plaintiff as an automated telephone dialing system or an artificial or prerecorded voice.

*See* Settlement Agr. at ¶ 2.36 (docket no. 134-1).  The parties further proposed to require each class member to make a "valid and timely claim" before receiving, at the class member's election, either a pro rata cash award or a donation to the Fisher Center for Alzheimer's Research Foundation.  *Id.* at ¶¶ 4.3 & 4.4.  The Court declined to define a class using a disputed term of art, namely an ATDS, or plaintiff's characterization of it.

ORDER - 2

*See* Minute Order at ¶ 1(a) (docket no. 135). The Court also refused to approve any settlement in which class members must "opt in" or fill out a claim form to obtain their share of the settlement proceeds. *Id.* at ¶ 1(b).

**C.     Current Proposed Settlement**

The parties now proffer the following class definition:

> all persons within the United States who, between August 7, 2013, and August 15, 2019, received a non-emergency Call from Defendant, or any party acting on its behalf, to a cellular telephone.

Am. Settlement Agr. at ¶ 2.37 (docket no. 139-1). Although the parties have cured the deficiency outlined in the Court's earlier Minute Order by eliminating the reference to a source of disagreement among the parties, *i.e.*, whether defendant used an ATDS to make the calls at issue, their proposed class definition remains problematic because it is not consistent with the terms of their settlement, as further explained below.

In response to the Court's reluctance to approve an "opt in" system of distributing settlement proceeds, the parties propose to segregate the class into two groups, which are essentially subclasses, only one of which would be required to "opt in." The parties have labeled the subsets as "Locate" and "Non-Locate." The designations "Locate" and "Non-Locate" bear no correlation to the features of the subclasses, but rather correspond to the actions of the proposed settlement administrator. Defendant has the same information about all Locate and Non-Locate subclass members, *i.e.*, names, cellular phone numbers, and email addresses. For Locate subclass members, the settlement administrator will be tasked with using its "best efforts" and the data provided by defendant to determine a mailing address or, in other words, to locate the individuals, and to send notices about the settlement to them via U.S. mail. *See id.* at ¶ 8.2. On the other hand, for Non-Locate

ORDER - 3

subclass members, the settlement administrator need not attempt to find a physical location, and may correspond with such individuals via email. <u>Id.</u> at ¶ 8.3.

According to the Amended Settlement Agreement, the only difference between the Locate and Non-Locate subclasses is whether defendant concedes on the issue of consent. Defendant does not dispute that Locate subclass members did not consent to receiving calls from defendant or its agents. <u>Id.</u> at ¶ 3.4. As to Non-Locate subclass members, defendant is either unable or unwilling to agree on an absence of consent to receiving calls. <u>See id.</u> at ¶¶ 3.4 & 7.2. Thus, the parties propose to require that members of the Non-Locate subclass return a claim form verifying that they did not consent to receiving calls from defendant before they can receive any benefit from the settlement. <u>See id.</u> at ¶ 9.2 & Ex. A2. In contrast, under the terms of the proposed settlement, monetary awards would be automatically sent to Locate subclass members who do not exclude themselves from the class or opt to donate their funds to the Fisher Center for Alzheimer's Research Foundation. <u>Id.</u> at ¶ 9.1. The parties indicate that the Locate subclass has at least 56,000 members. <u>Id.</u> at ¶ 7.2. They have not provided any estimate concerning the number of members in the Non-Locate subclass.[1]

---

[1] In the Amended Settlement Agreement, defendant represents that it does not have sufficient information to determine how many individuals in the Non-Locate subclass did not consent to receiving a non-emergency call from defendant or its agents. <u>See</u> Am. Settlement Agr. at ¶ 7.2; <u>see also id.</u> at ¶ 2.27. Defendant, however, presumably knows how many unique names are on the list of persons in the Non-Locate subclass. In addition, defendant has not identified what data or criteria was used to determine which individuals were placed in the Locate, as opposed to the Non-Locate, subclass.

ORDER - 4

Although the parties contemplate that class members cannot receive a share of the settlement funds if they consented to the calls at issue, they have not included lack of consent as a prerequisite in defining the class. The parties' proposed definition of the class is therefore overbroad. For the sake of consistency with the terms of the proposed settlement and with the requirements of the TCPA, the class definition must be revised as follows:

> All persons within the United States who, between August 7, 2013, and August 15, 2019, received, ***without their consent***, a non-emergency call from defendant A Place for Mom, Inc., or any party acting on defendant's behalf, to a cellular telephone.

The Court will certify a class as so defined, provided that the parties may object and seek amendment or decertification within fourteen (14) days of the date of this Order.

The Court cannot, however, at this time, certify the two subclasses proposed by the parties. The parties have not provided any estimates concerning the number of individuals in the Non-Locate subclass or the expected rate at which claim forms might be returned by such subclass members. Without this information, the Court cannot calculate the potential pro rata shares to be paid from the settlement fund and class members cannot assess whether they should object to the settlement.[2]

---

[2] The parties have "conservatively" estimated the award per class member to be $40, but they have not explained how they arrived at this figure. Assuming that $1,500,000 in attorney's fees, $75,000 in litigation expenses, $410,000 in settlement administration costs, and $12,500 in incentive awards are deducted from the $6,000,000 settlement fund, and the remaining balance ($4,002,500) was apportioned among the 56,000 known members of the class (*i.e.*, all persons in the Locate subclass), the pro rata settlement share would be $71.47 per individual. The parties must explain the discrepancy.

ORDER - 5

**Conclusion**

Notwithstanding the foregoing issues, the Court will approve portions of the parties' agreement, and hereby ORDERS as follows:

(1) Plaintiff's unopposed motion for preliminary approval of class action settlement, docket no. 139, is GRANTED in part, DEFERRED in part, and RENOTED to January 31, 2020.

(2) The Court hereby CERTIFIES for settlement purposes the following Class:

> All persons within the United States who, between August 7, 2013, and August 15, 2019, received, without their consent, a non-emergency call, from defendant A Place for Mom, Inc. or any party acting on defendant's behalf, to a cellular telephone.

The parties may object to this class definition and seek amendment or decertification within fourteen (14) days of the date of this Order. The following persons are EXCLUDED from the Class: (i) defendant, its parent companies, affiliates, or subsidiaries, any businesses in which such entities have a controlling interest, and all employees of the foregoing; (ii) plaintiff's attorneys and members of their immediate family; and (iii) the undersigned district judge, members of his immediate family, and chambers staff, which includes his judicial assistant, two law clerks, courtroom deputy clerk, and case administrator.

(3) The following individual is APPOINTED as Class Representative: Kevin Pine. The following law firms are APPOINTED as Class Counsel: Lieff Cabraser Heimann & Bernstein, LLP; Kozonis & Klinger, Ltd.; Hussin Law Firm; and Frank Freed Subit & Thomas LLP.

(4) Kurtzman Carson Consultants LLC is APPOINTED as Settlement (or Claims) Administrator.

(5) With respect to the Class defined in Paragraph 2, the Court CONCLUDES that the following prerequisites are satisfied: (i) the Class is so numerous that joinder of all members is impracticable; (ii) questions of law and fact common to all members of the Class exist; (iii) the claims of the Class Representative are typical of the claims of the class members; (iv) the Class Representative and Class Counsel meet the requirements for fair and adequate representation; (v) the questions of law and fact that are common to class members predominate over questions affecting only individual members; and (vi) resolution by a class action settlement is superior to other available methods of adjudicating the dispute. <u>See</u> Fed. R. Civ. P. 23(a) & (b)(3). The Court reserves ruling on whether the interests of absent class members who wish to litigate their claims for damages individually will be adequately protected by the notices to be distributed in this matter and the ability of such class members to opt out of the settlement. <u>See</u> Fed. R. Civ. P. 23(b)(3)(A) & (c)(2)(B).

(6) The parties propose to leave to the Court's "sole discretion" at some later date the designation of a *cy pres* recipient. Am. Settlement Agr. at ¶ 7.5(e). The Ninth Circuit has clearly disapproved of such practice. *Dennis v. Kellogg Co.*, 697 F.3d 858, 867 (9th Cir. 2012) ("Our concerns are not placated by the settlement provision that the charities will be identified at a later date and approved by the court – a decision from which the Objectors might again appeal."). If settlement funds are to go to a *cy pres* recipient, then the parties must designate the recipient in their agreement and provide an

opportunity to class members to object to the recipient. Any *cy pres* beneficiary must be "tethered to the nature of the lawsuit and the interests of the silent class members." *Id.*; *Nachsin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011) ("*Cy pres* distributions must account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members, including their geographic diversity."). The parties bear the burden of demonstrating the appropriateness of their selection of a *cy pres* recipient, and the Court will not relieve them of this responsibility.

(7) On or before the new noting date for the pending motion, the parties shall file supplemental materials, including any revised settlement documents, consistent with this Order.

(8) The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 5th day of December, 2019.

Thomas S. Zilly
United States District Judge

ORDER - 8