UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KEVIN PINE, individually and on behalf of all others similarly situated,

Plaintiff,

v.

A PLACE FOR MOM, INC.,

Defendant.

C17-1826 TSZ

MINUTE ORDER

The following Minute Order is made by direction of the Court, the Honorable Thomas S. Zilly, United States District Judge:

(1) The parties' joint motion, docket no. 143, to amend the Order entered December 5, 2019, docket no. 142 (the "December Order"), is GRANTED in part and DENIED in part, as follows:

   (a) In the December Order, the Court indicated that it will certify the following class:

   All persons within the United States who, between August 7, 2013, and August 15, 2019, received, without their consent, a non-emergency call from defendant A Place for Mom, Inc., or any party acting on defendant's behalf, to a cellular telephone.

In their motion to amend, the parties have indicated that they do not object to, but rather agree with, the modifications made by the Court to their proposed class definition. *See* Mot. at 2-3 (docket no. 143). Thus, for settlement purposes, the class is DEFINED as set forth above.

(b) In the December Order, the Court interpreted the parties' proposed settlement as dividing the class into two subclasses, namely (i) the "Locate" Subclass, whose members will receive notice of the settlement via U.S. mail and will automatically share pro rata in the proceeds of the settlement, and (ii) the "Non-Locate" Subclass, whose members will receive notice of the settlement via email only and will be required to return a claim form to obtain any monetary benefit from the settlement. The Court declined to certify either of these subclasses because the parties had not provided sufficient information about the Non-Locate Subclass. In their motion to amend, the parties have clarified that they did not intend to seek certification of subclasses. They explain that the basis for distinguishing between the two groups of class members is as follows. Defendant's records include calls, during the class period, to approximately 3.1 million unique cell phone numbers. Of these 3.1 million numbers, roughly 56,000 were obtained through five of defendant's websites, the domain names of which contain the term "locate," for example, https://locate.APlaceForMom.com. In other words, each of the 56,000 individuals to whom those numbers belong visited one of defendant's "locate" websites and provided contact information. Defendant is willing to concede, for settlement purposes, that the action of entering a cell phone number on one of the "locate" websites does not constitute "consent" to be called within the meaning of the Telephone Consumer Protection Act ("TCPA"). With regard to the remaining 3,044,000 or so persons to whom defendant placed calls during the class period, defendant makes no similar concession. Defendant acquired those other numbers in a variety of ways, including receiving calls from persons inquiring about defendant's services and/or capturing data offered during individuals' interactions with defendant's or its affiliates' websites that do not have "locate" in their addresses. According to defendant, if a cell number was procured through other than a "locate" website, defendant cannot ascertain which of the myriad TCPA disclosures and/or consent forms the person associated with the cell number might have heard or seen, and thus, defendant is unwilling to stipulate on a class-wide basis to a lack of consent to be called. Nevertheless, the parties wish to bind all individuals called during the class period to the terms of the settlement.

Having considered the additional information provided by the parties, the Court relinquishes its earlier concerns about the structure of the parties' proposed settlement. The Court is satisfied that the parties may reasonably distinguish between persons who engaged with defendant's "locate" websites, which might have been deficient in some regard under the TCPA, and the substantially greater number of individuals who made their numbers available to defendant in a different manner. Moreover, the Court is persuaded that persons in the latter group who are unable to verify the requisite lack of consent do not actually qualify as class members, and binding them by their silence (and the resulting uncertainty about their earlier consent) to the terms of the settlement, while withholding from

them pro rata shares of the settlement proceeds, does not offend due process. After all, if they consented to the calls or cannot dispute that they consented to the calls, then they have no TCPA claim against defendant in the first place. Thus, the Court will PRELIMINARILY APPROVE the parties' settlement, which contemplates that notice will be sent to some class members via U.S. mail and to other class members via email, and that class members who receive notice via U.S. mail will automatically receive pro rata shares of the settlement funds, while class members who receive notice via email must return a claim form to obtain a monetary benefit from the settlement.

(c) The Court cannot, however, approve the forms of notice and related materials proposed by the parties, and therefore further DEFERS plaintiff's motion for preliminary approval of class action settlement, docket no. 139. The motion is RENOTED to April 3, 2020. On or before the new noting date, the parties shall file revised versions of their proposed notice, payment selection form, and claim form, as well as an opt-out form,[1] a proposed notice by publication, and a proposed publication plan, along the following lines:

(i) <u>One Form of Notice</u>: The parties propose to send each group of class members a different notice. Consistent with the parties' view that the proposed settlement does not involve subclasses, the parties are DIRECTED to submit one proposed notice that will go to all 3.1 million putative class members. Every class member is entitled to know that notices have been sent in different ways, depending on how potential class members have been identified, and that some class members will automatically receive pro rata shares of the settlement proceeds, while other class members must submit claim forms to obtain any monetary benefit from the settlement. Absent a clear explanation, appearing prominently in the notice, class members will not be adequately advised about the structure of the settlement or be able to formulate any objection thereto.

(ii) <u>Distinguishing Between Class Members</u>: The parties are encouraged to use, in the notice and related materials, words other than "Locate" and "Non-Locate" to describe the two categories of class members. Class members are unlikely to know whether their cell phone numbers were obtained by defendant via a "locate" website or some other mechanism, and if the parties persist in using the terms "Locate" and "Non-Locate," class members might not be able to ascertain whether they are in one group or the other. The parties could potentially distinguish among class members by the manner in which individuals are receiving notice.

---

[1] The proposed notices filed by the parties reference an "Exclusion Request Form," <u>see</u> Exs. C1 & C2 to Pla.'s Mot. (docket no. 139-1), but no such form was submitted for the Court's review.

For example, "if you received this notice by U.S. mail, you do not need to take any action to receive a pro rata share of the settlement funds," or "if you received this notice via email, you will be bound by the terms of the settlement, but will not receive any monetary benefit from it unless you take the following action: you must submit a completed claim form by [date]." To avoid confusion, the parties may append a payment selection form to notices sent by U.S. mail and a claim form to notices sent via email, but they must include an opt-out form regardless of how the notices are distributed.

(iii) <u>Class Definition and Anticipated Pro Rata Shares</u>: In addition to updating the class definition, the parties must include in any notice to be sent to class members an explanation concerning how the pro rata shares that might be expected from the settlement have been estimated by the attorneys. The notice shall disclose the number of potential class members (3.1 million), the number of class members who will automatically receive payments (56,000), the anticipated response rate among class members who must make claims (2% or 62,000[2]), and the approximate settlement award that is calculated on the basis of these figures ($34 per person[2]). The notice shall also set forth the minimum and maximum payouts, *i.e.*, $1.29 per individual if all 3.1 million class members participate in the settlement, and $71.47 per person if only the 56,000 class members entitled to automatic payment receive pro rata shares of the funds. Class members must have such data to formulate an opinion about whether they wish to participate, object, or opt-out of the settlement.

(iv) <u>Legal Representation</u>: The parties' proposed notices suggest that Class Counsel are not charging for their services. *See* Exs. C1 & C2 to Pla.'s Mot. (docket no. 139-1) ("These lawyers are called Class Counsel. You will not be charged for these lawyers' services."). This statement is not accurate and must be revised to explain that Class Counsel anticipate being compensated from the Settlement Fund (at the rate of 25% of the

---

[2] The parties apparently applied the 2% response rate to the total number of potential class members (3.1 million) rather than to the number of individuals who must make claims (3.044 million). A 2% response rate among persons who must submit claim forms yields a figure of 60,880. Assuming that $1,500,000 in attorney's fees, $75,000 in litigation expenses, $410,000 in settlement administration costs, and $12,500 in incentive awards are deducted from the $6,000,000 settlement fund, and the remaining balance ($4,002,500) was apportioned among the 56,000 class members entitled to automatic payment plus the 60,880 individuals expected to submit claim forms, the pro rata settlement award would be $34.24.

MINUTE ORDER - 4

proceeds, or $1,500,000), and will not separately charge individual class members for their services.

(v) <u>Objections and Final Approval Hearing</u>: The Court will not require that class members submit written objections as a prerequisite to appearing and being heard at a final approval hearing, and the notice must be revised accordingly. The notice should indicate that class members may (not "must") object by sending a letter to the Settlement Administrator or they may appear in person at the "final approval" (not "fairness") hearing to state their objections. They need not seek permission in advance or communicate to the Settlement Administrator a desire to speak at the final approval hearing. Moreover, contrary to the suggestion in the parties' proposed notices, in the absence of an emergency, the Court does not anticipate altering the final approval hearing schedule without ample notice to class members, and if the date or time of the hearing must be changed at the request of a party or counsel, such party or counsel shall bear the expense of providing such notice.

(vi) <u>Publication</u>: Because the parties intend to rely on email notice alone for over 98% of the class, and because they have provided no assurance that the Settlement Administrator can confirm that emails have not been "spam" filtered or otherwise inhibited from reaching the persons to whom they are directed, the Court will require the parties to publicize the nature their settlement, the deadlines for opting-out and submitting claim forms, and the date and time of the final approval hearing. The parties shall do so on their respective attorneys' websites, defendant's and its affiliates' websites, through appropriate and available social media platforms, via a newspaper published nationwide (in a prominent advertisement run at least once each week for four consecutive weeks), and through at least one trade journal of national prominence relating to elder care. The parties shall submit a proposed form of notice by publication and a proposed publication plan, along with any related revision to their estimate of settlement administration costs.

(vii) <u>Failure to Return Claim Form</u>: In the notice that the parties proposed to send via email only, the section titled "If You Do Nothing" reads:

> If you do nothing, and are a Class Member, you will not receive a payment after the Court approves the Settlement. In order to receive a payment, you must submit a timely, valid claim form. You will be bound by the judgment against APFM and you will release claims against APFM.

This language lacks clarity.  It suggests that persons who receive the notice and do nothing might not be bound because they are not class members.  It also refers to a "judgment," but this matter is being resolved by settlement.  The parties are encouraged to consider the following language:

> If you received this notice via email and you do nothing in response, you will be bound by the terms of the Settlement if it is approved by the Court, and you will not receive any monetary benefit from the Settlement.  To receive a pro rata share of any proceeds of the Settlement, you must complete and submit a Claim Form to the Settlement Administrator on or before [date].

(viii)  <u>No Imprimatur of the Court</u>:  In multiple places within the parties' proposed notices, the parties use verbiage implying that the Court has authorized or approved the settlement and/or the notice about the settlement.  The parties are encouraged to instead use language along the following lines:  "This notice is being sent to you because you have a right to know about a proposed settlement of a class action lawsuit and about your options before the Court decides whether to approve the settlement."

(ix)  <u>Payment Selection Form and Claim Form</u>:  Both of the forms proposed by the parties indicate that the Fisher Center for Alzheimer's Research Foundation is a "Court-approved" charity.  Regardless of whether such organization is designated as a <u>*cy pres*</u> recipient, it will not be "Court-approved" for purposes of class members electing to donate their pro rata shares of the settlement funds to charity.  To indicate that any charity is "Court-approved" would put undue pressure on class members to choose to donate their settlement award.  Both forms also need reworking so that they provide enough information to stand on their own, apart from the notice informing class members about the settlement.  For example, the Claim Form should advise class members that, if they received notice via email and they do not complete and timely submit the Claim Form, they will be bound by the settlement, and will receive no monetary benefit from the settlement.

(x)  *<u>Cy Pres</u>* <u>Recipient</u>:  As indicated in the December Order, the parties propose to leave to the Court's "sole discretion" at some later date the designation of a *<u>cy pres</u>* recipient.  <u>See</u> Am. Settlement Agr. at ¶ 7.5(e) (docket no. 139-1) ("on the Final Distribution Date, . . . the Claims Administrator shall pay any amount remaining in the Settlement Fund Account from uncashed settlement checks to a non-profit charity meeting the requirements of <u>*Dennis*</u> . . . , at the Court's sole discretion").  The Ninth Circuit has made clear that such approach is improper and that, if

settlement funds are to go to a *cy pres* recipient, then the parties must designate the recipient in their agreement and provide notice and an opportunity to class members to object to the recipient. Nowhere in the class notices proposed by the parties is a *cy pres* beneficiary even disclosed or discussed. Moreover, with respect to one of the two potential *cy pres* recipients mentioned in the Amended Settlement Agreement, namely the Fisher Center for Alzheimer's Research Foundation, the parties have not made the requisite showing that such entity is "tethered to the nature of the lawsuit" or advances "the objectives of the underlying statute," *i.e.*, the TCPA. *See* *Dennis v. Kellogg Co.*, 697 F.3d 858, 867 (9th Cir. 2012); *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011). If the parties wish to designate their other suggested organization, Electronic Frontier Foundation, as the *cy pres* recipient, they may file a stipulation to modify their settlement documents accordingly, and they shall include appropriate language in their proposed notice to the class. The Court makes no ruling, pending consideration of any objections from class members, regarding whether Electronic Frontier Foundation is a suitable *cy pres* beneficiary.

(2) The Court DEFERS scheduling a final approval hearing pending resolution of plaintiff's motion for preliminary approval of class action settlement, docket no. 139, which has been RENOTED to April 3, 2020. *See* *supra* ¶ 1(c). Along with a revised notice to class members, a proposed notice by publication, a proposed publication plan, and all related forms, the parties shall indicate what dates they propose for the final approval hearing and related deadlines, and what dates, if any, during the three months around the timeframe they propose for the hearing would present any scheduling conflicts for counsel.

(3) The Clerk is directed to send a copy of this Minute Order to all counsel of record.

Dated this 11th day of February, 2020.

                                              William M. McCool
                                              Clerk

                                              s/Karen Dews
                                              Deputy Clerk